IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE WALKING COMPANY HOLDINGS, INC., et al.,[1] | ) Case No.: 18-10474 (___) |
| | ) Joint Administration Requested |
| | ) |
| Debtors. | ) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE DEBTORS' KEY EMPLOYEE RETENTION PROGRAM FOR CERTAIN NON-INSIDER EMPLOYEES AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit 1**: (i) authorizing and approving the Debtors' Key Employee Retention Program (the "KERP"), substantially in the form attached hereto as **Exhibit 2**, for forty-three (43) key non-insider employees (collectively, the "Eligible Employees"), providing for a total award pool of $315,000 in the aggregate and (ii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

**Preliminary Statement**

1.      The Eligible Employees are the lifeblood of the Debtors' business. The Eligible Employees consist of highly qualified personnel who possess the knowledge, experience, and expertise essential to preserving the Debtors' operational stability and maximizing estate value. The Eligible Employees also cannot be easily replaced. Absent the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: The Walking Company Holdings, Inc. (8665); The Walking Company (2061); Big Dog USA, Inc. (5316); and FootSmart, Inc. (9736). The headquarters and service address for the above-captioned Debtors is 25 W. Anapamu Street, Santa Barbara, CA 93101.

KERP, the Debtors believe that there is significant risk of employee attrition that could disrupt the Debtors' ability to operate their business and impair stakeholder value pending consummation of the Debtors' proposed chapter 11 reorganization plan (the "Plan").

2.      The KERP specifically targets the Eligible Employees whose continued retention and employment is most necessary in order to preserve and maximize going concern value. Under the KERP, the Debtors propose to provide an aggregate payment pool of $315,000, with an average award opportunity of $7,500 per participant. No single Eligible Employee will be eligible for an award totaling more than $20,000. Importantly, no insider (as that term is defined by section 101(31) of the Bankruptcy Code) is an Eligible Employee.

3.      The Debtors and their advisors believe that the KERP is consistent with programs implemented by similarly-situated chapter 11 debtors and will provide stability to the Debtors' operations and drive value for the benefit of all economic stakeholders. The KERP also has the support of the Debtors' principal secured creditor constituents.

## Jurisdiction

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the

2

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are sections 363(b) and 503(c)(3) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

7.      On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

8.      The Walking Company ("TWC") is a manufacturer and leading specialty retailer of comfort footwear and related accessories, including brands: ABEO®, Dansko, ECCO, Umberto Raffini, Taos, Tara M., Naot, J. Koda, Birkenstock, Keen, Beautifeel, Mephisto, Sofft, Earth, Born, Rockport, Olukai, Merrell, ASICS, Rieker, Softwalk, Trotters, Zealand and more. TWC operates over 200 "The Walking Company" stores and an online sales channel primarily via thewalkingcompany.com. TWC manufactures footwear and accessories under the ABEO® brand and others.

9.      Big Dog USA, Inc. ("Big Dog") manufactures and supplies active wear and accessories for men, women, and children. The company offers tees, shirts, fleece, hoodies,

3

pants, shorts, lounges, boxers, outerwear, tops, pajamas, accessories, and more. Big Dog sells its products online through www.bigdogs.com.

10.    Since 1989, FootSmart, Inc. ("FootSmart") has become the largest direct retailer of foot and lower body healthcare products in the country and a destination for over 3,000 carefully curated comfort footwear products, body health solutions, and pain-relieving products. FootSmart is an authoritative resource in the selection and recommendation of the best wellness solutions designed specifically to treat and prevent common ailments of the feet, legs, knees and back. Among its top comfort brands are Easy Spirit, Clarks, Merrell, ABEO® biomechanical footwear, and many more offered online at www.footsmart.com.

11.    The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Andrew D. Feshbach, President and Chief Executive Officer, in Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

## The Proposed Key Employee Retention Program

**A.    The Debtors' Need for the KERP**

12.    Historically, the Debtors have been able to hire and retain personnel such as the Eligible Employees using competitive salaries, benefits, and a stock appreciation rights program. However, the Debtors believe that the bankruptcy filing and other recent events have negatively impacted their ability to retain the Eligible Employees. First, a bankruptcy filing is

---

[2]  Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the First Day Declaration.

likely to create an atmosphere of uncertainty to employees generally. The Eligible Employees specifically may be concerned that workforce downsizings may occur. Second, the bankruptcy filing will render the stock appreciation rights held by most of the Eligible Employees worthless, and could potentially reduce compensation due to a lack of payouts from performance bonuses. Third, many of the Eligible Employees are expected to assume significant additional duties and responsibilities following the bankruptcy filing. These factors have greatly increased the risk that other companies, including competitors, may successfully recruit the Eligible Employees, who are the Debtors' most talented and experienced operating personnel. In order to maintain the consistency that is crucial to achieving positive operating results, and ultimately a successful reorganization process, the Debtors have developed the KERP.

**B.**     **The Principal Terms of the KERP**

13.     The Debtors' proposed KERP is attached hereto as **Exhibit 2** and can be summarized as follows:

| Max. Participants | Average Individual Award | Max. Individual Award | Total Cost |
|---|---|---|---|
| 43 employees | $7,500 | $20,000 | $315,000 |

14.     The Debtors proposed awards for each Eligible Employee are identified on **Exhibit 2** attached hereto. The individual amounts have been determined through management's analysis of the appropriate amount for each Eligible Employee taking into account all relevant factors.

15.     Each Eligible Employee shall earn and be entitled to receive the full amount of his or her retention payment on the KERP Payment Date (as defined below), so long

as he or she is employed by the Debtors as of the earlier of: (a) the effective date of the Plan or

(b) the closing or completion date of the sale of all or substantially all of the Company's assets,

either as a going concern sale or through a full-chain liquidation sale (the "Effective Date").  As

used herein, the "KERP Payment Date" is, (x) in the event of item (a) above, November 15,

2018, and (y) in the event of item (b) above, within ten (10) business days following the closing

or completion of such sale.

16.    Notwithstanding the foregoing, if an Eligible Employee's employment

with the Company is terminated prior to the Effective Date without Cause (as defined below), or

due to death or disability, then such Eligible Employee shall earn and be entitled to receive the

retention payment on the KERP Payment Date.

17.    As used in the KERP, the term "Cause" means any of the following

reasons: (a) the commission of any act of fraud, dishonesty, embezzlement or similar act against

the Company; (b) unauthorized use or disclosure of any proprietary information or trade secrets

of the Company or any other party to whom an Eligible Employee owes an obligation of

nondisclosure as a result of a relationship with the Company; (c) material breach of any

obligations under any written agreement or covenant with (or made for the benefit of) the

Company, provided that an Eligible Employee will have ten (10) days to cure such material

breach to the extent that it is curable; (d) conviction (including any plea of no contest) of a felony

or a crime involving moral turpitude; (e) failure or inability to perform any assigned duties after

written notice from the Company of, and a 10-day opportunity to cure, such failure or inability;

or (f) gross negligence or willful misconduct in the performance of any duties to the Company

that has resulted or is likely to result in damage to the Company.

6

18.     Payments under the KERP are subject to and conditioned upon approval of the KERP by the Bankruptcy Court presiding over the Company's chapter 11 case.  If Bankruptcy Court approval is not obtained, the KERP shall be null and void and the Company will have no obligation to make the payments under the KERP.

19.     Except as provided in the KERP, payments under the KERP will be in lieu of any other performance bonus, retention, or severance compensation otherwise payable to the Eligible Employees by the Company pursuant to any prepetition bonus plan or employment agreement between the Eligible Employee and the Company.

20.     Except as otherwise provided in the KERP, upon approval of the KERP by this Court, the Eligible Employees, in consideration of the benefits offered hereunder, shall release the Company and all of the Company's present or former managers, equity holders, officers, agents, financial advisors, attorneys, employees, partners, affiliates, representatives and their respective property from any and all claims and causes of action which the Eligible Employees may have in connection with their employment by the Company in any capacity whatsoever, including as managers and/or officers of the Company, and including, but not limited, to any claim or cause of action the Eligible Employees may have for unpaid salary, commissions and any claims arising under any employment agreement by and between any Eligible Employee and the Company (the "Claims"), provided, however, that the foregoing shall not operate as a waiver of or release of any Claims that an Eligible Employee may have for claims against the Company for (a) payment of wages earned by the employee but which remain unpaid, (b) retention payments earned and due under the KERP, or (c) indemnification that arises from such employee's status, to the extent applicable, as an officer or representative of the

7

Company pursuant to applicable law and/or pursuant to an indemnification agreement between such employee and the Company.

**C.    The Eligible Employees**

21.    As noted above, the Eligible Employees are 43 key non-insider employees identified by the Debtors, as listed on **Exhibit 2** attached hereto.  These individuals hold various titles with the Debtors, including:  vice president, director, and senior manager of various departments, among others.

22.    Notwithstanding the foregoing titles, the Eligible Employees do not include any employee that:  (a) reports directly to the Company's board of directors; (b) is appointed directly by the Company's board; (c) exercises managerial control over the Debtors' operations as a whole; (d) controls Company policy generally; or (e) directs the Debtors' overall corporate governance.

23.    The Debtors are a moderately-sized enterprise whose activities are directed primarily by three senior executives (none of whom are Eligible Employees):  the Chief Executive Officer (Andrew Feshbach); the Executive Vice President and General Counsel (Anthony J. Wall); and the Chief Financial Officer (Roberta Morris) (collectively, "Senior Management").  While certain employees junior to Senior Management may have the title of vice president, director, or senior manager, these employees do not exercise material levels of control over the Debtors' governance, budgeting, operations, or strategic direction, as to warrant "insider" status.

24.    Thus, none of the Eligible Employees, although important to the Debtors' businesses, qualify as an "insider" in terms of wielding executive power over the Debtors' business and/or corporate affairs.

25.    The Debtors and their advisors believe the award opportunities provided under the KERP are consistent with market practice for similarly situated employers and are, both individually and in the aggregate, reasonable under the circumstances of these chapter 11 cases.

## Relief Requested

26.    The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit 1**:  (a) authorizing and approving the KERP; and (b) granting related relief.

## Basis for Relief

27.    The KERP reflects a sound exercise of the Debtors' business judgment and should be approved pursuant to sections 363(b) and 503(c)(3) of the Bankruptcy Code. Further, the Debtors respectfully submit that the provisions otherwise applicable to retention programs pursuant to section 503(c)(1) of the Bankruptcy Code are inapplicable here because no "insiders" (as that term is defined by section 101(31) of the Bankruptcy Code) will participate in the proposed KERP.

**A.     The Key Employee Retention Program is a Sound Exercise of the Debtors' Business Judgment**

28.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that debtors "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require

9

only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Elpida Memory, Inc.*, 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor may use its assets outside the ordinary course where such use "represents the sound exercise of business judgment"); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (stating that judicial approval under section 363 of the Bankruptcy Code requires a showing that the proposed action is fair and equitable, in good faith, and supported by a good business reason). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

29.    Here, the business justification supporting the KERP is clear. The Debtors require the key non-insider employees' specific knowledge and skill sets to maintain their business operations. The Eligible Employees are intimately familiar with the Debtors' operations and have skills that are unique and difficult to replace. The loss of such employees will negatively affect the Debtors because the Debtors will be required to incur costs associated with recruiting and training replacement workers at the same time that they are operating under chapter 11. The Debtors believe that the cost of the KERP is less than the cost of recruiting and training replacement employees. Retaining the Eligible Employees will maintain operational stability and allow the Debtors to focus their efforts on driving operational performance and

10

reorganizing as efficiently as possible for the benefit of all stakeholders. The Debtors further believe that the KERP will improve employee morale overall and incentivize employees to remain with the Debtors. In sum, the Debtors believe that the KERP is vital to retaining the Eligible Employees and protecting enterprise value.

30.    In large chapter 11 retail cases such as this one, courts in this district have approved retention plans similar to the one proposed by the Debtors in these cases. *See, e.g.*, *In re Pacific Sunwear of California, Inc.*, Case No. 16-10882 (LSS) (Docket No. 335) (Bankr. D. Del. May 12, 2016); *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (MFW) (Docket No. 1722) (Bankr. D. Del. May 4, 2016); *In re Fresh & Easy LLC*, Case No. 15-12229 (BLS) (Docket No. 289) (Bankr. D. Del. Dec. 3, 2015); *In re Quiksilver Inc.*, Case No. 15-11880 (BLS) (Docket No. 514) (Bankr. D. Del. Dec. 12, 2015); *In re RadioShack Corp.*, No. 15-10197 (BLS) (Docket No. 811) (Bankr. D. Del. Mar. 4, 2015); *In re Coldwater Creek Inc.*, No. 14-10867 (BLS) (Docket No. 527) (Bankr. D. Del. June 6, 2014); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Docket No. 534) (Bankr. S.D.N.Y. Aug. 1, 2016). For the reasons discussed below, the Debtors' KERP likewise should be approved.

**B.    The Key Employee Retention Program is Justified by the Facts and Circumstances of These Chapter 11 Cases**

31.    Section 503(c)(3) of the Bankruptcy Code generally prohibits certain transfers made to officers, managers, consultants, and others that are not justified by the facts and circumstances of the case. *See* 11 U.S.C. § 503(c)(3). Importantly, section 503(c)(3)'s "facts and circumstances" justification test "creates a standard no different that the business judgment standard under section 363(b) of the Bankruptcy Code." *In re Borders Group, Inc.*, 453 B.R.

459, 473 (Bankr. S.D.N.Y. 2011) (citations omitted); *see also In re Global Home Prods., LLC*, 369 B.R. 778, 783 (Bankr. D. Del. 2007) ("If [the key employee retention program is] intended to incentive management, the analysis utilizes the more liberal business judgment review under § 363"); *In re Nobex Corp.*, No. 05-20050 (MFW), 2006 WL 4063024, at * 3 (Bankr. D. Del. Jan. 19, 2006) (concluding that the standard under section 503(c)(3) reiterates the business judgment standard).

32.     For the reasons discussed above, attrition of the Eligible Employees is a real risk, and a loss of the Eligible Employees would disrupt the Debtors' ability to preserve and maximize value for the benefit of stakeholders. Because implementation of KERP would likely mitigate flight risk of the Eligible Employees, the KERP is justified by the facts and circumstances of these chapter 11 cases and is a sound exercise of the Debtors' business judgment. *See, e.g., In re Mesa Air Group, Inc.*, No. 10-10018 (MG), 2010 WL 3810899, *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (holding that bonus payments are "'justified by the facts and circumstances of the case' under section 503(c)(3) [where] they are within the 'sound business judgment' of the Debtors" (citation omitted)).

**C.      Section 503(c)(1) of the Bankruptcy Code is Inapplicable
to the Key Employee Retention Program**

33.     Section 503(c)(1) of the Bankruptcy Code generally restricts payments to "insiders" made for the sole or primary purpose of inducing the "insider" to remain with a debtor's business, unless certain statutory requirements are met. 11 U.S.C. § 503(c)(1). Section 101(31) of the Bankruptcy Code provides that where a debtor is a corporation, insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the

debtor . . . or [iv] relative of a . . . director, officer or person in control of the debtor." 11 U.S.C.

§ 101(31)(B).[3]  By its terms, section 503(c)(1) does not apply where, as here, participants in a

retention-based program are not insiders. *See, e.g., Global Home*, 369 B.R. at 784 (noting that

section 503(c)(1) only applies "if a bankruptcy court is asked to authorize payments to insiders

for the purpose of inducing insiders to remain in a debtor's employ").  And, as a general matter,

the Bankruptcy Code's distinction between "insiders" and "non-insiders" is intended to draw a

line between those individuals who exercise control over corporate activities and corporate

policy, and those that do not.

   34. As noted above, certain of the Eligible Employees have job titles

identifying such individuals as vice president, director, or senior manager.  The Debtors submit

that such titles are not dispositive of those individuals' substantive role in the Debtors'

organization and that such titles do not cause section 503(c)(1) to apply here.  *See In re Foothills

Tex., Inc.*, 408 B.R. 573, 579 (Bankr. D. Del. 2009) ("[T]he mere title of a person does not end

the inquiry.").  In determining whether a particular employee is an "insider," courts consider not

only an employee's job title but also the employee's role with the debtor.  *See, e.g., In re Global

Aviation Holdings, Inc.*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) ("[T]itles such as 'vice

president' are not determinative."); *Borders Group*, 453 B.R. at 468–69 (holding that an

individual's title, by itself, is insufficient to establish insider status under section 101(31) of the

Bankruptcy Code (citing *In re Longview Aluminum, LLC*, 419 B.R. 351, 355 (Bankr. N.D. Ill.

2009) ("[I]t is not simply the title 'director' or 'officer' that renders an individual an insider;

---

[3]  The other criteria, none of which are relevant here, are partnerships in which the debtor is a partner, a general
partner of the debtor, and any relative of a person who is an insider under these criteria. 11 U.S.C.
§ 101(31)(B)(iv)–(vi).

rather, it is the set of legal rights that a typical corporate director or officer holds."); *NMI Sys. v. Pillard* (*In re NMI Sys.*), 179 B.R. 357, 370 (Bankr. D.D.C. 1995)). Thus, a particular job title might create the presumption that an individual is an insider per section 101(31) of the Bankruptcy Code, but this presumption may be rebutted by a showing that the individual in question does not exercise material levels of management control over a debtor or its operations as a whole. *Cf. Foothills Texas*, 408 B.R. at 583.

35.    This analysis focuses on, among other things, whether the employee at issue has the authority to implement company policy or whether the employee reports directly to a company's board of directors, *see Borders Group*, 453 B.R. at 469, such that there is a plausible concern that the employee could have gained an "unfair advantage" by virtue of their position, *see Foothills Texas*, 408 B.R. at 583. In short, the determination as to whether any particular employee is an "insider" requires an analysis as to whether the individual in question "is taking part in the management of the debtor" *Id.* at 579.

36.    No Eligible Employees are insiders by this measure. No Eligible Employee: (a) has a job title, such as "CEO, president, secretary, or treasurer," *Borders Group*, 453 B.R. at 468; (b) controls or directs the operations of any of the Debtors, *see NMI Systems*, 179 B.R. at 370 ("[Employee] was still in charge of a unit of [a] division . . . . But [the employee's] position was not one in the inner circle making the company's critical [] decisions."); (c) has executive oversight authority for the Debtors' operations as a whole, *see Global Aviation*, 478 B.R. at 148 ("[A] vice president was not an insider because he was conferred the title 'for purposes of marketing' only . . . ."); (d) has broad responsibilities over a large portion of the Debtors' businesses, *cf. Foothills Texas*, 408 B.R. at 584 ("Given their broad

14

responsibilities over significant aspects of the Debtors' business as well as the fact that they report directly to the Debtors' President, both men are clearly participating in the management of the Debtors."); or (e) has direct input into the governance or direction of the Debtors' operations or a material component of their assets, *cf. In re Kunz*, 489 F.3d 1072, 1077 (10th Cir. 2007) ("[A]s it is used in the statutory definition of 'insider,' the term plainly means a person who is a member of the governing board of the corporation and participates in corporate governance.").

37.     This distinction is also borne out by the financial incentives at issue. The maximum award payable to any one Eligible Employee under the KERP is $20,000. No individual will be disproportionately rewarded as a result of his or her participation in this process, but the Debtors believe such cost is far exceeded by the business risk that might result without their ability to retain such key employees.

38.     In sum, the Eligible Employees, although critical to the Debtors' operations, do not have the type of broad responsibility or control to make strategic decisions, set company policy, or develop employee compensation. As a result, any concerns that the KERP results from "an unfair advantage" are not justified by the record here. Rather, the Eligible Employees are the rank and file employees that are necessary for the Debtors to maintain their operations at their current level and preserve value during these chapter 11 cases.

## Notice

39.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Choate, Hall & Stewart LLP (Attn: Kevin J. Simard, Esq.) and Womble Bond Dickinson (Attn: Matthew P. Ward, Esq.), counsel for the DIP Agent, DIP Term Agent, the Prepetition Senior Agent, and the

15

Prepetition Term Agent; (c) Irell & Manella LLP (Attn: Jeffrey M. Reisner, Esq.), counsel to the

Prepetition Subordinated Creditors, and (d) the Debtors' thirty largest unsecured creditors on a

consolidated basis.  The Debtors submit that, in light of the nature of the relief requested, no

other or further notice need be given.

### Conclusion

40.     For the reasons set forth herein, the Debtors respectfully request that the

Court enter the order substantially in the form attached hereto as **Exhibit 1**: (a) authorizing and

approving the KERP; and (b) granting related relief.


Dated:   March 6, 2018                          PACHULSKI STANG ZIEHL & JONES LLP

                                                _____
                                                Jeffrey N. Pomerantz (CA Bar No. 143717)
                                                Jeffrey W. Dulberg (CA Bar No. 181200)
                                                Maxim B. Litvak (CA Bar No. 215852)
                                                James E. O'Neill (DE Bar No. 4042)
                                                919 N. Market Street, 17th Floor
                                                Wilmington, DE 91899
                                                Tel:  (302) 652-4100
                                                Fax: (302) 652-4400
                                                E-mail:  jpomerantz@pszjlaw.com
                                                         jdulberg@pszjlaw.com
                                                         mlitvak@pszjlaw.com
                                                         joneill@pszjlaw.com

                                                Proposed Attorneys for Debtors and Debtors in
                                                Possession

16