**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE WALKING COMPANY HOLDINGS INC., *et al.*, | ) Case No. 18-10474 (LSS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) Re: Docket Nos. 10, 75 |
| | ) |
| | ) Obj. Deadline: 3/29/18 at 4:00 p.m. |
| | ) Hearing Date: 4/4/18 at 10:00 a.m. |
| | ) |

**OBJECTION OF SAN DIEGO GAS AND ELECTRIC COMPANY
AND SOUTHERN CALIFORNIA EDISON COMPANY TO THE DEBTORS'
MOTION FOR INTERIM AND FINAL ORDERS (A) APPROVING THE
DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR
FUTURE UTILITY SERVICES, (B) PROHIBITING UTILITY COMPANIES
FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
(C) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADEQUATE ASSURANCE REQUESTS, AND (D) GRANTING RELATED RELIEF**

San Diego Gas and Electric Company ("SDG&E") and Southern California Edison Company ("SCE")(collectively, the "Utilities"), hereby object to the *Debtors' Motion For Interim and Final Orders (A) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services, (B) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (C) Approving the Debtors' Proposed Procedures For Resolving Adequate Assurance Requests, and (D) Granting Related Relief* (the "Utility Motion") (Docket No. 10), and set forth the following:

## **Introduction**

The Debtors' Utility Motion improperly seeks to shift the Debtors' obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested by the Utilities under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors.  This Court should not permit the Debtors to shift their statutory burden.

The Debtors seek to have this Court approve their form of adequate assurance of payment, which is a bank account containing $111,000 that supposedly equals approximately one-half of the Debtors average monthly utility charges (the "Bank Account").  The Court should reject the Debtors' proposed Bank Account because:  (1) The Utilities bill the Debtors on a monthly basis and provide the Debtors with generous payment terms pursuant to applicable state law, tariffs and/or regulations and a two-week account is not sufficient in amount or in form to provide the Utilities with adequate assurance of payment; (2) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated bank account; and (3) Even if this Court were to improperly consider the Bank Account as a form of adequate assurance of payment for the Utilities, the Court should reject it as an insufficient form of adequate assurance of payment for the reasons set forth in Section A.1. of this Objection.

The Utilities are seeking the following two-month cash deposits from the Debtors, which are amounts that they are authorized to obtain pursuant to applicable state law:  (a) SDG&E - $11,186; and (b) SCE - $26,479.

2

Based on all the foregoing, this Court should deny the Utility Motion as to the Utilities because the amounts of the Utilities' post-petition deposit requests are reasonable under the circumstances and should not be modified.

## Facts

## Procedural Facts

1.      On March 6, 2018 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.      The Debtors' chapter 11 bankruptcy cases are being jointly administered.

## The Utility Motion

3.      On the Petition Date, the Debtors filed the Utility Motion.

4.      Because the Utilities were not properly or timely served with the Utility Motion and the Debtors never attempted to contact the Utilities regarding their adequate assurance requests prior to the filing of the Utility Motion, the Utilities had no opportunity to respond to the Utility Motion or otherwise be heard at the *ex parte* hearing on the Utility Motion that took place on March 7, 2018, the second day of the case, despite the fact that Section 366(c)(3) (presuming this was the statutory basis for the relief sought by the Debtors) requires that there be "notice and a hearing" to the Utilities.

5.      On March 8, 2018, the Court entered the *Interim Order (A) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services, (B) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (C) Approving the*

24435989.1 03/22/2018

*Debtors' Proposed Procedures For Resolving Adequate Assurance Requests, and (D) Granting Related Relief* (the "Interim Utility Order") (Docket No. 75).  The Interim Utility Order set an objection deadline of March 29, 2018, with the final hearing on the Utility Motion to take place on April 4, 2018 at 10:00 a.m.

6.      The Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is the Bank Account containing $111,000 that supposedly reflects approximately one-half of the Debtors' average monthly utility charges.  Utility Motion at ¶ 14.

7.      The proposed Bank Account is not acceptable to the Utilities and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment.  Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amount of the security sought by the Utilities under Section 366(c)(2).

8.      The Interim Utility Order provides that any payment made or to be made pursuant to that Order shall be subject to any order approving DIP financing or the use of cash collateral and the budget approved thereunder.  Interim Utility Order at ¶ 13.  It is not clear if the Debtors and their secured lenders are trying to subordinate all of the post-petition payments made to the Utilities to the secured lenders' liens or just the proposed amounts contained in the Bank Account.  At a minimum, all post-petition payments made by the Debtors to the Utilities, including any post-petition security, should not be subordinated to the lenders' liens or subject to subsequent disgorgement by the secured lenders.  If the Debtors want the Utilities to provide post-petition utility goods/services, any and all post-petition payments made to the Utilities

4

should be free and clear of any and all liens, otherwise all of the relief sought in the Utility

Motion is nothing more than a subterfuge.

9.      The Utility Motion does not address why the Bank Account would be

underfunded with only two-weeks of utility charges when the Debtors know that the Utilities are

required by applicable state laws, regulations and/or tariffs to bill the Debtors monthly.

Moreover, presumably the Debtors want the Utilities to continue to bill them monthly and

provide them with the same generous payment terms that they received prepetition.

Accordingly, if the Bank Account is relevant, which the Utilities dispute, the Debtors need to

explain: (A) why they are only proposing to deposit two-week amounts into the Bank Account

for the Utilities; and (B) how such an insufficient amount could even begin to constitute

adequate assurance of payment for the Utilities' monthly bills.

10.     Furthermore, the Utility Motion does not address why this Court should consider

modifying, if at all, the amounts of the Utilities' adequate assurance requests pursuant to Section

366(c)(2).  Rather, without providing any specifics, the Utility Motion merely states that the

Bank Account, "in conjunction with the Debtors' ability to pay for future utility services in

accordance with prepetition practice, constitutes sufficient adequate assurance."  Utility Motion

at ¶ 14.

### Facts Concerning the Utilities

11.     Each of the Utilities provided the Debtors with prepetition utility goods and/or

services and have continued to provide the Debtors with utility goods and/or services since the

Petition Date.

24435989.1 03/22/2018

12.    Under the Utilities' billing cycles, the Debtors receive approximately one month of utility goods and/or services before the Utility issues a bill for such charges.  Once a bill is issued, the Debtors have approximately 20 to 30 days to pay the applicable bill.  If the Debtors fail to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account.  If the Debtors fail to pay the bill after the issuance of the past due notice, the Utilities issue a notice that informs the Debtors that they must cure the arrearage within a certain period of time or its service will be disconnected.  Accordingly, under the Utilities' billing cycles, the Debtors could receive at least two months of unpaid charges before the utility could cease the supply of goods and/or services for a post-petition payment default.

13.    In order to avoid the need to bring witnesses and have lengthy testimony regarding the Utilities regulated billing cycles, the Utilities request that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of the Utilities' billing cycles. Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the Utilities' web site links to the following tariffs and/or state laws, regulations and/or ordinances are as follows:

SDG&E: http://www.sdge.com/rates-regulations/current-and-effective-tariffs/current-and-effective-tariffs

SCE:  http://www.sce.com/AboutSCE/Regulatory/tariffbooks/rules.htm

14.    Subject to a reservation of the Utilities' right to supplement their post-petition deposit requests if additional accounts belonging to the Debtors are subsequently identified, the Utilities' post-petition deposit requests are as follows:

6

| Utility | No. of Accts. | Est. Prepet. Debt | Dep. Request |
|---------|---------------|-------------------|--------------|
| SDG&E | 5 | $4,500.93 | $11,186 (2-month) |
| SCE | 15 | $4,610 | $26,479 (2-month) |

### Discussion

**A.    THE UTILITY MOTION SHOULD BE DENIED AS TO THE UTILITIES.**

15.    Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

16.    As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner.").  A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition.  *In re Lucre*, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005).  If a debtor believes the **amount** of the

utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section 366(c)(2).

17.    In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors.  Accordingly, this Court should not reward the Debtors for their failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to the Utilities.

1.    **The Debtors' Proposed Bank Account Is Not Relevant And Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide the Utilities With Adequate Assurance of Payment.**

18.    This Court should not even consider the Bank Account as a form of adequate assurance of payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and (2) The Bank Account is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A). Moreover, even if the Court were to consider the Bank Account, the Bank Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

1.    Unlike the statutory approved forms of adequate assurance of payment, the Bank Account is not something held by the Utilities.  Accordingly, the Utilities have no control over how long the Bank Account will remain in place.

2.    In order to access the Bank Account, the Utilities have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtors refuse to honor a disbursement request.

8

3.    It is underfunded from the outset because the Utilities issue monthly bills and by the time a default notice is issued the Debtors will have received approximately 60 days of commodity or service.

4.    The Debtors are not required to replenish the Bank Account following pay-outs.

5.    The Debtors fail to state whether draws from the Bank Account would be limited to two-week amounts.

19.    Accordingly, the Court should not approve the Bank Account as adequate assurance as to the Utilities because the Bank Account is: (a) not the **form** of adequate assurance requested by the Utilities; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

> **2.    The Utility Motion Should Be Denied As To the Utilities Because the Debtors Have Not Set Forth Any Basis For Modifying the Utilities' Requested Deposits.**

20.    In the Utility Motion, the Debtors fail to address why this Court should modify the amounts of the Utilities' requests for adequate assurance of payment.  Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amounts of the Utilities' adequate assurance of payment requests should be modified.  *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof).  However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amounts of the Utilities' adequate assurance requests should be modified.  Accordingly, the Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the requirements of Section 366(c) with respect to the Utilities.

**B.    THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

21.    Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases.  Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

22.    Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990).  The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986).  In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

23.    The Utilities bill the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month.  The Utilities then provide the Debtors with approximately 20 to 30 days to pay a bill before a late fee may be charged, and also provide written notice before

10

utility service can be terminated for non-payment pursuant to applicable state laws, tariffs and/or regulations. Based on the foregoing state-mandated billing cycles, the minimum period of time the Debtors could receive service from the Utilities before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtors timely pay their post-petition utility bills, the Utilities still have potential exposure of approximately 45 to 60 days based on their billing cycles. Furthermore, the amounts of the Utilities' deposit requests are the amounts that the applicable public service commission, which is a neutral third-party entity, permit the Utilities to request from their customers. The Utilities are not taking the position that the deposits that they are entitled to obtain under applicable state law are binding on this Court, but, instead are introducing those amounts as evidence of amounts that their regulatory entities permit the Utilities to request from their customers.

24.     Moreover, in contrast to the improper treatment proposed to the Debtors' Utilities, the Debtors have made certain that post-petition professionals are favored creditors over the Utilities by ensuring that the post-petition bills/expenses of Debtors' counsel are paid, even in the event of a post-petition default on the use of DIP financing and cash collateral, by seeking a $3 million professionals carve-out for the payment of their fees/expenses after a default and a guarantee of payment for fees incurred up to a default.

25.     Despite the fact that the Utilities continue to provide the Debtors with crucial post-petition utility goods/services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtors are seeking to deprive the Utilities of adequate security for which they are entitled to for continuing to provide the Debtors with post-petition

utility goods/services.  Against this factual background, it is reasonable for the Utilities to seek and be awarded the full security they have requested herein.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1.      Denying the Utility Motion as to the Utilities;

2.      Awarding the Utilities the post-petition adequate assurance of payments pursuant to Section 366 in the amount and form satisfactory to the Utilities, which is the form and amount requested herein; and

3.      Providing such other and further relief as the Court deems just and appropriate.

Dated: March 22, 2018                          SAUL EWING ARNSTEIN & LEHR LLP

*/s/ John D. Demmy*
John D. Demmy (Bar No. 2802)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, Delaware 19899
Telephone: (302) 421-6848
E-mail: john.demmy@saul.com

                    an

LAW FIRM OF RUSSELL R. JOHNSON III, PLC

Russell R. Johnson III (VSB No. 31468)
John M. Craig (VSB No. 32977)
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
E-mail:        russell@russelljohnsonlawfirm.com
               john@russelljohnsonlawfirm.com

*Counsel for San Diego Gas and Electric Company and Southern California Edison Company*

24435989.1 03/22/2018