# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE WALKING COMPANY HOLDINGS, INC., *et al.*,[1] | Case No. 18-10474 (LSS) |
| Debtors. | Jointly Administered<br>Related Docket Nos. 15, 81 |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY AND (VI) GRANTING RELATED RELIEF

THIS MATTER having come before the Court upon the motion (the "**Motion**") by THE WALKING COMPANY, a Delaware corporation (the "**Lead Borrower**" or "**TWC**"), THE WALKING COMPANY HOLDINGS, INC. ("**Parent**"), a Delaware corporation, FOOTSMART, INC., a Delaware corporation ("**FootSmart**"), and BIG DOG USA, INC., a California corporation ("**Big Dog**"), each as a debtor and debtor in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101, *et seq.*, as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Walking Company Holdings, Inc. (8665); The Walking Company (2061); Big Dog USA, Inc. (5316); and FootSmart, Inc. (9736). The headquarters and service address for the above-captioned Debtors is 25 W. Anapamu Street, Santa Barbara, CA 93101.

entry of the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Granting Related Relief, and (VII) Scheduling a Final Hearing* [Docket No. 81] (the "**Interim Order**") and a final order (this "**Final Order**"), *inter alia*:

(i)     authorizing, under Sections 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtors to obtain secured, superpriority post-petition loans, advances and other financial accommodations (the "**DIP Facility**"), pursuant to the terms and conditions of that certain Debtor In Possession Loan and Security Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "**DIP Loan Agreement**") by and among (a) the Lead Borrower, (b) the other Borrowers party thereto from time to time, (c) the Guarantors[2] party thereto from time to time, (d) Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities herein, the "**DIP Agent**") for its own benefit and the benefit of the other Secured Parties, (e) Wells Fargo Bank, National Association, as term agent (in such capacity, the "**DIP Term Agent**") and (f) the Lenders from time to time party thereto (the "**DIP Lenders**" and each a "**DIP Lender**"; the DIP Agent, the DIP Term Agent, the DIP Lenders and the other Secured Parties under the DIP Loan Documents (as defined below) are collectively referred to herein as the "**DIP Secured Parties**"), in the form of **Exhibit A** attached hereto; and

(ii)     authorizing the Debtors to execute and deliver the DIP Loan Agreement and all other related documents and agreements, including security agreements, deposit account control

---

[2] Capitalized terms used by not defined have the meanings given to them in the DIP Loan Documents (as defined below).

agreements, pledge agreements, guaranties and promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents; and

(iii)    until the Termination Date (as defined below), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility and this Final Order, authorizing the Debtors, to request extensions of credit under the DIP Facility up to an aggregate principal amount of $57,250,000 at any one time outstanding (the "**Financing**"); and

(iv)    granting allowed superpriority administrative expense claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in each of the Cases and any Successor Cases (as defined herein) to all obligations owing under the DIP Loan Agreement and the other DIP Loan Documents (collectively, and including all "Obligations" as described in the DIP Loan Agreement, including all obligations with respect to cash management services, bank products and letters of credit issued or deemed issued under the DIP Loan Agreement, respectively, and, together, the "**DIP Obligations**"), subject to the priorities set forth herein; and

(v)    authorizing the Debtors to use "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code, that the Debtors are holding or may obtain, pursuant to Bankruptcy Code Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004; and

(vi)    granting to the DIP Agent, for the benefit of the DIP Secured Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein; and

(vii)    authorizing and directing the Debtors to pay the principal, interest, fees, costs, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, continuing commitment fees, closing fees, administrative fees, any additional fees set forth in the DIP Loan Documents, the reasonable fees and disbursements of the DIP Secured Parties' attorneys, advisers, accountants, and other consultants, and all related costs and expenses of the DIP Secured Parties; and

(viii)    authorizing and directing the Debtors to pay in full the Prepetition Senior Obligations (as defined herein) to the extent remaining outstanding, upon the entry of this Final Order as set forth herein, subject to the rights of parties in interest described in paragraphs 34 and 35 of this Final Order; and

(ix)    providing adequate protection to the Prepetition Senior Creditors (as defined herein) to the extent set forth herein; and

(x)    providing adequate protection to the Prepetition Subordinated Creditors (as defined herein) to the extent set forth herein; and

(xi)    waiving any applicable stay (including under Bankruptcy Rule 6004) and provisions for immediate effectiveness of this Final Order; and

(xii)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order; and

(xiii)    granting related relief.

The Court having considered the Motion, the Declaration of Andrew Feshbach in support of the Chapter 11 petitions and first day motions, including the Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of

-4-

counsel made at the interim hearing held on the Motion (the "**Interim Hearing**") and the final hearing held on the Motion (the "**Final Hearing**"); and notice of the Interim Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Bankruptcy Rule 9013-1; and the Interim Hearing and the Final Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND AT THE FINAL HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     *Petition Date*.  On March 6, 2018 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), commencing these Cases.

B.     *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

-5-

C.    *Jurisdiction and Venue*.    This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief sought in the Motion and granted in this Final Order are Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Rule 4001-2.

D.    *Committee Formation*.    On March 20, 2018, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the official committee of unsecured creditors in these Cases pursuant to Section 1102 of the Bankruptcy Code (the "**Committee**").

E.    *Debtors' Stipulations*.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraphs 34 and 35 herein, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(xi) below are referred to herein as the "**Debtors' Stipulations**"):

(i)    *Prepetition Senior Loan Documents*.  As of the Petition Date, the Debtors had outstanding secured debt to various lenders pursuant to that certain Third Amended and Restated Loan and Security Agreement dated as of June 5, 2014 (as amended, modified and supplemented from time to time, the "**Prepetition Senior Loan Agreement**" and together with all related documents, guaranties and agreements, the "**Prepetition Senior Loan Documents**"), by and among (a) the Lead Borrower, (b) the other Borrowers party thereto from time to time, (c) the Guarantors party thereto from time to time, (d) Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities herein, the "**Prepetition Senior**

Agent") for its own benefit and the benefit of the other "Secured Parties" (as defined therein), (e) Wells Fargo Bank, National Association, as term agent (in such capacity, the "**Prepetition Term Agent**") and (f) the Lenders from time to time party thereto (the "**Prepetition Senior Lenders**" and each a "**Prepetition Senior Lender**"; the Prepetition Senior Agent, the Prepetition Term Agent, the Prepetition Senior Lenders and the other "Secured Parties" under the Prepetition Senior Loan Documents are collectively referred to herein as the "**Prepetition Senior Creditors**").

      (ii)    *Prepetition Senior Obligations.* As of the Petition Date, the aggregate outstanding principal amount owed by the Debtors under the Prepetition Senior Loan Documents was not less than $40,383,176.89, consisting of revolving credit loans in the outstanding principal amount of $33,133,176.89 (the "**Prepetition Revolving Credit Loans**") and a term loan in the outstanding principal amount of $7,250,000 (the "**Prepetition Term Loan**"), (collectively, together with any interest, fees (including, without limitation, any early termination and prepayment fees), costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Senior Loan Documents, and further including all "Obligations" as described in the Prepetition Senior Loan Agreement, including all obligations with respect to cash management services and bank products, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "**Prepetition Senior Obligations**"). As more fully set forth in the Prepetition Senior Loan Documents, prior to the Petition Date, the Debtors granted first-priority security interests in and liens on substantially all personal property of the Debtors, including, without limitation, accounts, inventory, equipment and general intangibles (collectively, the "**Prepetition**

**Collateral**"), to the Prepetition Senior Agent (collectively, the "**Prepetition Senior Liens**") to secure repayment of the Prepetition Senior Obligations.

(iii) *Validity, Perfection and Priority of Prepetition Senior Liens and Obligations.* Without limiting the rights of other parties in interest under paragraphs 34 and 35 of this Final Order: (a) the Prepetition Senior Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected, (b) the Prepetition Senior Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Senior Loan Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Senior Liens as of the Petition Date, the "**Prepetition Permitted Liens**") and otherwise had priority over any and all other liens on the Prepetition Collateral,[3] provided that, in no event shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) be deemed or treated hereunder as a Prepetition Permitted Lien; (c) the Prepetition Senior Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors and constitute "allowed claims" within the meaning of Section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairments or counterclaims of any kind or nature to any of the Prepetition Senior Liens or the Prepetition Senior Obligations exist, and no portion of the Prepetition Senior Liens or the Prepetition Senior Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization,

---

[3] Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the DIP Agent, the DIP Term Agent and the Committee to challenge, consistent with the terms of this Final Order, the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest. The rights and remedies of any holder of a Prepetition Permitted Lien pursuant to the applicable documents and applicable law are reserved.

-8-

recoupment, reduction, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Senior Creditors or any of their respective affiliates, subsidiaries, parents, officers, members, shareholders, directors, employees, attorneys, advisors, professionals or agents, past, present and future, or their respective heirs, predecessors, successors and assigns arising out of, based upon or related to the Prepetition Senior Loan Documents; and (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Senior Obligations exceeded the amount of those obligations, and accordingly the Prepetition Senior Obligations are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code, together with accrued and unpaid and hereafter accruing interest, fees (including, without limitation, attorneys' fees and related expenses of the Prepetition Senior Creditors' attorneys, advisers, accounts, and other consultants), costs and other charges, and further including the Prepetition Indemnity Reserve (as defined below).

(iv) *Cash Collateral.* All of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral and is Prepetition Collateral of the Prepetition Senior Creditors and the Prepetition Subordinated Creditors (as defined below).

(v) *Default by the Debtors.* The Debtors are in default under each of the Prepetition Senior Loan Documents and the Prepetition Subordinated Note Documents.

(vi) *No Other Liens.* As of the Petition Date, other than the Prepetition Permitted Liens, Prepetition Subordinated Liens (as defined below) or liens as otherwise

DOCS_SF:96376.6 91893/002

permitted by the Prepetition Loan Documents, there were no security interests or liens on the Prepetition Collateral other than the Prepetition Senior Liens.

(vii) *Release.* The Debtors (without limiting the rights of other parties in interest under paragraphs 34 and 35 of this Final Order) hereby forever, unconditionally and irrevocably release, discharge and acquit the Prepetition Senior Agent, the Prepetition Term Agent, the DIP Agent, the DIP Term Agent, the DIP Secured Parties, the Prepetition Senior Creditors, Prepetition Subordinated Noteholders, each solely in their capacity as such, and each of their respective affiliates, subsidiaries, parents, officers, members, shareholders, directors, employees, attorneys, advisors, professionals and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses, debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the negotiations over and entry into the DIP Facility or the DIP Loan Documents, the Prepetition Senior Loan Documents, the Prepetition Senior Liens, Prepetition Subordinated Note Documents, Prepetition Subordinated Noteholders Liens and/or the transactions contemplated hereunder or thereunder including (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims, causes of action, challenges, objections and/or choses in action arising out of, based upon, or related to the validity, priority, perfection or avoidability of the DIP Liens (as defined below), DIP Loan Documents, DIP Obligations, Prepetition Senior Liens, Prepetition Senior Loan Documents, Prepetition Senior Obligations, Prepetition Subordinated Noteholders Liens, Prepetition Subordinated Note Documents, Prepetition Subordinated Note

DOCS_SF:96376.6 91893/002

Obligations. The Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Senior Obligations, Prepetition Subordinated Note Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering the Interim Order and this Final Order.

(viii) *Subordinated Indebtedness Documents.* As of the Petition Date, the Debtors had outstanding secured debt to (a) the holders (collectively, the "**Prepetition Subordinated Noteholders**") of a series of separate 8.375% Convertible Notes Due 2019 re-issued on May 23, 2014 by Parent in favor of each of the Prepetition Subordinated Noteholders (collectively, and together with all related guarantees, security documents, financing statements and other documents entered into in connection therewith, the "**Prepetition Subordinated Note Documents**"); (b) Simon Property Group, L.P. ("**Simon**") pursuant to that certain Promissory Note (together with all guarantees and security documents entered into in connection therewith, the "**Simon Indebtedness Documents**"), dated as of September 29, 2017, by TWC in favor of Simon; and (c) Galleria Mall Investors LP ("**Galleria**" and together with the Prepetition Subordinated Noteholders and Simon, collectively, the "**Prepetition Subordinated Creditors**") pursuant to that certain Amended and Restated Promissory Note (together with all guarantees and security documents entered into in connection therewith, the "**Galleria Indebtedness Documents**"; the Galleria Indebtedness Documents together with the Prepetition Subordinated Note Documents and the Simon Indebtedness Documents, collectively, the "**Subordinated Indebtedness Documents**"), dated as of November 6, 2017, by TWC in favor of Galleria. As of the Petition Date, the aggregate outstanding principal amount owed by the Debtors under the

DOCS_SF:96376.6 91893/002

Prepetition Subordinated Note Documents was not less than $11,744,000 in principal (including capitalized interest) obligations (plus all accrued and unpaid interest thereon, and all outstanding fees, costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Subordinated Note Documents, the "**Prepetition Subordinated Note Obligations**" and together with any obligations under the Galleria Indebtedness Documents and Simon Indebtedness Documents the "**Prepetition Subordinated Obligations**").

(ix)     *Prepetition Subordinated Liens.*  Prior to the Petition Date, as more fully set forth in the applicable Subordinated Indebtedness Documents and the applicable Subordination Agreements (as defined below), (a) Parent, TWC, and Big Dog granted to the Prepetition Subordinated Noteholders subordinated security interests in and liens on substantially all of their respective assets (the "**Prepetition Subordinated Noteholders Liens**") to secure the obligations under the Prepetition Subordinated Note Documents; (b) TWC granted to Simon subordinated security interests in and liens on certain equipment, furniture, furnishings, appliances, goods, trade fixtures, inventory, chattels and personal property of TWC located on the premises leased to TWC by Simon (the "**Prepetition Subordinated Simon Lien**") to secure the obligations under the Simon Indebtedness Documents; and (c) TWC granted to Galleria subordinated security interests in and liens on certain equipment, furniture, furnishings, appliances, goods, trade fixtures, inventory, chattels and personal property of TWC located on the premises leased to TWC by Galleria (the "**Prepetition Subordinated Galleria Lien**" and together with the Prepetition Subordinated Noteholders Liens and the Prepetition Subordinated Simon Lien, collectively, the "**Prepetition Subordinated Liens**") to secure the obligations under the Galleria Indebtedness Documents.  Notwithstanding anything to the contrary, (i) the Prepetition Subordinated Simon Lien and the Prepetition Subordinated Galleria Lien shall in all

DOCS_SF:96376.6 91893/002

respects and for all purposes be subordinate and junior to the Prepetition Subordinated Noteholders Liens and (ii) the respective obligations of the Debtors under the Simon Indebtedness Documents and the Galleria Indebtedness Documents shall be subordinate in all respects and for all purposes to the prior indefeasible payment in full in cash of all obligations under the Prepetition Subordinated Note Documents.

(x)    *Validity, Perfection and Priority of Prepetition Subordinated Note Obligations and Prepetition Subordinated Noteholders Liens.* Without limiting the rights of other parties in interest under paragraphs 34 and 35 of this Final Order: (a) the Prepetition Subordinated Noteholders Liens on the Prepetition Collateral is valid, binding, enforceable, non-avoidable and properly perfected, (b) except for the Prepetition Senior Liens, the Prepetition Subordinated Noteholders Liens has priority over any and all other liens, if any, on the Prepetition Collateral, subject only to the Prepetition Permitted Liens, provided that, any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Facility, DIP Liens and DIP Collateral as such claims had with respect to the Prepetition Senior Liens in the Prepetition Collateral and the DIP Collateral; (c) the Prepetition Subordinated Note Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors and constitute "allowed claims" within the meaning of Section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairments or counterclaims of any kind or nature to any of the Prepetition Subordinated Noteholders Liens or the Prepetition Subordinated Note Obligations exist, and no portion of the Prepetition Subordinated Noteholders Liens or the Prepetition Subordinated Note Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reduction,

setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Subordinated Noteholders or any of their respective affiliates, subsidiaries, parents, officers, members, shareholders, directors, employees, attorneys, advisors, professionals or agents, past, present and future, or their respective heirs, predecessors, successors and assigns arising out of, based upon or related to the Prepetition Subordinated Note Documents.

(xi)    *Subordination Agreements.*  As more fully set forth in those certain (a) First Amended and Restated Subordination Agreements of Junior Creditor, dated as of March 20, 2009, by and between Parent, TWC, Big Dog, the Prepetition Senior Agent and the Prepetition Subordinated Noteholders party thereto (as supplemented by that certain Reaffirmation and Confirmation Agreement (Convertible Notes), dated as of June 5, 2014, by and between Parent, TWC, Big Dog, the Prepetition Senior Agent and the Prepetition Subordinated Noteholders party thereto and as may be further amended, modified or supplemented from time to time, the "**Subordinated Noteholders Subordination Agreement**"), (b) Subordination Agreement, dated as of September 29, 2017, by and between the Prepetition Senior Agent, Prepetition Term Agent, Simon and TWC (as amended, modified or supplemented from time to time, the "**Simon Subordination Agreement**"), and (c) Subordination Agreement, dated as of September 29, 2017, by and between the Prepetition Senior Agent, Prepetition Term Agent, Galleria and TWC (as amended, modified or supplemented from time to time, the "**Galleria Subordination Agreement**" and together with the Subordinated Noteholders Subordination Agreement and the Simon Subordination Agreement, collectively, the "**Subordination Agreements**"), each of the

-14-

Prepetition Subordinated Creditors has agreed, among other things (x) that their respective Prepetition Subordinated Liens are subordinate and junior to the liens securing the Prepetition Senior Obligations and the DIP Obligations and (y) the obligations under the applicable Subordinated Indebtedness Documents are subordinated in all respects to the prior payment in full of the Prepetition Senior Obligations and the DIP Obligations. Each Subordination Agreement is a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code and the respective interests thereunder shall continue to be governed by each applicable Subordination Agreement unless otherwise expressly provided by this Final Order. The DIP Agent has advised the Debtors that its willingness to provide the DIP Facility is conditioned on, among other things, the DIP Agent (in addition to the Prepetition Senior Agent) having all rights of the Prepetition Senior Agent under the subordination provisions set forth in each Subordination Agreement.

   F.     *Findings Regarding the Postpetition Financing.*

        (i)     *Request for Postpetition Financing.* The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations; (c) apply the proceeds of DIP Collateral in accordance of paragraph 18(a) of this Final Order and (d) repay the remaining Prepetition Senior Obligations upon the entry of this Final Order.

        (ii)     *Priming of the Prepetition Senior Liens; Consent to Use of Cash Collateral.* The priming of the Prepetition Senior Liens on the Prepetition Collateral by the DIP Liens will enable the Debtors to obtain the DIP Facility, to reorganize their business affairs and debts, and continue to operate their businesses for the benefit of their estates and creditors. Each Prepetition Senior Creditor has consented to such priming liens and to the Debtors' use of Cash

DOCS_SF:96376.6 91893/002

Collateral under the terms and conditions set forth in this Final Order and is entitled to receive adequate protection of its interests as more fully described below.

(iii)     *Immediate Need for Postpetition Financing and Use of Cash Collateral.* The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to reorganize their business affairs and debts, and to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships, pay their employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful administration of these Cases. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or to maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)     *No Credit Available on More Favorable Terms.*   Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Secured Parties on terms more favorable than the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.

Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of the DIP Secured Parties, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Final Order.

(v)     *Use of Proceeds of the DIP Facility.*  As a condition to entry into the DIP Loan Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used (a) for the repayment in full in cash of all remaining Prepetition Senior Obligations upon the entry of this Final Order (other than contingent indemnification obligations and obligations with respect to cash management services, bank products and letters of credit, each of which shall remain outstanding and be deemed to be bank products, cash management services and letters of credit under the DIP Facility), and (b) in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as **Exhibit B** hereto, as the same may be modified from time to time consistent with the terms of the DIP Loan Documents, and subject to such variances as may be permitted thereby, the "**Approved Budget**"), solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction fees, costs and expenses, (iii) permitted payments of costs of administration of the Cases, including, without limitation, professional fees, (iv) adequate protection payments to the Prepetition Senior Creditors and the Prepetition Subordinated Noteholders as set forth herein, and (v) as otherwise permitted under the DIP Loan Documents, as applicable.  The repayment of the Prepetition Senior Obligations in accordance with this Final Order is necessary, as the Prepetition Senior Creditors have not otherwise consented to the use of Cash Collateral or the subordination of the Prepetition Senior Agent's

liens to the DIP Liens (as defined herein), and the DIP Secured Parties are not willing to provide the DIP Facility unless the Prepetition Senior Obligations (other than contingent indemnification obligations and obligations with respect to cash management services, bank products and letters of credit, each of which shall remain outstanding and be deemed to be bank products, cash management services and letters of credit under the DIP Facility) are paid in full upon the entry of this Final Order and as otherwise set forth herein. Such payments will not prejudice the Debtors or their estates, because payment of such amounts is subject to the rights of parties in interest under paragraphs 34 and 35 herein.

(vi) *Application of Proceeds of DIP Collateral; Integrated Transaction.* As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtors, the DIP Agent and the DIP Term Agent have agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 18(a) of this Final Order. The extension of the DIP Facility and the repayment of the Prepetition Senior Obligations are part of an integrated transaction.

G. *Adequate Protection.* As a result of the grant of the DIP Liens, the incurrence of the DIP Obligations, the subordination of the Prepetition Senior Liens and the Prepetition Subordinated Liens to the Carve-Out, the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Senior Creditors and Prepetition Subordinated Creditors are entitled to receive adequate protection pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and as set forth in paragraphs 12 and 13 of this Final Order. As adequate protection, (i) each of the Prepetition Senior Creditors and the Prepetition Subordinated Creditors shall receive, among other things, the Adequate Protection Liens (as defined herein) to secure the Prepetition Senior Obligations and Prepetition Subordinated Obligations and

Adequate Protection Superpriority Claims (as defined herein) with respect to the Prepetition Senior Obligations and Prepetition Subordinated Obligations, (ii) the Prepetition Senior Creditors shall receive payments of interest at the default rate, fees, costs and expenses (including, without limitation, reasonable professional fees, costs and expenses), indemnities and other amounts with respect to the Prepetition Senior Obligations in accordance with the Prepetition Loan Documents, and (iii) the Prepetition Subordinated Noteholders shall capitalize unpaid interest accrued during the post-petition period at a rate per annum of 10.375% and receive during the post-petition period payment of legal fees in accordance with and subject to paragraph 12(b)(ii) of this Final Order.

H. *Sections 506(c) and 552(b)*. Subject to the limitation set forth in paragraph 37, in light of (i) the DIP Agent's agreement to subordinate its liens and superpriority claims, as applicable, to the Carve-Out (as defined herein); and (ii) each Prepetition Senior Creditor's and Prepetition Subordinated Noteholders' agreement to subordinate the Adequate Protection Superpriority Claims and the Adequate Protection Liens to the Carve-Out, the DIP Liens, and the DIP Superpriority Claim (as defined below), in each case as applicable, each of the DIP Secured Parties, each Prepetition Senior Creditor and each Prepetition Subordinated Noteholders is entitled to a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code as provided herein, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

I. *Good Faith of the DIP Secured Parties*.

(i) *Willingness to Provide Financing*. Each of the DIP Secured Parties has indicated a willingness to provide financing to the Debtors subject to: (a) the entry of this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents and the payoff of the Prepetition Senior Obligations as contemplated by this Final Order; and (c)

entry of findings by this Court that such financing is essential to the Debtors' estates, that each of the DIP Secured Parties is extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that each of the DIP Secured Parties' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

(ii) *Business Judgment and Good Faith Pursuant to Section 364(e).* The extension of credit under the DIP Facility reflects the Debtors' exercise of prudent business judgment, consistent with their fiduciary duties, and is supported by reasonably equivalent value and consideration. The DIP Facility and the use of Cash Collateral by the Debtors were negotiated in good faith and at arms' length among the Debtors and the DIP Secured Parties. The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and each of the DIP Secured Parties is therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Final Order.

J. *Notice.* Notice of the Interim Hearing and the Final Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee for the District of Delaware; (ii) the Internal Revenue Service; (iii) the parties included on the Debtors' consolidated list of the thirty (30) largest unsecured creditors; (iv) counsel to each of the Prepetition Senior Agent and the Prepetition Term Agent; (v) counsel for the Committee; (vi)

any party of record that has asserted a lien in the Debtors' assets; (vii) counsel to the Kayne Subordinated Noteholders (as defined below); (viii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; and (ix) applicable state taxing authorities. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Final Order, and no other or further notice is or shall be required.

K. _Immediate Entry_. Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. Financing Approved. The Motion is granted on a final basis, the Financing is authorized and approved on a final basis, and the use of Cash Collateral is authorized on a final basis, subject to the terms and conditions set forth in this Final Order.

2. Objections Overruled. All objections to the Motion, the Financing and the use of Cash Collateral, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Facility Authorization**

3. Authorization of the DIP Financing and DIP Loan Documents. The Debtors are expressly and immediately authorized and empowered (i) to execute and deliver the DIP Loan Documents, (ii) to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order, the DIP Loan Documents and the Approved Budget, (iii) to deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Loan Documents, and (iv) subject to the rights of

-21-

third parties pursuant to paragraphs 34 and 35 below and the entry of this Final Order, to pay and perform all obligations under the Prepetition Senior Loan Documents in accordance with the terms set forth herein, including to provide for (x) the releases in favor of each of the Prepetition Senior Creditors, the Prepetition Subordinated Noteholders, and the other Releasees and (y) repayment in full in cash of the Prepetition Senior Obligations (other than contingent indemnification obligations and obligations with respect to cash management services, bank products and letters of credit, each of which shall remain outstanding and be deemed to be bank products, cash management services and letters of credit under the DIP Facility), to the extent remaining outstanding, upon entry of this Final Order. The Debtors are hereby authorized to pay the principal, interest, fees, costs, expenses and other amounts described in the DIP Loan Documents as such become due and without need to obtain further Court approval, including, without limitation, commitment fees, closing fees, administrative fees, any additional fees set forth in the DIP Loan Documents, and the reasonable fees and disbursements of the DIP Secured Parties' attorneys, advisers, accountants, and other consultants, whether or not the transactions contemplated hereby are consummated, all to the extent provided in the DIP Loan Documents, with invoices to be provided in accordance with paragraph 27 below. All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

4. _Authorization to Borrow._ Until the Termination Date, and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP

DOCS_SF:96376.6 91893/002

Facility and this Final Order, the Debtors are hereby authorized to request extensions of credit under the DIP Facility up to an aggregate principal amount of $57,250,000 at any one time outstanding. No other corporate action is required for the Debtors to execute and deliver the DIP Loan Documents, perform their obligations thereunder or request any extension of credit under the DIP Facility as set forth herein.

5. <u>DIP Obligations</u>. The DIP Loan Documents, the Interim Order and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases (collectively, "**Successor Cases**"). Upon entry of this Final Order, the DIP Obligations include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Secured Parties under the DIP Loan Documents, the Interim Order or this Final Order, including, without limitation, all principal, accrued interest, fees, costs, expenses and other amounts owed pursuant to the DIP Loan Documents, and shall be joint and several obligations of the Debtors in all respects.

6. <u>Postpetition Liens and Collateral</u>.

(a) Effective immediately upon the entry of the Interim Order, subject to the limitations set forth in clauses xvii(b) and xviii below, pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the Debtors were authorized to grant and did grant to the DIP Agent (for the benefit of itself and the other DIP Secured Parties under the DIP Loan Documents) continuing valid, binding, enforceable, non-avoidable and automatically and

properly perfected postpetition security interests in and liens on (collectively, the "**<u>DIP Liens</u>**"), which DIP Liens are hereby ratified and confirmed, any and all now owned and hereafter acquired rights title and interest in and to all real and personal property of the Debtors, including, without limitation, the following (the "**<u>DIP Collateral</u>**"),[4] which DIP Collateral is hereby ratified and confirmed:

    (i)      Accounts and accounts receivable;

    (ii)     Chattel Paper;

    (iii)    DDAs;

    (iv)    Documents;

    (v)      General Intangibles;

    (vi)    Goods (including, without limitation, Inventory, Fixtures and Equipment)

    (vii)    Instruments;

    (viii)   Investment Property;

    (ix)    Letters of Credit, Letter of Credit Rights and Payment Intangibles;

    (x)      Commercial Tort Claims;

    (xi)    Supporting Obligations;

    (xii)   money or other assets of any Debtor that now or hereafter come into the possession, custody, or control of any DIP Agent, DIP Term Agent, or DIP Lender or any affiliate thereto;

---

[4] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents. All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

DOCS_SF:96376.6 91893/002

(xiii)   proceeds from the sale, assignment or other disposition of Real Property and Leasehold Interests;[5]

(xiv)   all money, policies and certificates of insurance, deposits, impressed accounts, compensating balances, cash, cash equivalents, or other property;

(xv)   all owned Real Property;

(xvi)   all IP Collateral;

(xvii)   all proceeds of any recovery or settlement arising under Section 549 of the Bankruptcy Code;

(xviii)   the Debtors' rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof;

(xix)   all insurance policies proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds and premium rebates arise out of any of the foregoing (subparagraphs (i) through (xviii) hereof) or otherwise;

(xx)   all liens, guarantees, rights, remedies and privileges pertaining to any of the foregoing (subparagraphs (i) through (xix) hereof), including the right of stoppage in transit, and

(xxi)   all books, records, and information relating to any of the foregoing and/or to the operation of any Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained;

---

[5] For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

(xxii)   to the extent not otherwise covered by clauses (i) through (xxi) above, all other personal property of each Debtor, whether tangible or intangible, and any and all proceeds and products, whether tangible or intangible, of any of the foregoing (subparagraphs (i) through (xxi) hereof and this subparagraph (xxii)), including all rents, profits, and products of each of the foregoing and all proceeds of insurance, indemnity, warranty or guaranty covering any or all of the foregoing, and any and all Accounts, Books, General Intangibles, Goods (including without limitation Equipment and Inventory), Investment Property, Negotiable Collateral, money, DDAs, or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof, and all accessions to, substitutions and replacements of each of the foregoing.

For the avoidance of doubt, DIP Collateral shall not include proceeds of claims or causes of action that the Debtors may be entitled to assert by reason of avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under Chapter 5 (other than proceeds of any recovery or settlement arising under Section 549 of the Bankruptcy Code) or Section 724(a) of the Bankruptcy Code and any and all recoveries and settlements thereof (collectively, the "**Bankruptcy Recoveries**").

(b)      (i) all DIP Liens and the Carve-Out shall each be and remain at all times senior to the Prepetition Senior Liens and the Prepetition Subordinated Liens, (ii) all existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements and the Subordination Agreements), and freight forwarder agreements

DOCS_SF:96376.6 91893/002

entered into or in connection with the Prepetition Senior Loan Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the Intellectual Property of the Debtors, which in each case were filed by the Prepetition Senior Agent or the Prepetition Term Agent, shall in each case be deemed to be delivered and/or filed in connection with the DIP Facility, shall constitute DIP Loan Documents and shall remain in full force and effect without any further action by the Debtors, the DIP Agent, the DIP Term Agent or any other person, and in each case the DIP Agent shall be deemed to be a party thereto, (iii) any and all references in any such agreements or documents referred to in clause (ii) above to the "Loan Agreement", "Loan and Security Agreement", "Credit Agreement" or words of similar import shall hereafter be deemed to mean and refer to the Prepetition Loan Agreement and the DIP Loan Agreement, and (iv) any and all references in any such agreements or documents to the "Loan Documents" shall hereafter be deemed to mean and refer to the Prepetition Senior Loan Documents and the DIP Loan Documents, in each case as amended, modified, supplemented or restated and in effect from time to time. The DIP Agent and the DIP Lenders, as applicable, are hereby deemed to have all of the rights and remedies accorded to the "Agent", the "Lenders", the "Senior Agent" and the "Senior Lenders", as applicable, under each applicable Subordination Agreement, the DIP Loan Agreement (in addition to the Prepetition Loan Agreement) shall be deemed to be a "Loan Agreement" and a "Senior Credit Agreement" under each applicable Subordination Agreement, and the DIP Obligations (in addition to the Prepetition Senior Obligations) shall be deemed to be "Senior Obligations" and "Senior Debt" under each applicable Subordination Agreement. Except as set forth in this Final Order, nothing in this Final Order shall be deemed to impair or otherwise

DOCS_SF:96376.6 91893/002

modify the rights of the Prepetition Senior Agent, the Prepetition Term Agent or any other Prepetition Senior Creditor under any such agreements or documents as in effect prior to the date hereof.

7. DIP Lien Priority.

(a) *DIP Liens.* The DIP Liens shall be junior only to the (i) Carve-Out, and (ii) the Prepetition Permitted Liens, and shall otherwise be senior in priority and superior to the Prepetition Senior Liens, Prepetition Subordinated Liens, the Adequate Protection Liens (as defined herein), Adequate Protection Superpriority Claims (as defined herein), the Subordinated Adequate Protection Liens (as defined herein) and the Subordinated Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.

(b) Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, except as otherwise expressly permitted under the DIP Loan Documents. Any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Facility, DIP Liens and DIP Collateral as such claims had with respect to the Prepetition Senior Liens in the Prepetition Collateral and the DIP Collateral. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to challenge under Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the

-28-

benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(c) *Prepetition Senior Liens.* For the avoidance of doubt, the Prepetition Senior Liens shall be junior to (i) the Carve-Out; (ii) the DIP Liens; (iii) the Adequate Protection Liens described in paragraph 12 below; and (iv) the Adequate Protection Superpriority Claims.

8. DIP Superpriority Claim.

(a) *DIP Agent Superpriority Claim.* The DIP Agent (for the benefit of itself and the other DIP Secured Parties under the DIP Loan Documents) is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations. The DIP Superpriority Claim shall be subordinate only to the DIP Liens, the Carve-Out and Prepetition Permitted Liens, and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 and 1114 of the Bankruptcy Code.

(b) *Priority of DIP Superpriority Claim.* Subject to the last sentence of this paragraph 8(b), the DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, including the Bankruptcy Recoveries, but in all cases subject only to the payment of the Carve-Out and amounts secured by the Prepetition Permitted Liens to the extent paid from identifiable proceeds of the assets subject to such Prepetition Permitted Liens. Notwithstanding anything to the contrary herein, the DIP Superpriority Claim shall first be paid out of other available assets of the Debtors' estates prior to turning to the Bankruptcy Recoveries.

DOCS_SF:96376.6 91893/002

9.    <u>No Obligation to Extend Credit</u>.  No DIP Secured Party shall have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Loan Documents and this Final Order have been satisfied in full or waived in accordance with the DIP Loan Documents.

10.    <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Loan Documents, and in compliance with the Approved Budget.

**Authorization to Use Cash Collateral**

11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in compliance with the Approved Budget, the Debtors are authorized to use Cash Collateral until the Termination Date; <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral solely to meet payroll (other than severance) and to pay expenses critical to the preservation of the Debtors and their estates as agreed by the DIP Agent in its sole discretion, in each case in accordance with the terms and provisions of the Approved Budget.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Loan Documents, and in accordance with the Approved Budget.

12.    <u>Adequate Protection Liens; Adequate Protection Payments; Access to Records</u>. Subject to paragraph 34 of this Final Order, as adequate protection for the interest of the Prepetition Senior Creditors and each of the Prepetition Subordinated Creditors in the Prepetition Collateral (including Cash Collateral) on account of any diminution in value arising from the

-30-

granting of the DIP Liens, the incurrence of the DIP Obligations, the subordination of the Prepetition Senior Liens and the Prepetition Subordinated Liens to the Carve-Out, the Debtors' use of Cash Collateral, and any diminution in value arising out of the imposition of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of the Cases, if any (collectively, "**Diminution in Value**"), the Prepetition Senior Creditors and each Prepetition Subordinated Creditor shall receive adequate protection as follows:

(a) *Creation of Adequate Protection Liens.* (i) The Prepetition Senior Agent (for the benefit of itself and the other Prepetition Senior Creditors) is hereby granted on a final basis, pursuant to Sections 361 and 363 of the Bankruptcy Code valid and perfected replacement and additional security interests in, and liens on all of the Debtors' right, title and interest in, to and under all DIP Collateral (the "**Senior Adequate Protection Liens**"); provided, that the Senior Adequate Protection Liens shall not attach to the Bankruptcy Recoveries. The Senior Adequate Protection Liens granted to the Prepetition Senior Agent shall secure the Prepetition Senior Obligations solely to the extent of any Diminution in Value. The Senior Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected, and subordinate and subject only to (i) the DIP Liens, (ii) the Prepetition Permitted Liens and (iii) the Carve-Out. Other than as set forth herein, until the indefeasible payment in full in cash of the Prepetition Senior Obligations (other than contingent indemnification obligations and obligations with respect to cash management services, bank products and letters of credit, each of which shall remain outstanding and be deemed to be bank products, cash management services and letters of credit under the DIP Facility), the Senior Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted

in the Cases or any Successor Cases. Each Prepetition Subordinated Creditor is hereby granted on a final basis, pursuant to Sections 361 and 363 of the Bankruptcy Code, valid and perfected replacement and additional security interests in, and liens on certain collateral of the Debtors and solely to the extent such Prepetition Subordinated Creditor had a lien on such collateral prior to the Petition Date (the "**Subordinated Adequate Protection Liens**" and together with the Senior Adequate Protection Liens the "**Adequate Protection Liens**") to secure the obligations owed to each such Prepetition Subordinated Creditor solely to the extent of any Diminution in Value. The Subordinated Adequate Protection Liens are and shall be (x) valid, binding enforceable and fully perfected, (y) subordinate and subject to (i) the DIP Liens, (ii) the Prepetition Senior Liens, (iii) the Prepetition Permitted Liens, (iv) the Carve-Out, (v) the Senior Adequate Protection Liens, (vi) the DIP Superpriority Claims and (vii) the Adequate Protection Superpriority Claims and (z) in all instances, subject to the applicable Subordination Agreement. Notwithstanding anything to the contrary herein, the Subordinated Adequate Protection Liens granted to the Prepetition Subordinated Noteholders shall be senior to the Subordinated Adequate Protection Liens granted to Simon and Galleria. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases.

(b)    *Adequate Protection Payments.* (i) The Prepetition Senior Creditors shall receive additional adequate protection in the form of: (A) subject to the notice and objection provisions set forth in paragraph 27 herein, the current payment of fees, costs and expenses in accordance with the Prepetition Senior Loan Agreement, including, without limitation, all

DOCS_SF:96376.6 91893/002

Lender Expenses and the reasonable fees, costs and expenses of the attorneys, advisers, accountants, and other consultants of the Prepetition Senior Creditors, (B) subject to paragraphs 34 and 35, the indefeasible payment in full in cash of the any remaining Prepetition Senior Obligations, including any outstanding amounts of the Prepetition Term Loan and Prepetition Revolving Credit Loans but excluding contingent indemnification obligations and obligations with respect to cash management services, bank products and letters of credit, each of which shall remain outstanding and be deemed to be bank products, cash management services and letters of credit under the DIP Facility), and (C) maintenance by the Prepetition Senior Agent, for the benefit of the Prepetition Senior Creditors of the Prepetition Indemnity Reserve (as defined in the Interim Order) in the amount of $250,000 to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition Senior Loan Documents (the "**Prepetition Indemnity Obligations**"). (A) The Prepetition Indemnity Reserve shall secure all fees, costs, expenses, and other amounts incurred by the Prepetition Senior Agent, Prepetition Term Agent and the Prepetition Senior Lenders in connection with or related to the Prepetition Indemnity Obligations, including, without limitation, such fees, costs, expenses, and other amounts (including reasonable fees, costs and expenses of the Prepetition Senior Creditors' attorneys and advisers) incurred responding to any (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraphs 34 and 35 hereof, (2) Challenge against the Prepetition Senior Agent, Prepetition Term Agent or Prepetition Senior Lenders related to the Prepetition Senior Loan Documents, the Prepetition Senior Obligations, or the Prepetition Senior Liens granted to the Prepetition Senior Agent, as applicable, whether in these Cases or independently in another forum, court, or venue, or (3) formal or informal inquiries

-33-

and/or discovery requests, any adversary proceeding, cause of action, objection, claim, or defense in connection with or related to any obligations arising under the Prepetition Senior Loan Documents; (B) the Prepetition Indemnity Obligations shall be secured by a first lien on the Prepetition Indemnity Reserve and the funds therein and by a lien on the Prepetition Collateral; (C) the Prepetition Senior Agent and Prepetition Senior Lenders may apply amounts in the Prepetition Senior Indemnity Reserve against the Prepetition Senior Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court, subject to the requirements of paragraph 27 of this Final Order; and (D) until the Challenge Period Termination Date (as defined below), the Prepetition Senior Agent (for itself and on behalf of the Prepetition Senior Lenders) shall retain and maintain the Prepetition Senior Liens granted to the Prepetition Senior Agent as security for the amount of any Prepetition Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition Indemnity Reserve; (ii) provided no Default or Event of Default exist under the DIP Loan Agreement, the Prepetition Subordinated Noteholders shall receive additional adequate protection in the form of the capitalization of interest accrued on the Subordinated Notes during the post-petition period at a rate per annum equal to 10.375%, and the current payment of the reasonable fees of one principal law firm and one local Delaware law firm in accordance with the Prepetition Subordinated Note Documents up to the amounts set forth in the Approved Budget and, to the extent of any fees in excess of the amounts set forth in the Approved Budget, accrual and payment of such excess amounts (only to the extent such amounts are reasonable) upon the effective date of a chapter 11 plan.

(c)    *Access to Records.*  In addition to, and without limiting, whatever rights of access the Prepetition Senior Creditors have under their respective Prepetition Senior Loan Documents or the Prepetition Subordinated Noteholders have under their respective Prepetition Subordinated Note Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, as applicable (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, (iii) to discuss the Debtors' affairs, finances and condition with the Debtors' officers and financial advisors, and (iv) to otherwise have the full cooperation of the Debtors.  Without limiting the foregoing, the Debtors shall provide copies to the Prepetition Senior Agent and the Prepetition Subordinated Noteholders of any documents, notices or other materials provided to any DIP Secured Party simultaneously with the delivery of such documents, notices or materials to such DIP Secured Party.

13.    Adequate Protection Superpriority Claims.

(a)    *Superpriority Claim of Prepetition Senior Agent.*    As further adequate protection of the interests of the Prepetition Senior Agent with respect to the Prepetition Senior Obligations, the Prepetition Senior Agent (for the benefit of itself and the other Prepetition Senior Creditors) is hereby granted on a final basis an allowed administrative claim against the Debtors' estates under Section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates as provided for by Section 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of the Prepetition Senior Agent's interests in the Prepetition Collateral.

DOCS_SF:96376.6 91893/002

(b)     As further adequate protection of the interests of the Prepetition Subordinated Creditors with respect to the obligations under the Prepetition Subordinated Indebtedness Documents, each Prepetition Subordinated Creditor is hereby granted on a final basis an allowed administrative claim against the Debtors' estates under Section 503 of the Bankruptcy Code, with priority over all administrative expense claims, except as set forth below, and unsecured claims against the Debtors and their estates as provided for by Section 507(b) of the Bankruptcy Code (the "**Subordinated Adequate Protection Superpriority Claims**") to the extent that the Subordinated Adequate Protection Liens do not adequately protect against any Diminution in Value of the applicable Prepetition Subordinated Creditor's interests in the collateral securing the obligations under the applicable Prepetition Subordinated Indebtedness Documents. Notwithstanding anything to the contrary, the Subordinated Adequate Protection Superpriority Claims of Simon and Galleria shall be in all respects and for all purposes subordinate and junior to the Subordinated Adequate Protection Superpriority Claims of the Prepetition Subordinated Noteholders.

(c)     *Priority of Adequate Protection Superpriority Claims*.  The Adequate Protection Superpriority Claim granted to the Prepetition Senior Agent shall be junior to the Carve-Out, the Prepetition Permitted Liens, the DIP Liens, the DIP Superpriority Claim and the Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code. Subject to the foregoing, the Adequate Protection Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, including the Bankruptcy Recoveries, but in all cases subject to the payment in full in cash of the DIP Obligations, the Carve-Out and amounts secured by the Prepetition Permitted Liens to the

-36-

extent paid from identifiable proceeds of the assets subject to such Prepetition Permitted Liens. The Subordinated Adequate Protection Superpriority Claims shall (x) be junior to (i) the DIP Liens, (ii) the Prepetition Senior Liens, (iii) the Prepetition Permitted Liens, (iv) the Carve-Out, (v) the Adequate Protection Liens, (vi) the DIP Superpriority Claims and (vii) the Adequate Protection Superpriority Claims, (y) be in all instances, subject to the applicable Subordination Agreement and (z) otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code. Subject to the foregoing, the Subordinated Adequate Protection Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, including the Bankruptcy Recoveries, but in all cases subject to the payment in full in cash of the DIP Obligations, the Prepetition Senior Obligations, the Carve-Out and amounts secured by the Prepetition Permitted Liens to the extent paid from identifiable proceeds of the assets subject to such Prepetition Permitted Liens.

(d) Nothing herein shall impair or modify the Prepetition Senior Creditors' rights under Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Senior Creditors hereunder is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Senior Creditors' in the Prepetition Collateral during these Cases or any Successor Cases.

(e) Nothing herein shall impair or modify the Prepetition Subordinated Noteholders' rights under Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Subordinated Noteholders hereunder is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Subordinated

Noteholders in the Prepetition Collateral during these Cases or any Successor Cases, subject to the Subordinated Noteholders Subordination Agreement.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14. <u>Amendments</u>. The DIP Loan Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) non-material and non-adverse to the Debtors, (b) in accordance with the DIP Loan Documents and (c) the Debtors provide the Notice Parties (as defined below) with copies of such amendment, modification or supplement. In the case of a material amendment, modification, or supplement to the DIP Loan Documents or an amendment, modification, or supplement that is adverse to the Debtors' estates, the Debtors shall provide notice and a copy of the form of amendment, modification or supplement (which may be provided through electronic mail or facsimile) to counsel for the Committee, the U.S. Trustee, counsel to the Kayne Subordinated Noteholders, and any other parties who have filed a notice of appearance and request for service of papers (collectively, the "**Notice Parties**"), each of whom shall have three (3) Business Days from the date of such notice to object in writing to such amendment, modification or supplement. If all Notice Parties indicate that they have no objection to the amendment, modification or supplement (or if no objections are timely received), the Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution. If a Notice Party timely objects to such amendment, modification or supplement, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; provided that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard. Any material modification, amendment or supplement that becomes effective in accordance with this paragraph 14 shall be filed with the Court.

15.    Approved Budget.  The Approved Budget and any modification to, or amendment

or update of, the Approved Budget shall be in form and substance reasonably acceptable to the

DIP Agent and approved by the DIP Agent in its Permitted Discretion.  The Debtors shall

comply with and update the Approved Budget from time to time in consultation with the

Committee and in accordance with the DIP Loan Documents (provided that any update shall be

in form and substance reasonably acceptable to the DIP Agent and approved by the DIP Agent in

its Permitted Discretion).  On or before Tuesday of each week following the Closing Date, the

Debtors shall deliver to the DIP Agent an Approved Budget Variance Report (with delivery of

the same to the U.S. Trustee, the Committee, the Prepetition Senior Agent and the Prepetition

Subordinated Noteholders, after delivery to the DIP Agent).  During the eighth (8th) week of the

initial Approved Budget, the Debtors shall submit a budget for the next successive thirteen week

period to the DIP Agent (with delivery of the same to the U.S. Trustee, the Committee, the

Prepetition Senior Agent and the Prepetition Subordinated Noteholders, after delivery to the DIP

Agent), which budget shall be in form and substance reasonably acceptable to the DIP Agent and

approved by the DIP Agent in its Permitted Discretion.  Until a budget has been approved, the

Approved Budget shall remain in full force and effect.

16.    Modification of Automatic Stay.  The automatic stay imposed under Section

362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and

provisions of this Final Order, including, without limitation, to:  (a) permit the Debtors to grant

the DIP Liens, the Senior Adequate Protection Liens, the Subordinated Adequate Protection

Liens, the DIP Superpriority Claim, the Adequate Protection Superpriority Claims, and the

Subordinated Adequate Protection Superpriority Claims; and (b) authorize the Debtors to pay,

and the DIP Secured Parties, Prepetition Senior Creditors and the Prepetition Subordinated

Noteholders to retain and apply, payments made in accordance with the terms of this Final Order.

17. <u>Perfection of DIP Liens and Adequate Protection Liens</u>. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens, the Adequate Protection Liens and the Subordinated Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens and the Subordinated Adequate Protection Liens, or to entitle the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Creditors to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent, the Prepetition Senior Creditors and the Prepetition Subordinated Creditors are authorized to file such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, the Adequate Protection Liens or the Subordinated Adequate Protection Liens, as applicable, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens, the Adequate Protection Liens or the Subordinated Adequate Protection Liens, as applicable. The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agent, the Prepetition Senior Creditors or the

Prepetition Subordinated Creditors, as applicable, all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent, the Prepetition Senior Creditors and/or any Prepetition Subordinated Creditor, as applicable, may reasonably request. The DIP Agent, the Prepetition Senior Creditors or the Prepetition Subordinated Creditor may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

18. <u>Application of Proceeds of DIP Collateral</u>. All funds transferred and credited to the "Concentration Account" maintained by the Debtors at Wells Fargo Bank, National Association and all net proceeds from any DIP Collateral shall be applied in accordance with the DIP Loan Documents to the DIP Obligations until the DIP Obligations are Paid in Full and the Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and the Prepetition Senior Obligations (each in accordance with the DIP Loan Documents and this Final Order) and obligations authorized by an order of the Court.

19. <u>Proceeds of Subsequent Financing</u>. If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases shall obtain credit or incur debt pursuant to Sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full in cash of all Prepetition Senior Obligations and all DIP Obligations, and the termination of the DIP Secured Parties' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of

reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 18(a) herein.

20. <u>Maintenance of DIP Collateral and Prepetition Collateral</u>. Until the indefeasible payment in full in cash of all Prepetition Senior Obligations and all DIP Obligations and the termination of the DIP Secured Parties' obligations to extend credit under the DIP Loan Documents, as provided therein, the Debtors shall: (a) insure the Prepetition Collateral and DIP Collateral as required under the Prepetition Senior Loan Documents and DIP Loan Documents; and (b) maintain the cash management system which has been agreed to by the DIP Agent and the DIP Term Agent or as otherwise required by the DIP Loan Documents and the Prepetition Senior Loan Documents.

21. <u>Disposition of DIP Collateral</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Loan Documents. Nothing provided herein shall limit the right of any DIP Secured Party or any Prepetition Senior Creditor to object to any proposed disposition of the DIP Collateral.

22. <u>Credit Bidding</u>. No Debtor shall object to the DIP Secured Parties or the Prepetition Senior Creditors credit bidding up to the full amount of the applicable outstanding DIP Obligations or Prepetition Senior Obligations, in each case including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. Subject to the rights of the Committee set forth in paragraph 34 of this Final Order, in connection with any sale process authorized by the Court, the DIP Agent, DIP Secured Parties, Prepetition Senior Agent

-42-

and Prepetition Secured Parties may credit bid some or all of their claims for their respective priority collateral (each a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code. Each of the DIP Secured Parties and Prepetition Senior Creditors shall be considered a "Qualified Bidder" with respect to its rights to acquire all or any of the assets by Credit Bid.

23.     <u>DIP Termination Date</u>.  On the DIP Termination Date (as defined below), (i) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate and (ii) all authority to use Cash Collateral shall cease, <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein. As used herein "**DIP Termination Date**" shall mean "Termination Date" as defined in the DIP Loan Agreement.

24.     <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Loan Agreement shall constitute an event of default under this Final Order (each, an "**Event of Default**").

25.     <u>Rights and Remedies Upon Event of Default</u>.

(a)     *DIP Facility Termination*.      Immediately upon the occurrence and during the continuance of an Event of Default under the DIP Facility, the DIP Agent may in its discretion (or shall in accordance with the DIP Loan Documents): (i) declare the DIP Facility terminated (such declaration, a "**Termination Declaration**") or (ii) send a reservation of rights notice to the Debtors, which notice may advise the Debtors that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent and/or DIP Lenders.  Upon the Termination Date (as defined below): (I) all or any portion of the Commitments of the DIP Agent, the DIP Term Agent and DIP Lenders to make loans or otherwise extend credit may be suspended or terminated in accordance with the DIP Loan Documents; (II) all DIP Obligations

may be deemed immediately due and payable in accordance with the DIP Loan Documents; (III) subject to the Remedies Notices Period, the DIP Agent, the DIP Term Agent and DIP Lenders may exercise all other rights and remedies available to them under Article 10 of the DIP Loan Agreement; and (IV) after expiration of the Remedies Notice Period (as defined herein), any right or ability of the Debtors to use any Cash Collateral may be terminated, reduced or restricted by the DIP Agent, provided that, during the Remedies Notice Period, the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein. With respect to the DIP Collateral, following the Termination Declaration, subject to the Remedies Notice Period, the DIP Secured Parties and the Prepetition Senior Creditors may exercise all rights and remedies available to them under the DIP Loan Documents or the Prepetition Senior Loan Documents, as applicable, or applicable law against the DIP Collateral and without limiting the foregoing, the DIP Secured Parties and the Prepetition Senior Creditors may, subject to the Remedies Notice Period, (i) subject to paragraph 25(d), enter onto the premises of any Debtor in connection with an orderly liquidation of the DIP Collateral; and/or (ii) exercise any rights and remedies provided under the DIP Loan Documents or the Prepetition Senior Loan Documents, as applicable, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Final Order. For the avoidance of doubt, no party-in-interest (other than (A) the DIP Secured Parties, (B) the Prepetition Senior Agent, and (C) solely with respect to any particular DIP Collateral that is the subject of a Prepetition Permitted Lien, holders of such Prepetition Permitted Lien) may at any time exercise any rights and remedies available to them against the DIP Collateral until the DIP Obligations and the Prepetition Senior Obligations are indefeasibly paid in full in cash.

(b) *Sales Process*. In addition, if a Specified Sale Process Default (as defined in the DIP Loan Agreement) occurs and is continuing, the DIP Agent (with the consent of the

DIP Term Agent solely with respect to any DIP Collateral that constitutes Term Loan Priority Collateral) may direct the Debtors to commence a process for the sale of all or any portion of the DIP Collateral (the "**Sales Process**"), pursuant to which the Debtors must: (a) within three (3) Business Days after the expiration of a Remedies Notice Period triggered by a Specified Sale Process Default, obtain entry of an Order from the Court, in form and substance approved by the DIP Agent, designating a liquidating stalking horse bidder(s) for the Sales Process consented to by the DIP Agent in its sole discretion and, solely with respect to the sale of any DIP Collateral that constitutes Term Loan Priority Collateral, the DIP Term Agent in its sole discretion, and approving bidding and sales procedures with respect to the Sales Process; (b) within seven (7) Business Days after the expiration of a Remedies Notice Period triggered by a Specified Sale Process Default, complete an auction for the Sale Process and declare a "successful bidder" or "successful bidder(s)" for the Sales Process on terms and conditions consented to by the DIP Agent in its sole discretion and, solely with respect to the sale of any DIP Collateral that constitutes Term Loan Priority Collateral, the DIP Term Agent in its sole discretion; (c) within eight (8) Business Days after the expiration of a Remedies Notice Period triggered by a Specified Sale Process Default, obtain entry of an Order from the Court, (the "**Sale Order**") in form and substance acceptable to the DIP Agent and, solely with respect to the sale of any DIP Collateral that constitutes Term Loan Priority Collateral, the DIP Term Agent, approving the Sales Process; and (d) within one (1) Business Day following entry of the Sale Order after the expiration of a Remedies Notice Period triggered by a Specified Sale Process Default, execute an agency agreement for the Sales Process approved by the DIP Agent in its sole discretion and, solely with respect to the sale of any DIP Collateral that constitutes Term Loan Priority Collateral, the DIP Term Agent in its sole discretion, in connection with the Sales Process and commence the Sales

DOCS_SF:96376.6 91893/002

Process pursuant to the applicable approved agency agreement and the Sale Order; provided, that the rights of the Committee and all parties in interest to contest any of the relief requested in accordance with this paragraph 25(b) are fully preserved.

(c)     *Notice of Termination.*  Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to the Debtors, counsel to the Debtors, counsel to each Prepetition Senior Creditor, counsel to the Committee, counsel to Kayne Subordinated Noteholders and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**") (the date which is the earliest to occur of the Termination Declaration Date and the DIP Termination Date shall be referred to herein as the "**Termination Date**").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date, except as provided in paragraphs 11, 23 and 25 of this Final Order. Any automatic stay otherwise applicable to the DIP Secured Parties and the Prepetition Senior Creditors is hereby modified so that five (5) calendar days after the Termination Date (the "**Remedies Notice Period**"), the DIP Secured Parties and the Prepetition Senior Creditors shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Senior Loan Documents, as applicable, and this Final Order, and shall be permitted to satisfy the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and Adequate Protection Superpriority Claims, subject only to the Carve-Out and Prepetition Permitted Liens.  During the Remedies Notice Period, the Debtors and the Committee shall be entitled to seek an emergency hearing with the Court for the purpose of contesting whether an Event of Default has occurred and such other matters the Court may wish to consider.  Absent an order from the Court to the contrary during the Remedies Notice

Period, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Secured Parties and the Prepetition Senior Creditors shall be permitted to exercise all remedies set forth herein, in the DIP Loan Agreement, the DIP Loan Documents, the Prepetition Senior Loan Documents, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 105 or 362 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to (x) the DIP Agent and the DIP Term Agent with respect thereto pursuant to the DIP Loan Agreement, the other DIP Loan Documents or this Final Order and (y) the Prepetition Senior Agent and the Prepetition Term Agent with respect thereto pursuant to the Prepetition Senior Loan Agreement, the other Prepetition Senior Loan Documents or this Final Order.

(d)     *Access to Leased Premises*.  The DIP Agent's and the Prepetition Senior Agent's exercise of their respective remedies pursuant to this paragraph 25 shall be subject to: (w) any agreement in writing between the DIP Agent or the Prepetition Senior Agent, as applicable, and any applicable landlord, (x) pre-existing rights of the DIP Agent or the Prepetition Senior Agent, as applicable, and any applicable landlord under applicable non-bankruptcy law, (y) consent of the applicable landlord, or (z) further order of the Court following notice and a hearing.

26.     <u>Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  The DIP Secured Parties and the Prepetition Senior Creditors have acted in good faith in connection with the Interim Order and this Final Order and their reliance on this Final Order is in good faith.  Based on the findings set forth in this Final Order and the record

made during the Interim Hearing and Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code and Local Rule 9013-1(m), in the event any or all of the provisions of this Final Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court, or any other court, the DIP Secured Parties and the Prepetition Senior Creditors are entitled to the protections provided in Section 364(e) of the Bankruptcy Code and Local Rule 9013-1(m).

27. <u>DIP and Other Expenses</u>. The Debtors are authorized and directed to pay all reasonable fees, costs and expenses (and the Prepetition Senior Agent and the DIP Agent, as applicable, are authorized to make advances or charges against the applicable loan account to pay such fees, costs and expenses) of: (x) the DIP Secured Parties in connection with the DIP Facility as provided in the DIP Loan Documents, (y) the Prepetition Senior Creditors as provided in the Prepetition Senior Loan Documents, and (z) the Prepetition Subordinated Noteholders (legal fees only) in accordance with and subject to paragraph 12(b)(ii) of this Final Order. Payment of all such fees, costs and expenses of the DIP Secured Parties and the Prepetition Senior Creditors, and the payment of legal fees of the Prepetition Subordinated Noteholders in accordance with and subject to paragraph 12(b)(ii) of this Final Order, shall not be subject to allowance by the Court and professionals for the DIP Secured Parties, the Prepetition Senior Creditors and the Prepetition Subordinated Noteholders shall not be required to submit such fees and expenses in any particular format. The professionals for the DIP Secured Parties, the Prepetition Senior Creditors and the Prepetition Subordinated Noteholders shall deliver a copy of their respective invoices to the Debtors and their counsel, counsel for the Committee, and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtors, the U.S. Trustee or the Committee,

DOCS_SF:96376.6 91893/002

with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.

28. <u>Indemnification.</u>

(a) The Debtors shall indemnify and hold harmless the DIP Agent, the DIP Term Agent and each other DIP Secured Party, and each of their respective affiliates, subsidiaries, parents, officers, members, shareholders, directors, employees, attorneys, advisors, professionals and agents, past, present and future, and their respective heirs, predecessors, successors and assigns, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, or the DIP Facility or the transactions contemplated thereby and by this Final Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with these Cases, any plan, or any action or inaction by the Debtors; <u>provided</u>, that such indemnity shall not, as to any indemnified party, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted directly from the gross negligence or willful misconduct of such indemnified party. The indemnity includes indemnification for the DIP Agent's and the DIP Term Agent's exercise of discretionary rights granted under the DIP Facility and this Interim Order. In all such litigation, or the preparation therefor, each of the DIP Agent, the DIP Term Agent and each other DIP Secured Party shall be

DOCS_SF:96376.6 91893/002

entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees, costs and expenses of such counsel.

(b) *DIP Indemnity Account*. Upon the conclusion of the Remedies Notice Period, the Debtors shall pay $250,000 from proceeds of the DIP Collateral into a non-interest bearing indemnity account (the "**DIP Indemnity Account**") subject to first priority liens of the DIP Agent, for the benefit of the DIP Secured Parties, to secure indemnification, reimbursement or similar continuing obligations arising under or related to the DIP Loan Documents.

29. <u>Proofs of Claim</u>. Any order entered by the Court in relation to the establishment of a bar date for any claims (including, without limitation, administrative claims) in any of the Cases or Successor Cases shall not apply to the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders. None of the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders will be required to file proofs of claim or requests for approval of administrative expenses in any of the Cases or Successor Cases, and the provisions of this Final Order relating to the amount of the DIP Obligations, the DIP Superpriority Claim, the Prepetition Senior Obligations and the Prepetition Subordinated Note Obligations shall constitute timely filed proofs of claim and/or administrative expense requests in each of these Cases.

30. <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the DIP Secured Parties under the DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and the DIP Term Agent reasonable access to the Debtors' premises and their books and records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the

Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent, the DIP Term Agent and the Prepetition Subordinated Noteholders all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Debtor.

  31.   <u>Carve-Out</u>.

   (a)   *Carve-Out*. As used in this Final Order, the "**Carve-Out**" means, collectively, the sum of: (i) all allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for statutory fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of the Court, and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Court; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code; and (iii) the aggregate amount of all unpaid all fees, costs and expenses allowed at any time by the Court, whether by interim order, procedural order, or otherwise (the "**Allowed Professional Fees**"), and incurred by professionals retained by the Debtors or the Committee, in accordance with a final order of the Court (which order has not been reversed, vacated or stayed) under Sections 327(a) or 1103(a) of the Bankruptcy Code (the "**Case Professionals**"), and the reimbursement of all out-of-pocket expenses at any time allowed by the Court, whether by interim order, procedural order, or otherwise, and incurred by the members of the Committee, in the performance of their duties (but excluding any fees, costs and expenses of third party professionals employed by such members) (the "**Committee Expenses**"); which amount under this clause (iii) shall not exceed the sum of: (x) commencing with the week ending March 10, 2018 an aggregate amount per week limited to the amount set forth in the Approved Budget for such week for Allowed

-51-

Professional Fees and Committee Expenses (amounts set forth in the Approved Budget are specific to each Case Professional) incurred prior to the delivery of a Carve-Out Trigger Notice (as defined below), which amount has been and shall continue to be funded into the Professional Fee Escrow Account on Wednesday of each week (or such other day of the week selected by the Debtors) in accordance with the Approved Budget provided that (I) the Debtors have sufficient Availability on such date (if not, the Debtors shall promptly notify the Case Professionals), (II) the Termination Date has not occurred, and (III) no Event of Default has occurred and is continuing, plus (y) $250,000 for Allowed Professional Fees and Committee Expenses incurred from and after the delivery of a written notice by the DIP Agent to the Debtors and their counsel, the Prepetition Senior Agent, the U.S. Trustee, counsel to the Committee, and counsel to the Kayne Subordinated Noteholders which notice may be delivered at any time following the occurrence and continuance of any Event of Default (a "**Carve-Out Trigger Notice**").

(b)     *Professional Fee Escrow.*  No portion of the Carve-Out, nor any cash collateral or proceeds of the DIP Facility may be used in violation of this Final Order, including paragraph 32 hereof.  Notwithstanding anything to the contrary contained in this Final Order, (A) until an Event of Default or the Termination Date has occurred, the Debtors shall be permitted to borrow under the DIP Loan Agreement on a weekly basis to fund the Professional Fee Escrow Account in the amounts contemplated under clause (x) of the immediately preceding paragraph, subject to there being sufficient Availability for such borrowings, (B) the Debtors shall be permitted to pay, from the Professional Fee Escrow Account, as and when the same may become due and payable, the Allowed Professional Fees of Case Professionals retained by the Debtors and the Committee (including the Committee Expenses), as applicable, regardless of whether an Event of Default or the Termination Date has occurred, and (C) the aggregate amount of

-52-

Allowed Professional Fees of Case Professionals and Committee Expenses paid by the Debtors prior to the delivery of a Carve-Out Trigger Notice from any retainers held by such Case Professionals and from any amounts funded into the Professional Fee Escrow Account pursuant to clause (x) of the immediately preceding paragraph shall not exceed the amount of such Allowed Professional Fees and Committee Expenses set forth in the Approved Budget (in an aggregate amount for each Case Professional). Notwithstanding anything to the contrary in this Final Order, after Payment in Full of the Prepetition Senior Obligations and DIP Obligations nothing herein shall preclude or limit the ability of any Case Professional to seek approval and payment of any and all fees and expenses that may be incurred by such Case Professional outside of the Carve-Out. Any amounts in the Professional Fee Escrow Account after the payment in full of all Allowed Professional Fees of Case Professionals and Committee Expenses pursuant to final fee applications and orders shall be returned to the DIP Agent, which amounts shall be applied to the DIP Obligations in the order proscribed in Section 18.7(c) of the DIP Loan Agreement. The DIP Liens are hereby deemed to attach to the Debtors' residual interest in such excess.

(c)     *Carve-Out Reserve*. The DIP Agent shall at all times maintain, as part of the Carve-Out Reserve (as defined in the DIP Loan Agreement), a reserve in an amount not less than the amounts set forth in Paragraph 31(a)(i),(ii) and (iii)(y) of this Final Order.

(d)     *No Direct Obligation to Pay Professional Fees or Committee Expenses*. Except for funding the Professional Fee Escrow Account as provided herein, none of the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Creditors shall be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with the Cases or any

Successor Cases. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Creditors in any way to pay compensation to or to reimburse expenses of any Case Professional or any Committee Expenses, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing in this Final Order or otherwise shall be construed to increase the Carve-Out if: (i) Allowed Professional Fees for any Case Professional or (ii) Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Approved Budget. Until Payment in Full of the Prepetition Senior Obligations and DIP Obligations, the Allowed Professional Fees and Committee Expenses shall be paid solely from the Professional Fee Escrow Account or any pre-petition retainers received by any Case Professional. Other than with respect to funding the Professional Fee Escrow Account in accordance with and subject to the terms and conditions of this Final Order the Debtors shall not request any loans or advances under the DIP Loan Agreement or use any Cash Collateral to pay any Allowed Professional Fees or Committee Expenses, except the sum of $250,000 following the delivery of the Carve-Out Trigger Notice.

(e)     *Payment of Carve-Out*.  The funding of the Carve-Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

32.     <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals Carve-Out</u>.  Subject to paragraph 34 of this Final Order, the DIP Facility, the DIP Collateral, the Cash Collateral and the Carve-Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other

-54-

litigation of any type, other than the filing of an objection to the Financing or the filing of a motion during the Remedies Notice Period to determine whether or not an Event of Default has occurred (i) adverse to or against the interests of the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, each solely in their capacity as such, or their rights and remedies under the DIP Loan Documents, the Prepetition Senior Loan Documents, Prepetition Subordinated Note Documents or the Interim Order or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors, the Committee, or any other person in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, any DIP Obligations, Prepetition Senior Obligations or the Prepetition Subordinated Note Obligations, (iii) for monetary, injunctive or other affirmative relief against the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, each solely in their capacity as such, or their respective collateral, (iv) preventing, hindering or otherwise delaying the exercise by the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders of any rights and remedies under the Interim Order or this Final Order, the DIP Loan Documents, the Prepetition Senior Loan Documents, the Prepetition Subordinated Note Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of the DIP Collateral or by the Prepetition Senior Agent or the Prepetition Subordinated Noteholders with respect to its Adequate Protection Liens, (v) asserting that the value of the Prepetition Collateral is less than the Prepetition Senior

Obligations, (vi) contesting payment of the Prepetition Senior Obligations from the proceeds of DIP Collateral as set forth in paragraph 18(a) or (vii) to pursue litigation against the Prepetition Senior Agent, the Prepetition Term Agent, any other Prepetition Senior Creditor or the Prepetition Subordinated Noteholders, each solely in their capacity as such; (b) to make any distribution under a plan of reorganization in any Chapter 11 Case, other than from proceeds of unencumbered assets; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body to the extent not expressly permitted under the DIP Loan Documents; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors; (e) objecting to, contesting, or interfering with, in any way, the DIP Secured Parties' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred, except as provided for in this Final Order, or seeking to prevent the DIP Agent from credit bidding with respect to its collateral in connection with any proposed plan or reorganization or liquidation or any proposed transaction pursuant to Section 363 of the Bankruptcy Code; (f) using or seeking to use Cash Collateral while the DIP Obligations or the Prepetition Senior Obligations remain outstanding in a manner inconsistent with the Approved Budget; (g) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (h) incurring Indebtedness (as defined in the DIP Loan Agreement) outside the ordinary course of business, except as permitted under the DIP Loan Documents; (i) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, each solely in their capacity as such; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Secured Parties,

DOCS_SF:96376.6 91893/002

the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, each solely in their capacity as such; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the Prepetition Senior Obligations, the DIP Liens, the Prepetition Senior Liens, Prepetition Subordinated Noteholders Liens or Prepetition Subordinated Note Obligations or any other rights or interests of the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, each solely in their capacity as such; provided, that the foregoing limitations shall not encompass any investigation of the Prepetition Senior Obligations, the Prepetition Senior Liens, Prepetition Subordinated Noteholders Liens and the Prepetition Subordinated Note Obligations conducted by Case Professionals retained by the Committee, so long as the fees, costs and expenses incurred by such Case Professionals do not exceed $75,000 in the aggregate; provided, further, that nothing set forth in this paragraph 32 shall limit the Case Professionals retained by the Committee from seeking payment of allowed fees and expenses incurred in connection with any Challenge (defined below) commenced in accordance with paragraph 34 hereof in connection with any plan of reorganization.

33. <u>Payment of Compensation</u>. Nothing herein shall be construed as a consent to the allowance of any professional fees, costs or expenses of any Case Professionals or shall affect the right of the DIP Secured Parties or the Prepetition Subordinated Noteholders to object to the allowance and payment of such fees, costs and expenses.

34. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)     The stipulations, findings, representations and releases contained in this Final Order and the DIP Loan Documents with respect to the Prepetition Senior Creditors, the Prepetition Senior Obligations, the Prepetition Subordinated Noteholders, and the Prepetition

Subordinated Note Obligations shall be binding upon all parties-in-interest, any trustee appointed in these Cases, the Committee, and any other person (each, a "**Challenge Party**"), unless and solely to the extent that (i) any Challenge Party initiates an action, which, in the Case of the Committee, will be deemed commenced upon the filing of an appropriate motion seeking standing during the Challenge Period with a copy of the draft complaint asserting the Challenge attached thereto, or adversary proceeding relating to a Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff or movant in any such timely and properly filed Challenge. For purposes of this paragraph 34: (a) "**Challenge**" means any claim or cause of action against any of the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, each solely in their capacity as such, on behalf of the Debtors or the Debtors' creditors and interest holders or any other person, objecting to or to challenging the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Senior Creditor or Prepetition Subordinated Noteholder, each solely in their capacity as such; (ii) the validity, allowability, priority, or amount of the Prepetition Senior Obligations or Prepetition Subordinated Note Obligations (including any fees included therein); (iii) the secured status of the Prepetition Senior Obligations or Prepetition Subordinated Note Obligations; (iv) any liability of any of the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, each solely in their capacity as such, with respect to anything arising from any of the respective Prepetition Senior Loan Documents or the Prepetition Subordinated Note Documents; or (v) the releases set forth in the DIP Loan Documents; and (b) "**Challenge Period**" means (i) with respect to any person or any party-in-interest other than the Committee, the period from the Petition Date until the date

-58-

that is seventy five (75) calendar days after the entry of the Interim Order and (ii) with respect to the Committee, the period from the date such Committee is formed until the date that is sixty (60) calendar days thereafter; provided, the Committee, may provide notice that, as to the Committee, the Challenge Period Termination Date (as defined herein) has occurred.

(b)     During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.

(c)     On the date that is the next calendar day after the termination of the Challenge Period (the "**Challenge Period Termination Date**"):  (A) any and all such Challenges and objections by any party (including, without limitation, the Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Senior Creditors' and Prepetition Subordinated Noteholders' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, all interest holders, any person and any other party in interest in these Cases and any Successor Cases; and (C) any and all claims or causes of action against the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders, each solely in their capacity as such, in connection with any Challenge shall be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases;

provided that, nothing herein shall waive, release or bar any Challenge that is commenced in a timely manner as set forth in this Final Order.

(d)     For the avoidance of doubt, any trustee appointed or elected in these cases shall, until the expiration of the Challenge Period and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph 34 (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, stipulations and waivers of the Debtors in this Final Order.

35.     <u>Reservation of Rights</u>:  Notwithstanding anything to the contrary contained in this Final Order, in the event there is a timely and successful Challenge by any party in interest (in accordance with paragraph 34 hereof), this Court may unwind the repayment of the Prepetition Senior Obligations, and order the repayment of such amounts to the extent that such payments resulted in the payment of any Prepetition Senior Obligations consisting of an unsecured claim or other claim or amount not allowable under Section 502 of the Bankruptcy Code. Notwithstanding the foregoing, a successful Challenge shall not in any way affect the validity, enforceability or priority of the DIP Obligations or the DIP Liens.

36.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

37.     <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Secured Parties, the DIP Collateral, the Prepetition Senior Creditors, the Prepetition Senior Liens, the Prepetition

DOCS_SF:96376.6 91893/002

Subordinated Noteholders or Prepetition Subordinated Noteholders Liens pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, *provided that* the foregoing waiver of surcharge rights shall not extend to the Prepetition Subordinated Noteholders or the Prepetition Subordinated Noteholders Liens solely with respect to accrued, but unpaid postpetition stub rent (*i.e.*, rent incurred for premises for the period from March 6, 2018 through March 31, 2018) (the "Stub Rent"). Notwithstanding anything to the contrary herein, the Committee is hereby granted standing to bring a motion under Section 506(c) of the Bankruptcy Code to surcharge the Prepetition Collateral and Prepetition Liens of the Prepetition Subordinated Noteholders for the payment of the Stub Rent. All rights of the Prepetition Subordinated Noteholders to object to such relief are preserved.

38.     <u>No Marshaling/Applications of Proceeds</u>. Subject to the limitation set forth in paragraph 8(b), none of the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

39.     <u>Section 552(b)</u>. The DIP Agent, the other DIP Secured Parties, the Prepetition Senior Creditors and each of the Prepetition Subordinated Noteholders shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code. The "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Noteholders with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

40.     <u>Joint and Several Liability</u>. Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood,

however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

41. <u>Reserved</u>.

42. <u>Discharge Waiver</u>. The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. None of the Debtors shall propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations and Adequate Protection Superpriority Claims unless otherwise agreed in writing by the DIP Agent, the Prepetition Senior Agent, and the Prepetition Term Agent.

43. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Secured Parties' or the Prepetition Senior Creditors' right to seek any other or supplemental relief in respect of the Debtors (including the right to seek additional

adequate protection, including, without limitation, in the form of reimbursement of fees, costs and expenses of counsel to the Prepetition Senior Creditors); (b) the rights of any of the Prepetition Senior Creditors to seek the payment by the Debtors of post-petition interest or fees pursuant to Section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Secured Parties or the Prepetition Senior Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans. Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties, the Prepetition Senior Creditors, and the Prepetition Subordinated Noteholders are preserved.

44.    No Waiver by Failure to Seek Relief.  The failure of the DIP Secured Parties or the Prepetition Subordinated Noteholders to seek relief or otherwise exercise rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Subordinated Note Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Secured Parties or the Prepetition Subordinated Noteholders.

45.    Continuing Effect of Subordination Agreements. Except as otherwise expressly set out herein: (x) the DIP Agent, the DIP Term Agent, the other DIP Secured Parties, the Prepetition Senior Agent, the Prepetition Term Agent, the other Prepetition Senior Creditors and the Prepetition Subordinated Creditors shall remain bound by the terms and conditions set forth in each applicable Subordination Agreement, including with respect to all collateral securing

DOCS_SF:96376.6 91893/002

their respective obligations, (y) nothing contained in this Final Order shall be deemed to abrogate or limit the respective rights, claims and obligations of each of the DIP Agent, the DIP Term Agent, the other DIP Secured Parties, the Prepetition Senior Agent, the Prepetition Term Agent, the other Prepetition Senior Creditors and the Prepetition Subordinated Creditors under the applicable Subordination Agreements, and (z) each Subordination Agreement shall apply and govern the respective rights, obligations, and priorities of each of the DIP Agent, the DIP Term Agent, the other DIP Secured Parties, the Prepetition Senior Agent, the Prepetition Term Agent, the other Prepetition Senior Creditors and the applicable Prepetition Subordination Creditors with respect to the applicable collateral at issue thereunder in these Cases.

46. <u>Binding Effect of Final Order</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Secured Parties, the Prepetition Senior Creditors, Prepetition Subordinated Creditors, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

47. <u>No Modification of Final Order</u>. Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent (i) any reversal, modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or

DOCS_SF:96376.6 91893/002

unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim, other than the Carve-Out; (b) any order allowing use of Cash Collateral resulting from DIP Collateral; and (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

48.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and this Final Order, the provisions of this Final Order shall govern and control.

49.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Secured Parties, Prepetition Senior Creditors and the Prepetition Subordinated Creditors pursuant to this Final Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations have been indefeasibly paid in full in cash and all commitments

-65-

to extend credit under the DIP Facility are terminated. The terms and provisions in this Final Order concerning the indemnification shall continue in the Cases and in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

50. <u>Effect of this Final Order</u>. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law. Any applicable stay (including under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

51. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: April 4, 2018
      Wilmington, Delaware

THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE