# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| The Walking Company Holdings, Inc., et. al,[1] | ) Case No. 18-10474 (LSS) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

---

### DEBTORS' FIRST AMENDED JOINT PLAN
### OF REORGANIZATION

---

Dated:  April 20, 2018

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Jeffrey W. Dulberg (CA Bar No. 181200)
10100 Santa Monica Blvd, 13th Floor
Los Angeles, California 90067-4114
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:      jpomerantz@pszjlaw.com
                 jdulberg@pszjlaw.com

PACHULSKI STANG ZIEHL & JONES LLP
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:      joneill@pszjlaw.com

Counsel to Debtors and Debtors in Possession

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include:  The Walking Company Holdings, Inc. (8665); The Walking Company (2061); Big Dog USA, Inc. (5316); and FootSmart, Inc. (9736).  The headquarters and service address for the above-captioned Debtors is 25 W. Anapamu, Santa Barbara, CA 93101.

# TABLE OF CONTENTS

**Page**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINED TERMS.................................................................................... 1
- A.   Rules of Interpretation and Computation of Time ............................... 1
- B.   Defined Terms .................................................................................... 2

ARTICLE II. ADMINISTRATIVE, DIP FACILITY AND PRIORITY TAX CLAIMS.......... 14
- A.   Administrative Claims ...................................................................... 14
- B.   DIP Facility Claims........................................................................... 15
- C.   Priority Tax Claims........................................................................... 15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ............................................................ 15
- A.   Summary ............................................................................................ 15
- B.   Classification and Treatment of Claims and Equity Interests - Parent .............. 17
- C.   Classification and Treatment of Claims and Equity Interests - Subsidiaries ....................................................................................... 21
- D.   Special Provision Governing Unimpaired Claims............................. 25
- E.   Discharge of Claims.......................................................................... 26

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................. 26
- A.   Presumed Acceptance of Plan........................................................... 26
- B.   Presumed Rejection of Plan .............................................................. 26
- C.   Voting Classes ................................................................................... 26
- D.   Acceptance by Impaired Classes of Claims...................................... 26
- E.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code................ 27

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ...................... 27
- A.   General Settlement of Claims ........................................................... 27
- B.   Corporate Existence & Corporate Actions ....................................... 27
- C.   Vesting of Assets in the Reorganized Debtors ................................. 28
- D.   Release of Liens, Claims and Equity Interests.................................. 29
- E.   Sources of Funds for Plan Distributions .......................................... 29
- 1.   Secured Exit Facility…………………………………………………29
- 2.   Plan Sponsors - Funding of the Consideration…………………………30
- 3.   Cash from Operations…………………………………………………31
- F.   Issuance of New Securities and Amended Subordinated Notes ........................ 31
- 1.   New Common Stock .......................................................................... 31
- 2.   New Preferred Stock ......................................................................... 32
- 3.   New Warrants .................................................................................... 32
- 4.   Amended Subordinated Notes ........................................................... 32
- G.   Cancellation of Notes, Certificates and Instruments......................... 32

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................................................... 32
- A.   Assumption and Rejection of Executory Contracts and Unexpired Leases............................................................................................... 32
- B.   Assumption/Assignment of Executory Contracts or Unexpired Leases and Related Cure/Objection Process......................................... 33

DOCS_LA:311994.22 91893/001

**Page**

C.      Rejection of Executory Contracts or Unexpired Leases ....................................34
D.      Claims on Account of the Rejection of Executory Contracts or
        Unexpired Leases ..................................................................................................34
E.      Indemnification Provisions ...................................................................................34
ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS...........................................34
A.      Dates of Distributions ...........................................................................................34
B.      Distribution Agent .................................................................................................35
C.      Cash Distributions.................................................................................................35
D.      Rounding of Payments ..........................................................................................35
E.      Distributions on Account of Claims Allowed After the Effective Date .............36
F.      General Distribution Procedures...........................................................................36
G.      Address for Delivery of Distributions...................................................................36
H.      Undeliverable Distributions and Unclaimed Property .........................................36
I.      De Minimis Cash Distribution Amounts ..............................................................36
J.      Withholding Taxes .................................................................................................37
K.      Setoffs ....................................................................................................................37
L.      Surrender of Cancelled Instruments or Securities ...............................................37
ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT,
        UNLIQUIDATED AND DISPUTED CLAIMS...........................................37
A.      General Procedures Regarding Disputed Claims..................................................37
1.      No Interim Payment of Disputed Claims..............................................................37
2.      Prosecution of Objections to Claims.....................................................................38
3.      Participation of GUC Claims Ombudsman………………………………….38
4.      Estimation ..............................................................................................................38
B.      Other Disallowance/Adjustment Provisions ........................................................39
1.      Late-Filed Claims..................................................................................................39
2.      § 502(d) Disallowance ..........................................................................................39
3.      Adjustment Without Objection .............................................................................39
ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND
        CONSUMMATION OF THE PLAN............................................................39
A.      Conditions Precedent to Confirmation..................................................................39
B.      Conditions Precedent to Consummation...............................................................40
C.      Waiver of Conditions ............................................................................................40
D.      Effect of Non-Occurrence of Conditions to Consummation ...............................41
ARTICLE X. RELEASES, INJUNCTION AND RELATED PROVISIONS..........................41
A.      General ...................................................................................................................41
B.      Debtor Release .......................................................................................................41
C.      Third Party Release ...............................................................................................42
D.      Discharge of Claims..............................................................................................43
E.      Exculpation ............................................................................................................43
F.      Preservation of Rights of Action...........................................................................44
1.      Maintenance of Causes of Action…………………………………………….44
2.      Preservation of All Causes of Action Not Expressly Settled or Released……..44
G.      Injunction ..............................................................................................................44

**Page**

    H.      Special Provisions Related to Unexpired Leases of Non-Residential Real
           Property...................................................................................................45

ARTICLE XI. BINDING NATURE OF PLAN ........................................................45
ARTICLE XII. RETENTION OF JURISDICTION ..................................................46
ARTICLE XIII. MISCELLANEOUS PROVISIONS ...............................................47
    A.      Dissolution of the Committee .........................................................47
    B.      Payment of Statutory Fees ..............................................................47
    C.      Modification of Plan .......................................................................47
    D.      Revocation of Plan ..........................................................................48
    E.      Successors and Assigns....................................................................48
    F.      Reservation of Rights.......................................................................48
    G.      Further Assurances...........................................................................48
    H.      Severability .....................................................................................48
    I.       Service of Documents ......................................................................49
    J.      Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of
           the Bankruptcy Code........................................................................51
    K.      Governing Law ................................................................................51
    L.      Tax Reporting and Compliance .......................................................51
    M.      Post-Confirmation Reports...............................................................51
    N.      Schedules .........................................................................................52
    O.      Conflicts...........................................................................................52
    P.      Waiver of Fourteen-Day Stay .........................................................52
    Q.      Confirmation Request.......................................................................53

DOCS_LA:311994.22 91893/001

## DEBTORS' JOINT PLAN OF REORGANIZATION

The Walking Company Holdings, Inc. and its debtor subsidiaries (collectively, the "Debtors" and each a "Debtor"), as debtors and debtors in possession in the above-referenced bankruptcy cases (the "Cases" or "Chapter 11 Cases"), hereby propose the following joint plan of reorganization (as may be amended or modified from time to time, the "Plan") for, among other things, the recapitalization of the Debtors and the resolution of the outstanding Claims against, and Equity Interests in, the Debtors.  Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of the Plan.

The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases supports the confirmation of the Plan.  Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, historical and current financial information, and circumstances leading to the filing of the Cases, and for a summary and analysis of this Plan and the treatment provided for herein.  There also are other agreements and documents that will be filed with the Bankruptcy Court that are referenced in this Plan, the Plan Supplement or the Disclosure Statement.  All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein.  Subject to the requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its Consummation.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINED TERMS

### A.    Rules of Interpretation and Computation of Time

For purposes hereof:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles", "Sections", "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

B.    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*503(b)(9) Claims*" means Claims arising under section 503(b)(9) of the Bankruptcy Code.

2.    "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date (including, without limitation, expenses of the members of any Committee incurred as members thereof in discharge of their duties as such, other than the fees and costs of such members' own counsel and other professionals).

3.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases that is Allowed under section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation:  (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Accrued Professional Compensation and any other compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of title 28, United States Code.

4.    "*Administrative Claims Bar Date*" means the first Business Day which is forty five (45) days after the Effective Date or such other date(s) as approved by order of the Bankruptcy Court as the deadline for filing Administrative Claims against the Debtors.  For the avoidance of doubt, the Administrative Claims Bar Date applicable to 503(b)(9) Claims is the General Claims Bar Date pursuant to the Bar Date Order.

5.    "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

6.    "*Allowed*" means, with respect to any Claim, a Claim allowable under 11 U.S.C. § 502(a) for which a proof of claim was filed on or before, as applicable, the General Bar Date, the Administrative Claims Bar Date or the Rejection Claims Bar Date, and as to which no objection or other challenge to the allowance thereof has been timely Filed, or if an objection or challenge has been timely Filed, such Claim is allowed by a Final Order; or (b) for which a proof of claim is not filed and that has been listed in the Schedules of Assets and Liabilities and is not listed as disputed, contingent, or unliquidated; or (c) that is deemed allowed by the terms of the Plan or a Final Order of the Court.  For purposes of determining the amount of an Allowed Claim (other than a Claim specifically Allowed under the Plan), there shall be deducted therefrom an amount equal to the amount of any claim that a Debtor may hold against the creditor under 11 U.S.C. § 553.  Notwithstanding anything to the contrary in the Plan, the Debtors may, in their discretion, treat a Claim as an Allowed Claim to the extent it is allowed by an Order that is not a Final Order.

7.    "*Amended Contract Assumption/Rejection List*" has the meaning ascribed to such term in Section VI.A of the Plan.

8.    "*Amended Organizational Documents*" means the respective amended and restated certificates of incorporation, by-laws, and/or other applicable organizational documents

of each of the Reorganized Parent and Reorganized Subsidiaries to be Filed in the Plan Supplement.

9.    "*Amended Subordinated Notes*" means a series of 8.375% Notes Due 2022, to be Filed in the Plan Supplement, to be issued to the Prepetition Subordinated Noteholders pursuant to this Plan in the aggregate principal amount of (i) $11,883,504.54 (which amount is the unpaid principal as of the Petition Date) plus (ii) all additional accrued and unpaid interest and reasonable fees (including prepetition interest and fees) due and payable to the Prepetition Subordinated Noteholders under the Prepetition Subordinated Notes and the DIP Orders as of the Effective Date (which amount is to be added as principal to preceding amount (i) as of the Effective Date) (provided, however, the foregoing capitalization of reasonable fees shall be only to the extent that such fees are not paid prior to or on the Effective Date in accordance with the DIP Orders, and nothing herein is intended to modify the Debtors' obligation related to the payment of such reasonable fees under the DIP Orders), as amended as of the Effective Date consistent with the terms of this Plan and the Majority Prepetition Subordinated Noteholders Term Sheet.  The maturity date of the Amended Subordinated Notes shall be March 31, 2022.  Attached hereto as **Exhibit "1"** is a true and correct copy of the Majority Prepetition Subordinated Noteholders Term Sheet.

10.    "*Avoidance Actions*" means any and all rights, claims, and causes of action arising under any provision of Chapter 5 of the Bankruptcy Code, which shall be waived and released by the Debtors and Estates as of the Effective Date, notwithstanding any other provision in the Plan.

11.    "*Ballots*" means the forms of ballot which the Debtors will transmit to creditors who are entitled to vote on the Plan.

12.    "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

13.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over the Chapter 11 Cases.

14.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

15.    "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 194], which established the General Claims Bar Date and certain other deadlines and procedures.

16.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

17.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

18.    "*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counter-claims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim,

cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

19.    "*Chapter 11 Cases*" means the chapter 11 bankruptcy cases commenced by the Debtors on the Petition Date in the Bankruptcy Court.

20.    "*Claim*" means any "claim" against any Debtor as defined in section 101(5) of the Bankruptcy Code.

21.    "*Claims Objection Deadline*" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Reorganized Debtors.

22.    "*Claims Register*" means the official register of Claims maintained by the Voting Agent.

23.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

24.    "*Collateral*" means any property or interest in property of any Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

25.    "*Committee*" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases.

26.    "*Company*" means the Debtors, collectively.

27.    "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

28.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

29.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

30.    "**Consideration**" means Cash paid by the Plan Sponsors in the aggregate amount of $10,200,000 under the Plan Sponsors Investment Agreement which will be utilized to satisfy the Debtors' obligations under the Plan. The Plan Sponsors will provide the Consideration in the following respective amounts: Fred Kayne - $5,000,000 (50%), Richard Kayne - $3,300,000 (33%), and Andrew Feshbach - $1,700,000 (17%); provided, however, if Fred Kayne declines to fund all or any part of his applicable share of the Consideration by the Effective Date, Richard Kayne will commit to fund the resulting shortfall.

31.    "*Consummation*" means the occurrence of the Effective Date or the occurrence of any date thereafter as may be selected by the Reorganized Debtors, subject to the consent of the DIP Agent and Plan Sponsors.

32.    "*Debtor(s)*" means individually, the Parent and Subsidiaries and, collectively, the Parent and Subsidiaries, in each case, in their capacities as debtors in the Chapter 11 Cases.

33.    "*Debtor(s) in Possession*" means, individually, each Debtor, as debtor in possession in their Chapter 11 Cases as of the Petition Date and, collectively, all Debtors, as debtors in possession in the Chapter 11 Cases.

34.    "*DIP Agent*" means Wells Fargo Bank, National Association, in its capacities as the administrative agent, term agent and collateral agent under the DIP Facility, and any successors thereto.

35.    "*DIP Facility*" means that certain senior secured superpriority post-petition credit facility to be made available to the Debtors pursuant to the DIP Secured Loan Agreement and the DIP Orders.

36.    "*DIP Facility Claim*" means any Claim of the DIP Agent, any DIP Lender or any other "DIP Secured Parties" (as defined in the DIP Orders) arising from, under or in connection with the DIP Facility (including, without limitation, any and all "Obligations" as defined in the DIP Facility Loan Agreement), the other "Loan Documents" as defined therein and/or the DIP Orders, including in respect of all "DIP Obligations" as defined in the DIP Orders.

37.    "*DIP Facility Loan Agreement*" means that certain Debtor-in-Possession Loan and Security Agreement, dated as of March 6, 2018 (as may be amended, waived, supplemented, refinanced and as otherwise modified from time to time), by and among The Walking Company Holdings, Inc., as Parent, the other Debtors, as Borrowers, the DIP Agent, and the DIP Lenders thereto from time to time.

38.    "*DIP Lenders*" means the banks, financial institutions and other parties identified as "Secured Parties" in the DIP Facility Loan Agreement or "DIP Secured Parties" in the DIP Orders from time to time.

39.    "*DIP Orders*" means, collectively, the Interim DIP Order and Final DIP Order.

40.    "*Disallowed*" means any Claim that is not Allowed.

41.    "*Disclosure Statement*" means that certain *First Amended Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization*, as amended, supplemented, or modified from time to time and describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

42.    "*Disputed Claim"* or *"Disputed Equity Interest*" means a Claim or Equity Interest, or any portion thereof:  (a) listed on the Schedules as unliquidated, disputed, and/or contingent and as to which no proof of Claim has been filed; or (b) as to which the applicable Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the applicable Debtor or the Plan Administrator(s) in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) with respect to an Other Secured Claim, for which the applicable Lien was perfected within ninety (90) days prior to the Petition Date or no Lien was perfected as of the Petition Date.

43.    "*Distribution Agent*" means the Reorganized Parent or any party designated by the Reorganized Parent to serve as distribution agent under this Plan.  For purposes of distributions under this Plan to the Holders of Allowed DIP Facility Claims and

Allowed Prepetition Secured Loan Claims, the DIP Agent and the Prepetition Agent, respectively, will be and shall act as the Distribution Agent.

44.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder, as such date shall be fixed by order of the Bankruptcy Court.

45.    "*Effective Date*" means the Business Day, selected by the Debtors, that this Plan becomes effective as provided in Article IX hereof.

46.    "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

47.    "*Equity Interest*" means any Equity Security in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock, together with (i) any options, warrants or contractual rights to purchase or acquire any such Equity Securities at any time with respect to such Debtor, and all rights arising with respect thereto and (ii) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include: (1) conversion, exchange, voting, participation, and dividend rights; (2) liquidation preferences; (3) options, warrants, and put rights; and (4) stock-appreciation rights.

48.    "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

49.    "*Estates*" means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

50.    "*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

51.    "*Exculpated Parties*" has the meaning ascribed to said term in Article X.E hereof.

52.    "*Exculpation*" means the exculpation provision set forth in Article X.E hereof.

53.    "*Executory Contract*" means a contract to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

54.    "*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

55.    "*Exit Facility*" means, subject to the Exit Facility Commitment Letter, the new working capital facility and term loan entered into by the Reorganized Debtors on the Effective Date, which shall be sufficient to (a) repay in full all DIP Facility Claims and all Prepetition Secured Loan Claims, if any; (b) together with the Consideration as set forth in the Plan, make the Cash distributions contemplated by the Plan; (c) provide working capital for the ongoing business operations of the Reorganized Debtors; and (d) pay all related transaction costs and expenses.

56.    "*Exit Facility Agent*" means Wells Fargo Bank, National Association, as administrative agent under the Exit Facility Loan Agreement, or any successor thereto.

57.    "*Exit Facility Commitment Letter*" means the term sheet entered into by and between the Debtors and Exit Facility Agent which provides the terms of the parties' agreement regarding the Exit Facility.  Attached hereto as **Exhibit "2"** is a true and correct copy of the Exit Facility Commitment Letter.

58.    "*Exit Facility Loan Agreement*" means that certain secured loan agreement by and between the Exit Lenders and the Reorganized Debtors, which provides for the Exit Facility, to be filed in the Plan Supplement.  The terms of the Exit Facility Loan Agreement shall be reasonably acceptable to the Plan Sponsors.

59.    "*Exit Facility Loan Documents*" means the Exit Facility Loan Agreement and any other agreements and documents entered into in connection therewith.

60.    "*Exit Lenders*" means the lenders under the Exit Facility.

61.    "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

62.    "*Final DIP Order*" means the order of the Bankruptcy Court approving the DIP Facility on a final basis.

63.    "*Final Order*" means an order of the Bankruptcy Court as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or the Reorganized Debtors, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, no stay pending appeal has been granted or such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

64.    "*General Claims Bar Date*" means the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors that arose prior to the Petition Date.

65.    "*General Unsecured Claim*" means any Claim against any Debtor that is not a/an:  (a) DIP Facility Claim; (b) Administrative Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; (e) Other Secured Claim; (f) Prepetition Secured Loan Agreement Claim; (g) Prepetition Subordinated Notes Claim; (h) Intercompany Claim; or (i) Other Subordinated Claim.

66.    "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

67.    "*GUC Claims Ombudsman*" means a person appointed by the Committee, with the consent of the Debtors not to be unreasonably withheld, who shall be identified in the Plan Supplement, to consult with the Reorganized Debtors with respect to the allowance of Specified General Unsecured Claims after the Effective Date to the extent required herein.

68.     "*GUC Fund*" means $2,550,000 in Cash to be funded into a separate escrow account, which will be available for distribution by the Reorganized Debtors solely to Holders of all Allowed General Unsecured Claims (on a Pro Rata basis taking Classes 5A, 5B, 5C and 5D as a whole) in accordance with the "Treatment" sections in Article III hereof.  The GUC Fund will be funded as set forth in Section V.E.3 hereof.

69.     "*Holder*" means an Entity holding a Claim against, or Equity Interest in, any Debtor.

70.     "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

71.     "*Indemnification Provision*" means each of the indemnification provisions currently in place (whether in the bylaws, certificates of incorporation, board resolutions, employment contracts or otherwise) for the current and former directors, officers, employees, attorneys, other professionals and agents of the Debtors who served in such capacity on or any time after the Petition Date.

72.     "*Indemnified Parties*" means, collectively, each Debtor and each of its officers, directors and employees, each in their respective capacities as such and solely to the extent that each such party was serving in such capacity on or any time after the Petition Date.

73.     "*Initial Distribution Date*" means the date that is as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims other than Allowed General Unsecured Claims.

74.     "*Initial GUC Distribution Date*" means the date that is the first day of the month that follows the 30th day after the lapse of the Claims Objection Deadline, or as soon as reasonably practicable thereafter, when distributions under this Plan shall commence to Holders of Allowed General Unsecured Claims.

75.     "*Intercompany Claim(s)*" means any Claim(s) of a Debtor against any other Debtor.

76.     "*Interim DIP Order*" means the order entered by the Bankruptcy Court approving the DIP Facility on an interim basis.

77.     "*Kayne Subordinated Noteholders*" means Richard Kayne, as Trustee of the Richard & Suzanne Kayne Living Trust dtd 1/14/99, The Kayne Foundation, and KA-Sabes Investments LLC, three of the Majority Prepetition Subordinated Noteholders.

78.     "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

79.     "*Litigation Claims*" means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Entity, including, without limitation, the Causes of Action of the Debtors. A non-exclusive list of the Litigation Claims held by the Debtors as of the Effective Date shall be Filed in the Plan Supplement.

80.     "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

81.     "*Majority Prepetition Subordinated Noteholders*" means those Prepetition Subordinated Noteholders that are party to the Majority Prepetition Subordinated Noteholders Term Sheet.

82.     "*Majority Prepetition Subordinated Noteholders Term Sheet*" means the term sheet entered into by and between the Debtors and the Majority Prepetition Subordinated Noteholders which provides the material terms of the parties' agreement.  Attached hereto as **Exhibit "1"** is a true and correct copy of the Majority Prepetition Subordinated Noteholders Term Sheet.

83.     "*New Common Stock*" means the 1,000,000 shares of common stock of the Reorganized Parent, par value $.01 per share, which will be authorized to be issued by the Reorganized Parent severally to the Plan Sponsors as of the Effective Date pursuant to this Plan, the Plan Sponsors Investment Agreement to be Filed in the Plan Supplement, and Amended Organizational Documents to be filed in the Plan Supplement.  The New Common Stock will not be registered under the Securities Act, and no Holder of New Common Stock will have any registration rights. Attached hereto as **Exhibit "3"** is a true and correct copy of the term sheet entered into by and between the Debtors and the Plan Sponsors which provides the material terms of the parties' agreement.

84.     "*New Preferred Stock*" means the 1,000,000 shares of non-voting, non-convertible preferred stock of the Reorganized Parent, to be issued by the Reorganized Parent severally to the Plan Sponsors as of the Effective Date pursuant to the Plan, the terms of which will be described in Amended Organizational Documents for the Reorganized Parent and the Plan Sponsors Investment Agreement, both of which will be Filed in the Plan Supplement.  The New Preferred Stock will not be registered under the Securities Act, and no Holder of New Preferred Stock will have any registration rights.

85.     "*New Securities*" means the New Common Stock, the New Preferred Stock, and the New Warrants.

86.     "*New Warrants*" means the Warrants to be issued by the Reorganized Parent severally to the Prepetition Subordinated Noteholders in accordance with the Plan, the Amended Subordinated Notes, and a form of warrant agreement to be Filed in the Plan Supplement, exercisable for shares of New Common Stock initially representing in the aggregate 7.5% of the New Common Stock of the Reorganized Parent on a fully-diluted basis.  The New Warrants will not be registered under the Securities Act, and no Holder of New Warrants will have any registration rights.  The Majority Prepetition Subordinated Noteholders Term Sheet sets forth the material terms of the New Warrants.

87.     "*Ordinary Course Professionals Order*" means any Order approving the Debtors' motion to employ ordinary course professionals to be filed on or after the Petition Date in the Chapter 11 Cases.

88.     "*Other Secured Claim*" means any Secured Claim other than a DIP Facility Claim, Prepetition Secured Loan Agreement Claim, or Prepetition Subordinated Notes Claim.

89.     "*Other Subordinated Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

90. "*Parent*" means The Walking Company Holdings, Inc., a Delaware corporation.

91. "*Parent Equity Interests*" means any Equity Interest in the Parent.

92. "*Permitted Liens*" means (i) the Liens of the Exit Facility Agent and/or Exit Lenders resulting from the Exit Facility Loan Agreement and related documents, and (ii) the subordinated Liens of the Holders of the Amended Subordinated Notes in relation to such notes.

93. "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

94. "*Petition Date*" means the date on which the Debtors commence the Chapter 11 Cases.

95. "*Plan*" means this *Debtors' First Amended Joint Plan of Reorganization*, including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

96. "*Plan Schedule*" means a schedule annexed to either this Plan or as an appendix to the Disclosure Statement (as amended, modified or otherwise supplemented from time to time).

97. "*Plan Sponsors*" means Messrs. Richard Kayne, Fred Kayne and Andrew Feshbach (and/or their designees or assignees), which parties will provide the Consideration to the Reorganized Parent for Equity Interests in the Reorganized Parent as contemplated by the Plan Sponsors Investment Agreement; provided, however, if Fred Kayne declines to fund all or any part of his share of the Consideration by the Effective Date, Richard Kayne (including through a designee or assignee, if applicable) will fund the resulting shortfall and acquire the corresponding Equity Interests in the Reorganized Parent on the same terms.  Whenever the names of individual Plan Sponsors are used in this Plan, such names shall include such individual's designees and/or assignees.

98. "*Plan Sponsors Investment Agreement*" means the Investment Agreement to be entered into by and among the Parent and the Plan Sponsors as of the Effective Date, in form and substance satisfactory to the Plan Sponsors (and consistent with the Equity Term Sheet where applicable), a copy of which will be Filed in the Plan Supplement.  Among other provisions, the Plan Sponsors Investment Agreement will provide for an extinguishment, release and waiver by Andrew Feshbach of any and all debts and obligations owed to him by the Parent through the Effective Date under the Amended and Restated Royalty Agreement dated as to December 23, 2015.

99. "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be filed with the Bankruptcy Court on or before 10 days prior to the Confirmation Hearing.

100.    "*Postpetition*" means the time period beginning immediately upon the filing of the Chapter 11 Cases and ending on the Effective Date.

101.    "*Prepetition Agent*" means Wells Fargo Bank, National Association, in its capacity as administrative agent and collateral agent under the Prepetition Secured Loan Agreement.

102.    "*Prepetition Secured Lenders*" means the banks, financial institutions and other parties identified as lenders in the Prepetition Secured Loan Agreement from time to time.

103.    "*Prepetition Secured Loan Agreement*" means that certain Third Amended and Restated Loan and Security Agreement dated as of June 5, 2014, by and among The Walking Company Holdings, Inc., as Parent, and Big Dog USA, Inc. and The Walking Company, as Borrowers, the Prepetition Agent, and certain Lenders from time to time party thereto (as amended, waived, supplemented, and as otherwise modified from time to time).

104.    "*Prepetition Secured Loan Claim*" means any Claim of the Prepetition Agent and Prepetition Secured Lenders arising from, under or in connection with the Prepetition Secured Loan Agreement (including, without limitation, any and all "Obligations" as defined in the Prepetition Secured Loan Agreement).

105.    "*Prepetition Subordinated Noteholders*" means the Holders of the Prepetition Subordinated Notes as of the Petition Date and the successors thereof.

106.    "*Prepetition Subordinated Notes*" means a series of 8.375% Convertible Notes Due 2019 issued by the Parent on May 23, 2014.

107.    "*Prepetition Subordinated Notes Claims*" means any Claims arising under the Prepetition Subordinated Notes and related agreements and documents, including any guarantees and security documents entered into in connection therewith.

108.    "*Priority Non-Tax Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

109.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

110.    "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate Allowed amount of all Claims in such Class (or several Classes taken as a whole), unless this Plan provides otherwise.  For the avoidance of doubt, with regard to Classes 5A, 5B, 5C and 5D under the Plan, the preceding items (a) and (b) will be based on all said Classes aggregated together and taken as a whole.

111.    "*Professional*" means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

112.    "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

113.    "*Professional Fee Claims Reserve*" means a reserve established by the Debtors on the Effective Date to hold, in one or more segregated accounts to be established by the Debtors, Cash in an aggregate amount equal to the accrued and unpaid Professional Fee Claims as of the Effective Date (based on estimates provided by all Professionals to the Debtors). Any residual Cash remaining in the Professional Fee Claims Reserve after the allowance, disallowance, or other disposition by Final Order of all Professional Fee Claims shall be released to the Reorganized Debtors, without need for any further Court order or further notice.  The Professional Fee Claims Reserve is subject to any applicable provisions (if any) in the DIP Orders.

114.    "*Professional Fees Bar Date*" means the Business Day that is forty five (45) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

115.    "*Proof of Claim*" means a proof of Claim or Equity Interest Filed against any Debtor in the Chapter 11 Cases.

116.    "*Rejection Claims Bar Date*" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an Executory Contract or Unexpired Lease to file a proof of claim for damages related to such rejection.  The Rejection Claims Bar Date for any such Claim will be, as applicable, (a) for Executory Contracts and Unexpired Leases rejected pursuant to the Rejection Procedures Order or any order of the Court other than the Confirmation Order, the "Rejection Bar Date" (as defined in section 6 of the Bar Date Order); (b) for Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to Confirmation of the Plan, thirty (30) days after the Effective Date, or (if later and applicable) thirty (30) days after the date of the surrender of the leased real property to the affected lessor; and (c) any other date set by an order of the Court with respect to a specific rejected Executory Contract or Unexpired Lease.

117.    "*Rejection Procedures Order*" means the *Order Establishing Procedures for (I) the Rejection of Executory Contracts and Unexpired Leases of Nonresidential Real Property and (II) the Abandonment of Any Personal Property That Remains on the Premises* [Docket No. 185] entered by the Bankruptcy Court.

118.    "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members), general partners, limited partners, agents, managers, managing members, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity.

119.    "*Release*" means the releases given to the Released Parties as set forth in Article X.B and X.C hereof.

120.    "*Released Parties*" means collectively, each in its capacity as such:  (a) the Debtors; (b) the Plan Sponsors; (c) the Prepetition Subordinated Noteholders; (d) the Prepetition Agent; (e) the Prepetition Secured Lenders; (f) the DIP Agent; (g) the DIP Lenders; and/or (h) the Related Persons of each of (a) through (g) of the foregoing.

121.    "*Reorganized Subsidiaries*" means the Subsidiaries, as reorganized pursuant to this Plan on or after the Effective Date.

122. "*Reorganized Debtors*" means the Reorganized Parent and the Reorganized Subsidiaries.

123. "*Reorganized Parent*" means The Walking Company Holdings, Inc., as reorganized pursuant to this Plan on or after the Effective Date.

124. "*Schedules*" means the Schedules of Assets and Liabilities and Statements of Financial Affairs filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such documents have been or may be amended or supplemented from time to time.

125. "*Secured Claim*" means a Claim that is secured by a Lien on property in which any Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

126. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

127. "*Specified Administrative Claims*" means all (a) deferred rent that may be owed to landlords pursuant to section 365(b)(1) of the Bankruptcy Code as set forth in Article VI. B. herein; (b) February 2018 and March 2018 rent that may be owed to landlords pursuant to section 365(b)(1) of the Bankruptcy Code as set forth in Article VI. B. herein, (c) Professional Fee Claims; (d) 503(b)(9) Claims; and (e) all Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims, other than as reflected in the initial Budget filed by the Debtors in connection with the motion to obtain the DIP Order (as defined in the DIP Order).

128. "*Specified General Unsecured Claims*" has the meaning ascribed to said term in Article VIII.A.3 hereof.

129. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

130. "*Subsidiaries*" means The Walking Company, a Delaware corporation; Big Dog USA, Inc., a California corporation; and FootSmart, Inc., a Delaware corporation.

131. "*Subsequent Distribution*" means any distribution of property under this Plan to Holders of Allowed Claims other the initial distribution made on the Initial Distribution Date or the Initial GUC Distribution Date, as applicable.

132. "*Subsequent Distribution Date*" means the date that is ninety (90) days after the Initial Distribution Date and the date that is each ninety (90) days thereafter.

133. "*Subsequent GUC Distribution Date*" means the date that is ninety (90) days after the Initial GUC Distribution Date and the date that is each ninety (90) days thereafter.

- 13 -

134.    "*Third Party Release*" has the meaning ascribed to said term in Article X.C hereof.

135.    "*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

136.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, that such Class is not impaired within the meaning of Bankruptcy Code section 1124.

137.    "*Voting Agent*" means Kurtzman Carson Consultants, LLC, and any successor thereof.

138.    "*Voting Deadline*" means the date and time approved by the Court by which all Ballots must be received by the Voting Agent, or such other date and time as may be established by the Debtors with respect to any Class entitled to vote on the Plan.

139.    "*Voting Record Date*" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

## ARTICLE II.
## ADMINISTRATIVE, DIP FACILITY AND PRIORITY TAX CLAIMS

### A.    <u>Administrative Claims</u>

Subject to the paragraph below, on the later of the Effective Date or the date on which an Administrative Claim becomes an Allowed Administrative Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Claim will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Claim; or (ii) such other less favorable treatment as may be agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; provided, however, that Administrative Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtors or Reorganized Debtors in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim; provided that (i) in all events the total amount of fees payable to all of the Professionals employed by the Committee shall not exceed $500,000; (ii) the Reorganized Debtors will pay Professionals in the ordinary course of business for any work performed after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court; and (iii) any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order. Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party within 30 days after the Filing of the applicable request for payment of the Professional Fee Claim.  Each Holder of an Allowed Professional Fee Claim will be paid by the Reorganized Debtors in Cash from the Professional Fee Claims Reserve, after entry of the order approving such Allowed Professional Fee Claim.  If any portion of a Professional Fee

Claim is disputed by any party, such dispute is sustained by the Court and the affected Professional files a notice of appeal of such adverse ruling, then the Reorganized Debtors shall hold such disputed amounts in the Professional Fee Claims Reserve until the appeal is either withdrawn or resolved by a Final Order.

## B.      DIP Facility Claims

Unless otherwise agreed to by the DIP Lenders, the Allowed DIP Facility Claims will be indefeasibly paid and satisfied in full in Cash on the Effective Date in full satisfaction, settlement, discharge and release of, and in exchange for, such DIP Facility Claims in accordance with any applicable order(s) entered by the Bankruptcy Court.  Upon indefeasible payment and satisfaction in full of all Allowed DIP Facility Claims, the DIP Facility Loan Agreement and all Liens and security interests granted to secure the DIP Facility Claims, will be immediately terminated, extinguished and released.  Notwithstanding the above, any indemnity provisions contained in the DIP Facility Loan Agreement will survive such termination, release and satisfaction in the manner and to the extent set forth therein.

## C.      Priority Tax Claims

On or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or Reorganized Debtors:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (b) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (c) pursuant to and in accordance with sections 1129(a)(9)(C) and (D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in regular installment payments over a period ending not more than five years after the Petition Date, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtors or Reorganized Debtors, as applicable, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  Any installment payments to be made under clause (c) above will be made in equal quarterly Cash payments beginning on the Subsequent Distribution Date, and continuing on each Subsequent Distribution Date thereafter until payment in full of the applicable Allowed Priority Tax Claim.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree or order converting or dismissing the Chapter 11 Cases *provided, however*, that the Debtors may prepay any or all such Claims at any time, without premium or penalty.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

## A.      Summary

All Claims and Equity Interests, except Administrative Claims, DIP Facility Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims and Priority Tax Claims have not been classified as described in Article III.B of the Plan.

- 15 -

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

<u>Summary of Classification of Claims and Equity Interests</u>

**<u>Parent:</u>**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1A | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2A | Prepetition Secured Loan Agreement Claims | Unimpaired | Deemed to Accept |
| 3A | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4A | Prepetition Subordinated Notes Claims | Impaired | Entitled to Vote |
| 5A | General Unsecured Claims | Impaired | Entitled to Vote |
| 6A | Intercompany Claims | Impaired | Deemed to Reject |
| 7A | Other Subordinated Claims | Impaired | Deemed to Reject |
| 8A | Parent Equity Interests | Impaired | Deemed to Reject |

**<u>Subsidiaries:</u>**

**<u>The Walking Company:</u>**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1B | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2B | Prepetition Secured Loan Agreement Claims | Unimpaired | Deemed to Accept |
| 3B | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4B | Prepetition Subordinated Notes Claims | Impaired | Entitled to Vote |
| 5B | General Unsecured Claims | Impaired | Entitled to Vote |
| 6B | Intercompany Claims | Impaired | Deemed to Reject |
| 7B | Other Subordinated Claims | Impaired | Deemed to Reject |
| 9B | Equity Interests in Subsidiaries | Unimpaired | Deemed to Accept |

**<u>Big Dog USA, Inc.:</u>**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1C | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2C | Prepetition Secured Loan Agreement Claims | Unimpaired | Deemed to Accept |
| 3C | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4C | Prepetition Subordinated Notes Claims | Impaired | Entitled to Vote |
| 5C | General Unsecured Claims | Impaired | Entitled to Vote |
| 6C | Intercompany Claims | Impaired | Deemed to Reject |
| 7C | Other Subordinated Claims | Impaired | Deemed to Reject |
| 9C | Equity Interests in Subsidiaries | Unimpaired | Deemed to Accept |

**FootSmart, Inc.:**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1D | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2D | Prepetition Secured Loan Agreement Claims | Unimpaired | Deemed to Accept |
| 3D | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4D | Prepetition Subordinated Notes Claims | Impaired | Entitled to Vote |
| 5D | General Unsecured Claims | Impaired | Entitled to Vote |
| 6D | Intercompany Claims | Impaired | Deemed to Reject |
| 7D | Other Subordinated Claims | Impaired | Deemed to Reject |
| 9D | Equity Interests in Subsidiaries | Unimpaired | Deemed to Accept |

B.    **Classification and Treatment of Claims and Equity Interests - Parent**

      1.    Class 1A - Priority Non-Tax Claims

- *Classification*:  Class 1A consists of the Priority Non-Tax Claims against the Parent.

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Class 1A Claims are unaltered by the Plan.  With respect to each Class 1A Claim that becomes due and payable prior to the Effective Date, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1A Claim is an Allowed Class 1A Claim on the Effective Date or (ii) the date on which such Class 1A Claim becomes an Allowed Class 1A Claim, each Holder of an Allowed Class 1A Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1A Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 1A Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the

- 17 -

Holder of such Allowed Class 1A Claim will have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.

- *Voting*: Class 1A is an Unimpaired Class, and the Holders of Class 1A Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1A Claims will not be entitled to vote to accept or reject the Plan.

2.    Class 2A – Prepetition Secured Loan Agreement Claims

- *Classification*: Class 2A consists of the Prepetition Secured Loan Agreement Claims against the Parent.

- *Treatment*: If and to the extent that the Prepetition Secured Loan Agreement Claims have not been fully paid or otherwise satisfied by the Effective Date, the Prepetition Secured Loan Agreement Claims will be indefeasibly paid and satisfied in full in Cash on the Effective Date in full satisfaction, settlement, discharge and release of, and in exchange for, such Claims. Upon indefeasible payment and satisfaction in full of all Prepetition Loan Secured Claims, if such is not the case already, the Prepetition Secured Loan Agreement and all Liens and security interests granted to secure the Prepetition Secured Loan Agreement Claims, will be immediately terminated, extinguished and released.

- *Voting*: Class 2A is an Unimpaired Class, and the Holders of Class 2A Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 2A Claims will not be entitled to vote to accept or reject the Plan.

3.    Class 3A – Other Secured Claims

- *Classification*: Each Class 3A Claim is an Other Secured Claim against the Parent. This Class will be further divided into subclasses designated as Class 3A-1, Class 3A-2 and so on, so that each holder of any Other Secured Claim is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class, and except for a precautionary class of otherwise unclassified Other Secured Claims.

- *Treatment*: The legal, equitable and contractual rights of the Holders of Class 3A Claims are unaltered by the Plan. With respect to each Class 3A Claim that becomes due and payable prior to the Effective Date, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3A Claim is an Allowed Class 3A Claim on the Effective Date or (ii) the date on which such Class 3A Claim becomes an Allowed Class 3A Claim, each Holder of an Allowed Class 3A Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3A Claim, at the election of the

Debtors or Reorganized Debtors: (A) Cash equal to the amount of such Allowed Class 3A Claim; (B) the Collateral securing such Allowed Class 3A Claim; (C) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 3A Claim will have agreed upon in writing; or (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code. Each Holder of an Allowed Other Secured Claim will retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment or other satisfaction of such Allowed Other Secured Claim is made as provided herein. On the full payment or other satisfaction of such obligations, the Liens securing such Allowed Other Secured Claim will be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

- *Voting*: Class 3A is an Unimpaired Class, and the Holders of Class 3A Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 3A Claims will not be entitled to vote to accept or reject the Plan.

4.      Class 4A - Prepetition Subordinated Notes Claims

- *Classification*: Class 4A consists of the Prepetition Subordinated Notes Claims against the Parent.

- *Treatment*: Each Holder of a Prepetition Subordinated Notes Claim will be treated as follows:

(A) On the Effective Date, (i) the Prepetition Subordinated Notes will be amended and restated by the Amended Subordinated Notes, which shall be due and payable March 31, 2022, and (ii) any and all documents relating to the Prepetition Subordinated Notes (including, without limitation, any guaranties, security agreements and documents and intercreditor agreements) will be amended, supplemented or otherwise modified to be consistent with the Plan, the Majority Prepetition Subordinated Noteholders Term Sheet, and the Amended Subordinated Notes. For the avoidance of doubt, all Liens held by the Holders of Prepetition Subordinated Notes shall be preserved in all respects and shall not be terminated, released or extinguished and liens securing the Amended Subordinated Notes shall encumber, and shall be granted with respect to, all of the Debtors' respective assets. The aggregate principal amount of the Amended Subordinated Notes as of the Effective Date shall include all accrued and unpaid interest that is due and payable as of the Effective Date under the Prepetition Subordinated Notes, and any reasonable fees (provided for under the DIP Orders) that were not paid prior to the Effective Date, notwithstanding any obligation (if any) of the Debtors to pay such fees on or before the Effective Date. In the event the Plan is confirmed, upon and after the Effective Date, (x) the amendments

implemented by the Amended Subordinated Notes shall be binding on all Holders of Prepetition Subordinated Notes Claims, without need for any further or other ratification, consent, authorization, or other action by such Holders, and (y) notwithstanding any term or provision in the Prepetition Subordinated Notes or the documents relating to the Prepetition Subordinated Notes (including, without limitation, any guaranties, security agreements and documents and intercreditor agreements) to the contrary, the Amended Subordinated Notes may be amended or modified in any way by those holding a majority, in face dollar amount, of the Amended Subordinated Notes.

(B)  The New Warrants will be issued to the Holders of Prepetition Subordinated Notes Claims to purchase up to an aggregate of 7.5% of the outstanding New Common Stock on a fully-diluted basis, at an aggregate exercise price of $37,500, with a term of 10 years. The New Warrants will be deemed issued in a private placement and in accordance with applicable non-bankruptcy law and without registration under the Securities Act or any similar federal, state or local laws.

- *Voting*: Class 4A is Impaired, and Holders of Class 4A Claims are entitled to vote to accept or reject the Plan.

5.    Class 5A - General Unsecured Claims

- *Classification*:  Class 5A consists of the General Unsecured Claims against the Parent.

- *Treatment*:  Unless other less favorable treatment is agreed to in writing by the Debtors or Reorganized Debtors (as applicable) and the applicable creditor, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed General Unsecured Claim, (i) on the Initial GUC Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Fund; and (ii) on each Subsequent GUC Distribution Date after the Initial GUC Distribution Date, such Holder shall receive its Pro Rata share of the GUC Fund as then constituted, until all of the GUC Fund has been depleted.  For the avoidance of doubt, by the final Subsequent GUC Distribution Date, such Holder shall receive in the aggregate its Pro Rata share of a $2,550,000 GUC Fund.

- *Voting*: Class 5A is Impaired, and Holders of Class 5A Claims are entitled to vote to accept or reject the Plan.

6.    Class 6A - Intercompany Claims

- *Classification*:  Class 6A consists of Intercompany Claims against the Parent.

- *Treatment*:  Each Holder of an Intercompany Claim shall not receive or retain any distribution under the Plan on account of such Intercompany Claim, and all such Intercompany Claims shall be

eliminated and extinguished, provided, however, that the Reorganized Debtors may determine to preserve Intercompany Claims to the extent extinguishment would result in adverse tax consequences.

- *Voting*:  Class 6A is Impaired, and Holders of Class 6A Claims are deemed to reject the Plan.

7.    Class 7A – Other Subordinated Claims

- *Classification*:  Class 7A consists of Other Subordinated Claims against the Parent.

- *Treatment*:  Each Holder of an Other Subordinated Claim shall not receive or retain any distribution under the Plan on account of such Claim, and all such Other Subordinated Claims shall be eliminated and discharged.

- *Voting*:  Class 7A is Impaired, and Holders of Class 7A Claims are deemed to reject the Plan.

8.    Class 8A - Parent Equity Interests

- *Classification*:  Class 8A consists of the Parent Equity Interests.

- *Treatment*:  On the Effective Date, all Class 8A Equity Interests will be deemed canceled and will be of no further force and effect, whether surrendered for cancellation or otherwise.  Holders of Class 8A Equity Interests will not receive any distribution on account of their Parent Equity Interests.

- *Voting*:  Class 8A is Impaired, and the Holders of Class 8A Equity Interests are deemed to reject the Plan.

**C.    Classification and Treatment of Claims and Equity Interests - Subsidiaries**[2]

1.    Classes 1B-1D - Priority Non-Tax Claims

- *Classification*:  Classes 1B-1D consist of the Priority Non-Tax Claims against the applicable Subsidiary.

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Classes 1B-1D Claims are unaltered by the Plan.  With respect to each Class 1B-1D Claim that becomes due and payable prior to the Effective Date, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1B-1D Claim is an Allowed Class 1B-1D Claim on the Effective Date

---

[2] Although the following provisions reference altogether the separate Classes of Claims and Equity Interests for each Subsidiary for the ease of reference, the Plan constitutes a separate chapter 11 plan of reorganization for each Subsidiary, as well as the Parent.  All Classes designated as "___B" apply to The Walking Company, all Classes designated as "___C" apply to Big Dog USA, Inc., and all Classes designated as "___D" apply to FootSmart, Inc.

or (ii) the date on which such Class 1B-1D Claim becomes an Allowed Class 1B-1D Claim, each Holder of an Allowed Class 1B-1D Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1B-1D Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 1B-1D Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 1B-1D Claim will have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.

- *Voting*:  Classes 1B-1D are Unimpaired Classes, and the Holders of Class 1B-1D Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1B-1D Claims will not be entitled to vote to accept or reject the Plan.

2.    Classes 2B-2D – Prepetition Secured Loan Agreement Claims

- *Classification*:  Classes 2B-2D consist of the Prepetition Secured Loan Agreement Claims against the applicable Subsidiary.

- *Treatment*:  If and to the extent that the Prepetition Secured Loan Agreement Claims have not been fully paid or otherwise satisfied by the Effective Date, the Prepetition Secured Loan Agreement Claims will be indefeasibly paid and satisfied in full in Cash on the Effective Date in full satisfaction, settlement, discharge and release of, and in exchange for, such Claims.  Upon indefeasible payment and satisfaction in full of all Prepetition Loan Secured Claims, if such is not the case already, the Prepetition Secured Loan Agreement and all Liens and security interests granted to secure the Prepetition Secured Loan Agreement Claims, will be immediately terminated, extinguished and released.

- *Voting*:  Classes 2B-2D are Unimpaired Classes, and the Holders of Class 2B-2D Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 2B-2D Claims will not be entitled to vote to accept or reject the Plan.

3.    Classes 3B-3D – Other Secured Claims

- *Classification*:  Each Class 3B-3D Claim is an Other Secured Claim against the applicable Subsidiary.  This Class will be further divided into subclasses designated as Classes 3B-1, 3B-2, 3C-1, 3C-2, 3D-1, 3D-2, and so on, so that each holder of any Other Secured Claim is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class, and except for a precautionary class of otherwise unclassified Other Secured Claims.

- 22 -

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Class 3B-3D Claims are unaltered by the Plan.  With respect to each Class 3B-3D Claim that becomes due and payable prior to the Effective Date, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3B-3D Claim is an Allowed Class 3B-3D Claim on the Effective Date or (ii) the date on which such Class 3B-3D Claim becomes an Allowed Class 3B-3D Claim, each Holder of an Allowed Class 3B-3D Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3B-3D Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 3B-3D Claim; (B) the Collateral securing such Allowed Class 3B-3D Claim; (C) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 3B-3D Claim will have agreed upon in writing; or (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.  Each Holder of an Allowed Other Secured Claim will retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment or other satisfaction of such Allowed Other Secured Claim is made as provided herein.  On the full payment or other satisfaction of such obligations, the Liens securing such Allowed Other Secured Claim will be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

- *Voting*:  Classes 3B-3D are Unimpaired Classes, and the Holders of Class 3B-3D Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3B-3D Claims will not be entitled to vote to accept or reject the Plan.

4.    Classes 4B-4D - Prepetition Subordinated Notes Claims

- *Classification*:  Classes 4B-4D consist of the Prepetition Subordinated Notes Claims against the applicable Subsidiary.

- *Treatment*:  Each Holder of a Prepetition Subordinated Notes Claim will be treated as follows:

    (A) On the Effective Date, (i) the Prepetition Subordinated Notes will be amended and restated by the Amended Subordinated Notes, which shall be due and payable March 31, 2022, and (ii) any and all documents relating to the Prepetition Subordinated Notes (including, without limitation, any guaranties, security agreements and documents and intercreditor agreements) will be amended, supplemented or otherwise modified to be consistent with the Plan, the Majority Prepetition Subordinated Noteholders Term Sheet, and the Amended Subordinated Notes.  For the avoidance of doubt, all Liens held by the Holders of Prepetition Subordinated Notes shall be preserved in all respects and shall not be terminated, released or extinguished and liens securing the Amended

Subordinated Notes shall encumber, and shall be granted with respect to, all of the Debtors' respective assets.  The aggregate principal amount of the Amended Subordinated Notes as of the Effective Date shall include all accrued and unpaid interest that is due and payable as of the Effective Date under the Prepetition Subordinated Notes, and any reasonable fees (provided for under the DIP Orders) that were not paid prior to the Effective Date, notwithstanding any obligation (if any) of the Debtors to pay such fees on or before the Effective Date.  In the event the Plan is confirmed, upon and after the Effective Date, (x) the amendments implemented by the Amended Subordinated Notes shall be binding on all Holders of Prepetition Subordinated Notes Claims, without need for any further or other ratification, consent, authorization, or other action by such Holders, and (y) notwithstanding any term or provision in the Prepetition Subordinated Notes or the documents relating to the Prepetition Subordinated Notes (including, without limitation, any guaranties, security agreements and documents and intercreditor agreements) to the contrary, the Amended Subordinated Notes may be amended or modified in any way by those holding a majority, in face dollar amount, of the Amended Subordinated Notes.

(B)  The New Warrants will be issued to the Holders of Prepetition Subordinated Notes Claims to purchase up to an aggregate of 7.5% of the outstanding New Common Stock on a fully-diluted basis, at an aggregate exercise price of $37,500, with a term of 10 years.  The New Warrants will be deemed issued in a private placement and in accordance with applicable non-bankruptcy law and without registration under the Securities Act or any similar federal, state or local laws.

- *Voting*:  Classes 4B-4D are Impaired, and Holders of Classes 4B-4D Claims are entitled to vote to accept or reject the Plan.

5.    Classes 5B-5D - General Unsecured Claims

- *Classification*:  Classes 5B-5D consist of the General Unsecured Claims against the applicable Subsidiary.

- *Treatment*:  Unless other less favorable treatment is agreed to in writing by the Debtors or Reorganized Debtors (as applicable) and the applicable creditor, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed General Unsecured Claim, (i) on the Initial GUC Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Fund; and (ii) on each Subsequent GUC Distribution Date after the Initial GUC Distribution Date, such Holder shall receive its Pro Rata share of the GUC Fund as then constituted, until the GUC Fund has been depleted.  For the avoidance of doubt, by the final Subsequent GUC Distribution Date, such Holder shall receive in the aggregate its Pro Rata share of a $2,550,000 GUC Fund.

- *Voting*:  Classes 5B-5D are Impaired, and Holders of Class 5B-5D Claims are entitled to vote to accept or reject the Plan.

6.    Classes 6B-6D - Intercompany Claims

- *Classification*:  Classes 6B-6D consist of Intercompany Claims against the applicable Subsidiary.

- *Treatment*:  Each Holder of an Intercompany Claim shall not receive or retain any distribution under the Plan on account of such Intercompany Claim, and all such Intercompany Claims shall be eliminated and extinguished, provided, however, that the Reorganized Debtors may determine to preserve Intercompany Claims to the extent extinguishment would result in adverse tax consequences.

- *Voting*:  Classes 6B-6D are Impaired, and Holders of Class 6B-6D Claims are deemed to reject the Plan.

7.    Classes 7B-7D – Other Subordinated Claims

- *Classification*:  Classes 7B-7D consist of Other Subordinated Claims against the applicable Subsidiary.

- *Treatment*:  Each Holder of an Other Subordinated Claim shall not receive or retain any distribution under the Plan on account of such Claim, and all such Other Subordinated Claims shall be eliminated and discharged.

- *Voting*:  Classes 7B-7D are Impaired, and Holders of Class 7B-7D Claims are deemed to reject the Plan.

8.    Classes 9B-9D - Equity Interests in Subsidiaries

- *Classification*:  Classes 9B-9D consist of all Equity Interests in the Subsidiaries.

- *Treatment*:  On the Effective Date, Reorganized Parent will own directly 100% of the Equity Interests in the Reorganized Subsidiaries.

- *Voting*:  Classes 9B-9D are Unimpaired, and the Parent, as the Holder of Class 9B-9D Equity Interests, will be conclusively deemed to have accepted the Plan.

## D.    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtors' rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to contracts to be assumed under the Plan.

E.      **Discharge of Claims**

Except as otherwise provided in the Plan and effective as of the Effective Date:  (i) the rights afforded herein and the treatment of all Claims and Equity Interests will be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including (except in the case of postpetition interest comprising part of the Prepetition Secured Loan Agreement Claim or the DIP Facility Claim) any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (ii) the Plan will bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject the Plan or voted to reject the Plan; (iii) all Claims and Equity Interests will be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto will be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (iv) all Entities will be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Equity Interests based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

A.      **Presumed Acceptance of Plan**

Classes 1A-1D, 2A-2D, 3A-3D, and 9B-9D are Unimpaired under the Plan, and are, therefore, presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

B.      **Presumed Rejection of Plan**

Classes 6A-6D, 7A-7D and 8A are Impaired.  The members of said Classes shall receive no distribution under the Plan, and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

C.      **Voting Classes**

Each Holder of an Allowed Claim as of the applicable Voting Record Date in each of the voting Classes (Classes 4A-4D and 5A-5D) will be entitled to vote to accept or reject the Plan. Notwithstanding the foregoing and any other provision of the Plan, any landlord under an Unexpired Lease of non-residential real property shall be provided with, and may submit by the Voting Deadline, a provisional Class 5B, 5C, or 5D Ballot (as applicable) in case the landlord's Unexpired Lease is identified on the Amended Contract Assumption/Rejection  List or any amendment(s) thereof as to be rejected as of the Effective Date, as further provided in the order(s) approving the Disclosure Statement and forms of Ballots and related notices.

D.      **Acceptance by Impaired Classes of Claims**

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

E.      **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Debtors request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtors reserve the right to modify the Plan or any exhibit thereto or Plan Schedule in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      **General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

B.      **Corporate Existence & Corporate Actions**

The Debtors will continue to exist after the Effective Date as separate legal entities, with all the powers of corporations pursuant to the applicable law in their states of incorporation and pursuant to the Amended Organizational Documents.  For the avoidance of doubt, there will be no substantive consolidation of the Chapter 11 Cases and the Estates for distribution, voting, or any other purposes under the Bankruptcy Code.

1.      **Organizational Documents**

The Amended Organizational Documents shall amend or succeed the certificates or articles of incorporation, by-laws, and other organizational documents of the Debtors to satisfy the provisions of the Plan and the Bankruptcy Code, and will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of New Common Stock and New Preferred Stock in amounts not less than the amounts necessary to permit the distributions thereof required or contemplated by the Plan; (iii) to the extent necessary or appropriate, consistent with the Plan Sponsors Investment Agreement, include anti-dilution provisions, voting provisions, and restrictions on the transfer of New Common Stock and/or New Preferred Stock; (iv) set forth the powers, preferences, and other provisions relating to the New Preferred Stock; and (v) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein.  After the Effective Date, the Reorganized Debtors may amend or amend and restate their certificates or articles of incorporation and by-laws, and other applicable organizational documents, from time to time, as permitted by applicable law.

2.      **Directors and Officers**

As of the Effective Date, the initial officers of the Reorganized Debtors will be the officers of the Debtors existing immediately prior to the Effective Date and the existing directors of the Reorganized Debtors will be the directors of such Debtors immediately prior to the Effective Date; provided that if it is later agreed by the Debtors and Plan Sponsors under the Plan Sponsors Investment Agreement that, as of the Effective Date, any directors are to resign, or any new directors are to be appointed to, the board of any of the Debtors, such information will provided in the Plan Supplement.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, prior to the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the initial board of directors or as an officer of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a director or officer, the nature of any compensation for such Person.  Each such director and each officer will serve from and after the Effective Date pursuant to applicable law and the terms of the Amended Organizational Documents and the other constituent and organizational documents of the Reorganized Debtors.

### 3.    Corporate Action

Each of the Debtors and the Reorganized Debtors, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the Reorganized Debtors and as applicable or by any other Person (except for those expressly required pursuant to the Plan).

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors or members of any Debtor (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, managers or partners of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtors, as applicable, and any legal or corporate action required by any Debtor or any Reorganized Debtor as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of any Debtor or any Reorganized Debtors, as applicable, or by any other Person.  On the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtors, as applicable, are authorized to issue, execute, and deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtors and Reorganized Debtors, as applicable, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  The secretary and any assistant secretary of each Debtor and each Reorganized Debtor, as applicable, will be authorized to certify or attest to any of the foregoing actions.

## C.    Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date, all property and assets of the Estates (including, without limitation, Causes of Action) and any property and assets acquired by the Debtors pursuant to the Plan will vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances except for the Permitted Liens.

Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims and Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors will pay the charges that they incur after the Effective Date for any professionals' and advisors' fees, disbursements, expenses or related support services in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

**D.      Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity except for the Permitted Liens.  Any Entity holding such released and terminated Liens or Equity Interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

**E.      Sources of Funds for Plan Distributions**

Distributions under the Plan shall be made from the proceeds of the Exit Facility, the Consideration, and cash from operations.

**1.      Secured Exit Facility**

On the Effective Date, the Reorganized Debtors will enter into the Exit Facility with the Exit Lenders in the aggregate amount of $55 million.  The Exit Facility shall be secured by a valid, enforceable, fully perfected first priority lien on and security interest in substantially all of the assets of the Reorganized Debtors (excluding, without limitation, any real property leases), which in all events shall be senior in priority over the subordinated Liens of the Holders of the Amended Subordinated Notes and any other Liens as set forth in the Exit Facility Loan Documents (including, without limitation, any reaffirmation agreements).

Proceeds of the Exit Facility will be used to fund certain Cash distributions under the Plan (including repayment of the DIP Facility), and will also be used to fund the ongoing business operations of the Reorganized Debtors.

On the Effective Date, the applicable Reorganized Debtors will be authorized to execute and deliver (as applicable) the Exit Facility Loan Agreement and any and all documents related thereto, and will be authorized to execute, deliver, file, record and issue any notes, guarantees, deeds of trust, documents (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity including, without limitation, any Holder of a Prepetition Subordinated Notes Claim (other than expressly required by the Exit Facility Loan Agreement).  Without limiting the foregoing, the Debtors and Reorganized Debtors (as applicable) shall be charged as attorneys-in-fact for all Holders of the Prepetition Subordinated Notes Claims other than the Majority Prepetition Subordinated Noteholders, with respect to

executing on behalf of such Holders any reaffirmation and/or subordination agreements reasonably requested by the Exit Lender.

Confirmation of the Plan shall be deemed to constitute approval of the Exit Facility and the Exit Facility Loan Documents (including all transactions contemplated thereby and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations under the Exit Facility Loan Documents and such other documents as may be reasonably required or appropriate, in each case, in accordance with the Exit Facility Loan Documents.

On the Effective Date, the Exit Facility Loan Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Facility Loan Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility Loan Documents (a) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Loan Documents, (b) shall be deemed automatically attached and perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Facility Loan Documents, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Entities granted such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach, and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties. To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit Facility Agent that are necessary to cancel and/or extinguish such liens and/or security interests.

## 2.      **Plan Sponsors – Funding of the Consideration**

Prior to or on the Effective Date, the Plan Sponsors shall provide the Consideration to the Reorganized Debtors pursuant to the Plan and Plan Sponsors Investment Agreement, in consideration of the Plan Sponsors' purchase of their respective shares of the New Common Stock and New Preferred Stock, which Cash shall be used to fund some or all of the distributions provided for under the Plan.

3.      **Cash from Operations**

(A) After the Effective Date, the Reorganized Debtors will fund the GUC Fund in the form of an escrow account, the funds deposited into which shall not constitute property of the Reorganized Debtors and which shall be earmarked for the benefit of Holders of Allowed Class 5A-5D Claims. Assuming an Effective Date of June 30, 2018, this escrow account will be funded, in a total amount equal to the GUC Fund, over a period of four (4) months, as follows: (1) $500,000 will be funded by August 1, 2018; (2) $500,000 will be funded by September 3, 2018, (3) $800,000 will be funded by October 1, 2018 and (4) $750,000 will be funded by November 1, 2018. In the event the total amount of fees payable to Professionals employed by the Committee are less than $500,000 in the aggregate, the remaining portion shall be added to the GUC Fund and earmarked for the benefit of the Holders of Allowed Class 5A-5D Claims. Distributions to Holders of Allowed Class 5A-5D Claims will be made from the GUC Fund as and when required in accordance with Article III herein.

(B) After the Effective Date, the Reorganized Debtors will fund an escrow account, the funds deposited into which shall not constitute property of the Reorganized Debtors and be earmarked for the benefit of Holders of Allowed 503(b)(9) Claims, in an amount equal to the Debtors' good faith estimate of the total amount of Allowed 503(b)(9) Claims. This escrow account will be funded over a period of four (4) months after the Effective Date in equal installments on August 1, 2018, September 3, 2018, October 1, 2018 and November 1, 2018. If this escrow account is exhausted prior to the satisfaction of all Allowed 503(b)(9) Claims, any unpaid Allowed 503(b)(9) Claims shall be paid from the Reorganized Debtors' general funds; in no event shall monies in the GUC Fund escrow be used for such purposes. If any monies remain in the 503(b)(9) escrow account after all Allowed Section 503(b)(9) Claims are paid, such monies shall be transferred to the Reorganized Debtors and thereafter shall become unrestricted funds of the Reorganized Debtors. Distributions to Holders of Allowed 503(b)(9) Claims will be made by the Debtors as and when required in accordance with Article III herein.

F.      **Issuance of New Securities and Amended Subordinated Notes**

The issuance and distribution of the New Common Stock, New Preferred Stock, and New Warrants will be exempt from registration under applicable securities laws.

1.      **New Common Stock**

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Parent will distribute to the Plan Sponsors their respective shares of New Common Stock in accordance with the Plan and Plan Sponsors Investment Agreement. Specifically, Fred Kayne, Richard Kayne, and Andrew Feshbach (or their respective designees or assignees) shall receive sufficient shares representing 50%, 33%, and 17%, respectively, of the New Common Stock to be issued pursuant to the Plan (subject to dilution from the New Warrants issued under the Plan); provided, however, in accordance with the Plan Sponsors Investment Agreement, if Fred Kayne declines to fund all or any part of his applicable share of the Consideration for the New Common Stock by the Effective Date, and instead, Richard Kayne funds the resulting shortfall by the Effective Date, the proportionate share of the New Common Stock initially expected to be distributed to Fred Kayne shall be issued to Richard Kayne on the same terms.

2.    **New Preferred Stock**

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Parent will distribute to the Plan Sponsors their respective shares of New Preferred Stock in accordance with the Plan and Plan Sponsors Investment Agreement.  Specifically, Fred Kayne, Richard Kayne, and Andrew Feshbach (or their respective assignees or designees) shall receive sufficient shares representing 50%, 33%, and 17%, respectively, of the New Preferred Stock to be issued pursuant to the Plan; provided, however, in accordance with the Plan Sponsors Investment Agreement, if Fred Kayne declines to fund all or any part of his applicable share of the Consideration for the New Preferred Stock by the Effective Date, and instead, Richard Kayne funds the resulting shortfall by the Effective Date, the proportionate share of the New Preferred Stock initially expected to be distributed to Fred Kayne shall be issued to Richard Kayne on the same terms.

3.    **New Warrants**

The New Warrants will be issued to Prepetition Subordinated Noteholders on a pro rata basis to purchase up to an aggregate of 7.5% of the outstanding New Common Stock on a fully-diluted basis, for an aggregate exercise price of $37,500, with a term of 10 years.

4.    **Amended Subordinated Notes**

On the Effective Date, (i) the Prepetition Subordinated Notes will be amended and restated by the Amended Subordinated Notes, and (ii) any and all other documents relating to the Prepetition Subordinated Notes (including, without limitation, any guaranties, security agreements and documents and intercreditor agreements) will be amended, supplemented or otherwise modified to be consistent with the Plan, Majority Prepetition Subordinated Noteholders Term Sheet, and the Amended Subordinated Notes and will be in form and substance satisfactory to the Majority Prepetition Subordinated Noteholders.

G.    **Cancellation of Notes, Certificates and Instruments**

On the Effective Date, all notes, stock, instruments, certificates, agreements and other documents evidencing the Prepetition Secured Loan Claims, the DIP Facility Claims and the Parent Equity Interests will be canceled, and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

**ARTICLE VI.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.    **Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts (including, without limitation, employment agreements) and Unexpired Leases that: (i) have been rejected by order of the Bankruptcy Court; (ii) are the subject of a motion to reject pending on the Confirmation Date; (iii) are identified in the Plan Supplement as to be rejected (in either case which list may be amended by the Debtors to add or remove Executory Contracts and Unexpired Leases by filing with the Bankruptcy Court an amended list ("Amended Contract Assumption/Rejection  List") and serving it on the affected contract parties at least five (5) days

prior to the Confirmation Hearing); or (iv) are rejected pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract and Unexpired Lease assumed pursuant to this Article of the Plan will revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, subject to the other provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

**B.**     **Assumption of Executory Contracts or Unexpired Leases and Related Cure/Objection Process**

In the event of an assumption of an Executory Contract or Unexpired Lease, at least thirty (30) days prior to the Confirmation Hearing, the Debtors will File and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, which will: (a) list the applicable cure amount, if any; (b) describe the procedures for filing objections thereto; and (c) explain the process by which related disputes will be resolved by the Bankruptcy Court. Any applicable cure amounts will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, (if later) as and when due in the ordinary course, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or any related cure amount must be Filed, served and actually received by the Debtors at least fifteen (15) days prior to the Confirmation Hearing; provided, however, the applicable counterparty may raise at the Confirmation Hearing an objection to the addition or deletion (as applicable) of the counterparty's Executory Contract or Unexpired Lease on an Amended Contract Assumption/Rejection List. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption of its Executory Contract or Unexpired Lease and proposed cure amount. The Confirmation Order will constitute an order of the Bankruptcy Court approving any proposed assumptions of Executory Contracts or Unexpired Leases and cure amounts pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (c) any other matter pertaining to assumption, the disputed matters will be adjudicated at the Confirmation Hearing, and the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code (if any) will be made following the entry of a Final Order or orders resolving the dispute (or, if later, as and when due in the ordinary course). If an objection to assumption or cure amount is sustained by the Bankruptcy Court, the Reorganized Debtors in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

**C.**        **Rejection of Executory Contracts or Unexpired Leases**

All Executory Contracts and Unexpired Leases listed in the Plan Supplement to be rejected will be deemed rejected as of the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections described in this Article of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**D.**        **Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within the applicable Rejection Claims Bar Date.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article XI.D of the Plan. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as Class 5A, 5B, 5C, or 5D Claims, as applicable, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

**E.**        **Indemnification Provisions**

All indemnification provisions (if any) currently in place (whether in the by-laws, certificate of incorporation, board resolutions, contracts, or otherwise) for the following: (i) the Prepetition Agent; (ii) the Prepetition Lenders; (iii) the Prepetition Subordinated Noteholders; and (iv) the directors, officers and employees of the Debtors who served in such capacity as of the Petition Date with respect to or based upon any act or omission taken or omitted in such capacities, for or on behalf of the Debtors, will be reinstated or assumed, as the case may be, and will survive effectiveness of the Plan. No such reinstatement or assumption shall in any way extend the scope or term of any indemnification provision beyond that contemplated in the underlying contract or document as applicable.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**        **Dates of Distributions**

Except as otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. To the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of

whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Reorganized Debtors shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Confirmation Order. All payments and all distributions made by the Reorganized Debtors under the Plan shall be in full and final satisfaction, settlement and release of all Claims against the Reorganized Debtors.

At the close of business on the Distribution Record Date, the transfer ledgers for the Prepetition Subordinated Notes shall be closed, and there shall be no further changes in the record holders of such indebtedness. The Reorganized Debtors, the Disbursing Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Prepetition Subordinated Notes occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

## B.    <u>Distribution Agent</u>

Except as provided herein, all distributions under the Plan shall be made by the Reorganized Debtors as Distribution Agent, or by such other Entity designated by the Debtors as a Distribution Agent on the Effective Date. The Reorganized Debtors, or such other Entity designated by the Debtors, shall not be required to give any bond or surety or other security for the performance of duties as Distribution Agent unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

## C.    <u>Cash Distributions</u>

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## D.    <u>Rounding of Payments</u>

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one dollar. To the extent Cash, notes, and stock are to be distributed under the Plan remain undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash, notes, or stock shall be treated as "Unclaimed Property" under the Plan.

No fractional shares shall be issued or distributed under the Plan. Each Person entitled to receive shares of New Common Stock or Replacement Subordinated Notes shall receive the total number of whole shares of New Common Stock, or, as the case may be, the number of Replacement Subordinated Notes, to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of shares of New

Common Stock or, as the case may be, Replacement Subordinated Notes, the actual distribution shall be rounded to the next lower whole number.

## E.    Distributions on Account of Claims Allowed After the Effective Date

Except as otherwise agreed by the Holder of a particular Claim, or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order.  Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest dollar.

## F.    General Distribution Procedures

The Reorganized Debtors, or any other duly appointed Distribution Agent, shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise.  All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

## G.    Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim filed by such Holders, (2) at the addresses set forth in any written notices of address change delivered to the Debtors, or (3) at the addresses in the Debtors' books and records.

## H.    Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder, unless and until the Reorganized Debtors is notified in writing of such Holder's then current address.

Any Entity which fails to claim any Cash within one year from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan. Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Reorganized Debtors.

## I.    De Minimis Cash Distribution Amounts

Notwithstanding anything herein to the contrary, except with respect to Administrative, Priority Tax, Secured and Priority Non-Tax Claims, if a Distribution to be made to a holder of an Allowed Claim on (as applicable) the Initial Distribution Date, Initial GUC Distribution Date, any Subsequent Distribution Date, or any Subsequent GUC Distribution Date would be $50 or less in the aggregate, no such Distribution will be made to that holder unless a request therefor is made in writing to the Reorganized Debtors.  If such request is made, such Cash shall be held for such holder until the earlier of (i) the next time an interim distribution is made to the holders of Allowed Claims (unless the distribution would still be less than $50, in which case this

Section shall again apply), or (ii) the date on which final distributions are made to the holders of Allowed Claims.

## J.     Withholding Taxes

Pursuant to section 346(f) of the Bankruptcy Code, the Reorganized Debtors (or other Distribution Agent, if applicable) shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  From and as of the Effective Date, the Reorganized Debtors shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes.  As a condition to receiving any distribution under the Plan, the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws.

## K.     Setoffs

The Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and causes of action that the Reorganized Debtors possesses against such Holder.

## L.     Surrender of Cancelled Instruments or Securities

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by the instruments, securities, notes, or other documentation canceled pursuant to Article V.G of the Plan, the Holder of such Claim will tender the applicable instruments, securities, notes or other documentation evidencing such Claim (or a sworn affidavit identifying the instruments, securities, notes or other documentation formerly held by such Holder and certifying that they have been lost), to Reorganized Parent or another applicable Distribution Agent unless waived in writing by the Debtors or the Reorganized Debtors, as applicable.

**ARTICLE VIII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

## A.     General Procedures Regarding Disputed Claims

### 1.     No Interim Payment of Disputed Claims

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Debtors and the Holder of the Claim.  Following the date on which a Disputed Claim becomes an Allowed Claim after the applicable distribution date, the Reorganized Debtors shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

2.      **Prosecution of Objections to Claims**

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date until the Claims Objection Deadline, the Reorganized Debtors, will have the authority to File objections to Claims and settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.  The Reorganized Debtors will have the sole authority to administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan or by orders of the Bankruptcy Court.

3.      **Participation of GUC Claims Ombudsman**

The Reorganized Debtors shall consult with the GUC Claims Ombudsman in connection with the resolution of the allowance of the following General Unsecured Claims: (1) any General Unsecured Claim that has been filed in an amount exceeding $250,000 if the General Unsecured Claim is not listed on the Schedules or is listed as disputed, contingent or unliquidated; (2) any General Unsecured Claim that has been filed in an amount that exceeds the amount for which the General Unsecured Claim is listed on the Schedules by $250,000 or more; (3) any General Unsecured Claim that is filed in an unliquidated amount where the Debtors reasonably believe that the General Unsecured Claim may be allowed in an amount exceeding $250,000 (General Unsecured Claims falling within (1), (2) or (3) of this Section shall be referred to as "Specified General Unsecured Claims").   Notwithstanding the foregoing, the Reorganized Debtors shall not be required to obtain the consent of the GUC Claims Ombudsman with respect to the ultimate allowance or disallowance, as the case may be, of Specified General Unsecured Claims. The Reorganized Debtors shall pay the reasonable documented fees and expenses of the GUC Claims Ombudsman in an amount not to exceed $5,000 per month until such time as no Specified General Unsecured Claims remain subject to the allowance process.

4.      **Estimation**

The Debtors (prior to the Effective Date) or the Reorganized Debtors (after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. Any Final Order of the Bankruptcy Court that estimates a Disputed Claim pursuant to the Plan shall irrevocably constitute and be a conclusive and final determination of the maximum allowable amount of Claim, should it become an Allowed Claim.  Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to the Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the Debtors or the Reorganized Debtors in the event the allowed amount of the

- 38 -

Claim of such Holder is at any time later determined to exceed the estimated maximum allowable amount.

## B.    Other Disallowance/Adjustment Provisions

### 1.    Late-Filed Claims

Except as otherwise agreed or ordered by the Bankruptcy Court, any and all proofs of Claim Filed after the applicable bar date shall not be treated as an Allowed Claim for purposes of Distributions without any further notice or action, and holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Effective Date the Bankruptcy Court has entered an order deeming such Claim to be timely Filed; *provided, however*, that such Claims shall be deemed Allowed (unless Disputed) after the payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Priority Non-Tax Claims, and all Allowed General Unsecured Claims.

### 2.    § 502(d) Disallowance

Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtors hold or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Entity have been turned over or paid to the Debtors.

### 3.    Adjustment Without Objection

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims register maintained by the Reorganized Debtors, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

## A.    Conditions Precedent to Confirmation

Confirmation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article IX.C of the Plan of the following:

1.    The Bankruptcy Court will have entered an order in form and in substance reasonably satisfactory to the Debtors, Plan Sponsors and DIP Agent, (i) approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and (ii) Confirming the Plan.

2.    The Plan and all schedules, documents, supplements and exhibits to the Plan will have been Filed in form and substance reasonably acceptable to the Debtors, Plan Sponsors, and DIP Agent.

**B.     Conditions Precedent to Consummation**

Consummation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article IX.C of the Plan of the following:

1.      The Confirmation Order shall have been entered and either (a) become a Final Order or (b) the 14-day stay contemplated by Bankruptcy Rule 3020(e) in respect thereof shall have been terminated unless waived by (i) the Debtors, Plan Sponsors and DIP Agent, in their reasonable judgment, and (c) the Confirmation Order shall otherwise be in a form and substance reasonably acceptable to the parties listed in foregoing clause (i), and no stay of the Confirmation Order will have been entered and be in effect.  The Confirmation Order will provide that, among other things, the Debtors and Reorganized Debtors are authorized to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

2.      The Bankruptcy Court will have entered one or more Final Orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtors as contemplated in the Plan and the Plan Supplement.

3.      All documents and agreements necessary to implement the Plan, including, without limitation, the Exit Facility Loan Agreement, will have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto.  All conditions precedent to such documents and agreements will have been satisfied or waived pursuant to the terms of such documents or agreements.

4.      All material consents, actions, documents, certificates and agreements necessary to implement the Plan will have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

5.      The Debtors will have received the Plan Sponsors' Consideration in Cash, in full.

6.      The aggregate amount of all Allowed Specified Administrative Claims does not exceed $16,000,000; and of such amount, (a) at least $9,100,000 (exclusive of Professional Fee Claims and deferred rent (as described in clause (a) of the Plan definition of "Specified Administrative Claims") shall be paid over time commencing no sooner than sixty (60) days following the Effective Date; and (b) the deferred rent shall be paid over time commencing no sooner than July 2019.

7.      The Debtors will have obtained voluntary reductions agreed to by the applicable lessors under the Debtors' non-residential real property leases, or reductions resulting from Debtors' store closings, of future rent obligations (from the Effective Date onward), of no less than $8,000,000 (or such other lesser amount as may be agreed upon by both of the Exit Facility Agent and the Plan Sponsors) on an annualized basis.

**C.     Waiver of Conditions**

The conditions to confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtors, with the consent of the Plan Sponsors and DIP

Agent, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## D.    Effect of Non-Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, the Plan Sponsors, the Committee, any Holders of Claims and Equity Interests, or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Plan Sponsors, any Holders of Claims and Equity Interests, or any other Entity in any respect.

## ARTICLE X.
## RELEASES, INJUNCTION AND RELATED PROVISIONS

## A.    General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.

As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments under the Plan will be settled, compromised, terminated and released pursuant to the Plan; provided, however, that nothing contained in the Plan will preclude any Person or Entity from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan; provided further that, notwithstanding any of the foregoing, any subordination agreements (if any) to which the Prepetition Subordinated Noteholders are party in favor of the Prepetition Agent shall apply to the Exit Facility (in accordance with such agreements' respective terms) on and after the Effective Date (except to the extent of any modifications mutually agreed upon prior to the Effective Date).

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Causes of Action against other Entities.

## B.    Debtor Release

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and Estates shall release each Released Party, and each Released Party is deemed released by the Debtors and Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies,**

and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or Estates would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Equity Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, transfer of any asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing Debtor Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that this release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtors or Estates asserting any Claim or Cause of Action released pursuant to the release.

## C.    Third Party Release

On and after and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, in its capacity as such: (a) each Holder of a Claim that votes to accept this Plan; (b) each Holder of a Claim that is not Impaired under this Plan; (c) each Holder of a Claim that is solicited to vote to accept or reject this Plan but that does not vote either to accept or reject the Plan; (d) each Holder of a Claim that votes to reject this Plan and does not elect on its ballot to opt out of granting the releases set forth in this Section; and (e) each of their respective Related Persons, shall release (the "Third Party Release") each Released Party, and each of the Debtors and Estates, and the Released Parties shall be deemed released from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, transfer of any asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any

**other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan. The foregoing release provided in this Section with respect to the Plan Sponsors and their Related Persons is, *inter alia*, in exchange for the payment by the Plan Sponsors of the Consideration under the Plan. The foregoing release provided in this Section with respect to the Holders of Prepetition Subordinated Notes and their Related Persons is, *inter alia*, in exchange for their agreement to extend the terms of such notes and for their Liens to be primed by the Liens granted to the Exit Facility Agent and Exit Lenders under the Exit Facility.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the releasing parties (described above) asserting any Claim or Cause of Action released pursuant to the Third Party Release.**

D.    **Discharge of Claims**

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtors or any of their assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

E.    **Exculpation**

**The Debtors, the Debtors' officers and directors that served during the Chapter 11 Cases,  the Committee, the Committee members, and each of their respective professionals retained during the Chapter 11 Cases (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or transfer of any of the Debtors' assets or the formulation, preparation, dissemination, implementation, confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; *provided, however,* that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by Final Order of a court of competent jurisdiction); *provided* that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if**

**any) under this Plan. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code. Except as specifically set forth in Section X.B above, no provision of this Plan shall be deemed to act to or release any claims, Causes of Action, Litigation Claims or rights, or liabilities that the Estates may have against any Entity or Person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of this Plan be deemed to act to release any Causes of Action Litigation Claims.**

**F.      Preservation of Rights of Action**

**1.      Maintenance of Causes of Action**

Except as otherwise provided in Article X or elsewhere in the Plan or the Confirmation Order, or in any order of the Court, after the Effective Date, the Reorganized Debtors will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action (excluding Avoidance Actions) and Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases. The Reorganized Debtors, as the successors in, interest to the Debtors and the Estates, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court. The Litigation Claims include, without limitation, the claims set forth in the Plan Supplement.

**2.      Preservation of All Causes of Action Not Expressly Settled or Released**

Unless a Cause of Action or Litigation Claim against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such Cause of Action or Litigation Claim for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, Causes of Action and Litigation Claims not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action or Litigation Claims upon or after the confirmation of the Plan or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action or Litigation Claims have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the Release contained in Article X of the Plan) or any other Final Order (including, without limitation, the Confirmation Order). In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. Notwithstanding the foregoing and any other provision in the Plan, any and all Avoidance Actions will be waived, released and relinquished by the Debtors and Estates as of the Effective Date.

**G.      Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY,

OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY
RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, OR
DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE
CONFIRMATION ORDER.  BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE
PLAN, EACH HOLDER OF A CLAIM OR EQUITY INTEREST WILL BE DEEMED TO
HAVE SPECIFICALLY CONSENTED TO THIS INJUNCTION.  ALL INJUNCTIONS OR
STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR 362 OF
THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE
CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE
EFFECTIVE DATE.

## H.    Special Provisions Related to Unexpired Leases of Non-Residential Real Property

With respect to any Unexpired Lease of non-residential real property, nothing in the Plan
or the Confirmation Order shall modify the Debtors' or Reorganized Debtors' obligation to pay:
(1) amounts owed under an assumed Unexpired Lease of non-residential real property that are
unbilled or not yet due as of the Confirmation Date, whether accruing prior to or after the
effective date of assumption of such Unexpired Leases, such as for common area maintenance,
insurance, taxes, and similar charges; and any regular or periodic ordinary course year-end
adjustments and reconciliations of such charges provided for under the terms of the Unexpired
Leases, whether accruing prior to or after the effective date of assumption of such unexpired
leases, as such charges become due in the ordinary course in accordance with the terms of the
Unexpired Leases; (2) any percentage rent that may come due under the assumed Unexpired
Lease of non-residential real property; (3) any other obligations, including indemnification
obligations (if any) that arise from third-party claims asserted with respect to or arising from the
Debtors' use and occupancy of the premises prior to the Effective Date for which the Debtors
had a duty to indemnify such landlord pursuant to any Unexpired Lease, or the Debtors' or
Reorganized Debtors' obligation to pay any postpetition expenses under such Unexpired Leases
as they come due under the Unexpired Leases; and (4) any unpaid cure amounts or post-
assumption obligations under the assumed Unexpired Lease of non-residential real property.

Further, notwithstanding any of the releases, discharges, injunctions or waivers set forth
in the Plan, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any
counterparty to an Unexpired Lease of non-residential real property to assert any right of setoff
or recoupment that such counterparties may have under applicable bankruptcy or non-bankruptcy
law, including, but not limited to, the ability, if any, of such counterparties to setoff or recoup a
security deposit held pursuant to the terms of their Unexpired Leases with the Debtors or the
Reorganized Debtors.

**ARTICLE XI.**
**BINDING NATURE OF PLAN**

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE,
THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF
CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, AND SUCH
HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT
PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH
HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN
PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN
THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE

PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

**ARTICLE XII.
RETENTION OF JURISDICTION**

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided, however*, that, from and after the Effective Date, the Reorganized Debtors shall pay Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.    resolve any matters related to the assumption or rejection of any Executory Contract or Unexpired Lease to which any Debtor is party or with respect to which any Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to this Plan after the Effective Date to add or remove Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.    resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

6.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, *provided* that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8.    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

9.    hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.     issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

11.     enforce the terms and conditions of this Plan and the Confirmation Order;

12.     resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, the Indemnification and other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13.     enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.     resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement (other than any matters arising after the Effective Date under, or directly with respect to, the Exit Facility Loan Agreement and Exit Facility Loan Documents, which matters shall be adjudicated in accordance with the terms of such documents); and

15.     enter an order concluding or closing the Chapter 11 Cases.

### ARTICLE XIII.
### MISCELLANEOUS PROVISIONS

A.     **Dissolution of the Committee**

On the Effective Date, the Committee (if any) and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases; provided, however, that following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: filing and prosecuting applications for (x) allowance of compensation for professional services rendered and reimbursement of expenses incurred; or (y) reimbursement of expenses of members of the Committee.

B.     **Payment of Statutory Fees**

All outstanding fees payable pursuant to section 1930 of title 28, United States Code shall be paid on the Effective Date.  All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as practicable.

C.     **Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in this Plan and the Plan Sponsors Investment Agreement:  (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order (subject to (i) the terms of the DIP Facility and (ii) the consent of the DIP Agent to the extent provided in the DIP Facility Loan Agreement and DIP Orders); and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or

remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of such Claim or Equity Interest of such Holder. Notwithstanding any of the foregoing, no material modifications may be made to the Plan by the Debtors without the Plan Sponsors' prior written consent.

## D.    Revocation of Plan

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## E.    Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.  The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

## F.    Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

## G.    Further Assurances

The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.  On or before the Effective Date, the Debtors shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## H.    Severability

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the

power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## I.    Service of Documents

All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**Debtors / Reorganized Debtors**
The Walking Company
25 W. Anapamu
Santa Barbara, CA 93101
Attn: Andrew Feshbach
andrewf@thewalkingcompany.com
Tel. 805-963-8727, Fax 805-962-9460

with copies to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, California 90067-4114
Attn: Jeffrey N. Pomerantz & Jeffrey W. Dulberg
jpomerantz@pszjlaw.com
jdulberg@pszjlaw.com
Tel. 310-277-6910, Fax 310-201-0760

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Attn: James E. O'Neill
joneill@pszjlaw.com
Tel. 302-652-4100, Fax 302-652-4400

**Plan Sponsors**
Fred Kayne
10776 Wilshire Blvd., #2202
Los Angeles, CA  90024
fred@fortunela.com
Tel. 310-559-0322

Richard Kayne
c/o Irell & Manella LLP
840 Newport Center Drive, Ste. 400
Newport Beach, CA 92660
Attn: Jeffrey M. Reisner
jreisner@irell.com
Tel. 949-760-0991, Fax: 949-760-5200

Andrew Feshbach
c/o The Walking Company
25 W. Anapamu St.
Santa Barbara, CA  93101
Tel. 805-963-8727

**Lender Agent**
Wells Fargo Bank, National Association
One Boston Place, 18th Floor
Boston, MA 02108
Attn: Y. Sonia Anandraj
Y.S.Anandraj@wellsfargo.com
Tel: 617-854-4353, Fax 855-842-6361

with a copy to:
c/o Choate Hall & Stewart LLP
Two International Place
Boston, MA 02110
Attn: Kevin Simard
ksimard@choate.com
Tel. 617-248-5000, Fax 617-248-4000

**Kayne Subordinated Noteholders**
Kayne Anderson Capital Advisors L.P.
1800 Avenue of the Stars
Third Floor
Los Angeles, CA 90067
Attn: Jeff Susskind
susskindj@gmail.com
Tel. 310-282-7900

with a copy to:
Irell & Manella LLP
840 Newport Center Drive, Ste. 400
Newport Beach, CA 92660
Attn: Jeffrey M. Reisner
jreisner@irell.com
Tel. 949-760-0991, Fax: 949-760-5200

**The Cotsen Foundation for the Art of Teaching**
Cotsen Foundation for the Art of Teaching
12100 Wilshire Blvd., #905
Los Angeles, CA  90025
Tel. 310-826-9113

**Robert Schnell, Trustee of Robert &**
**Renee Schnell Living Trust UAD 12/6/1991**
Robert Schnell
10291 Century Woods Dr.
Los Angeles, CA  90067
montecitobob@gmail.com
Tel. 310-720-1131

**J.      Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the
        Bankruptcy Code**

        To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy
Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax
or governmental assessment in the United States, and the Confirmation Order shall direct the
appropriate federal, state or local governmental officials or agents or taxing authority to forgo the
collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing
and recordation instruments or other documents pursuant to such transfers of property without
the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption
specifically applies, without limitation, to (i) all actions, agreements and documents necessary to
evidence and implement the provisions of and the distributions to be made under this Plan, (ii)
the issuance of the New Common Stock, New Preferred Stock, New Warrants, and Amended
Subordinated Notes, and (iii) any assignments executed in connection with any transaction
occurring under the Plan.

**K.      Governing Law**

        Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law
is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the
rights and obligations arising under this Plan shall be governed by, and construed and enforced in
accordance with, the laws of Delaware, without giving effect to the principles of conflicts of law
of such jurisdiction.

**L.      Tax Reporting and Compliance**

        The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an
expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the
Debtors are for all taxable periods ending after the Petition Date through, and including, the
Effective Date.

**M.      Post-Confirmation Reports**

        After the Effective Date, the Reorganized Debtors shall file post-confirmation status
reports (which will include, without limitation, specification of the amounts in any escrowed

accounts established pursuant to the Plan and of all distributions made on account of Administrative Claims and General Unsecured Claims) on a quarterly basis up to the entry of a final decree closing the Chapter 11 Cases or as otherwise ordered by the Court.

**N.**     **Schedules**

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated and are a part of this Plan as if set forth in full herein.

**O.**     **Conflicts**

In the event that a provision of the Disclosure Statement conflicts with a provision of this Plan, the terms of this Plan shall govern and control to the extent of such conflict.

**P.**     **Waiver of Fourteen-Day Stay**

The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

*[Remainder of Page Intentionally Left Blank]*

**Q.**    **Confirmation Request**

The Debtors request the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding any rejection of the Plan by an Impaired Class.

Dated:  April 20, 2018

                Respectfully submitted,

                THE WALKING COMPANY HOLDINGS, INC., on behalf of itself and its direct subsidiaries The Walking Company, Big Dog USA, Inc. and FootSmart, Inc.

                */s/  Andrew D. Feshbach*
                Name: Andrew D. Feshbach
                Title:  President and Chief Executive Officer

DOCS_LA:311994.22 91893/001