# EXHIBIT 3

## Equity Term Sheet

# EQUITY TERM SHEET

This term sheet (the "Term Sheet") dated March 4, 2018 summarizes the material terms and conditions of the agreement among Richard Kayne, Fred Kayne, Andrew Feshbach (collectively, the "Investors"), and The Walking Company Holdings, Inc. (the "Company") as to the Investors' commitment to provide capital to the Company. This Term Sheet is non-binding and the Investors will not be legally bound to such commitment unless and until the Investors and the Company execute a definitive agreement with respect thereto (an "Investment Agreement") and only to the extent provided therein.

| | |
|---|---|
| The Company: | The Walking Company Holdings, Inc. |
| Investors: | Richard Kayne, Fred Kayne and Andrew Feshbach or their respective affiliates or other designees |
| The Securities: | The Company will issue to the Investors newly issued common stock (the "Common Stock") and newly issued preferred stock (the "Preferred Stock," and collectively with the Common Stock, the "Securities"). |
| Total Capital Commitment | The total purchase price to be paid by the Investors to the Company for the Securities will be $10 million. Each Investor, severally and not jointly, and subject to the terms and conditions below, will commit to purchase the following amount of Securities (as to each Investor, the following is his "Pro Rata Share"): |

    Fred Kayne: $5 million (50%)

    Richard Kayne: $3.3 million (33%)

    Andrew Feshbach: $1.7 million (17%)

Provided, however, that if all of the conditions to such commitments are met, but Fred Kayne declines to fund all or any part of his Pro Rata Share by the Closing Date, Richard Kayne will commit to fund the resulting shortfall (the "Contingent Funding"). In that event, a proportionate share of the Securities that were to be issued to Fred Kayne shall be issued to Richard Kayne. So for example, if Fred Kayne funds only $3 million, Richard Kayne will fund the $2 million shortfall in addition to his $3.3 million commitment, for a total of

$5.3 million. Then in that instance, 53% of the Securities would be issued to Richard Kayne and 30% to Fred Kayne. Richard Kayne's maximum Contingent Funding commitment shall not exceed $5 million (for a maximum overall funding commitment of $8.3 million).

| | |
|---|---|
| Common Stock Purchase Price | The total purchase price for the Common Stock will be $500,000, allocated among the Investors in accordance with their Pro Rata Share (subject to the Contingent Funding): |

Fred Kayne shall pay $250,00 for 50%

Richard Kayne shall pay $165,000 for 33%

Andrew Feshbach shall pay $85,000 for 17%

| | |
|---|---|
| Preferred Stock Purchase Price | The total purchase price for the Preferred Stock will be $9.5 million, allocated among the Investors in accordance with their Pro Rata Share (subject to the Contingent Right): |

Fred Kayne shall pay $4,725,000 for 50%

Richard Kayne shall pay $3,135,000 for 33%

Andrew Feshbach shall pay $1,615,000 for 17%

| | |
|---|---|
| Conditions to the purchase and issuance of the Securities | The Company has provided the Investors with a Chapter 11 Plan of Reorganization (the "Plan") and Disclosure Statement in Support of Debtors' Joint Plan of Reorganization (the "Disclosure Statement"), copies of which are attached hereto as Exhibits A and B. The conditions to effectiveness of the Investment Agreement will be that the Bankruptcy Court confirms the Plan, the Plan becomes effective and that pursuant to the Plan: |

1. Wells Fargo Bank N.A. ("Wells Fargo") will provide exit financing on terms reasonably acceptable to the Investors.
2. The terms of the 8.375% Convertible Notes due 2019 (the "Notes") will be amended to (i) extend the Maturity Date three years (to March 31, 2022) and (ii) capitalize accrued interest.
3. The Company will have obtained concessions as to future

|  |  |
|---|---|
|  | rent obligations on leases at least $8 million on an annualized basis, through rent reductions and/or store closings. |
|  | 4. The Company's unsecured creditors (other than the landlords whose leases are assumed by the Company) will receive a total distribution on their claims not to exceed $2.2 million, and allowed administrative and priority claims shall not exceed an agreed upon amount. |
|  | 5. The Securities, when issued, shall constitute 100% of the voting and capital stock of Issuer (that is, all currently existing common stock of the Company shall be cancelled as part of the Plan). |
|  | 6. Andrew Feshbach will forgive the entire amount owed to him by the Company through the Closing Date under the Amended and Restated Royalty Agreement dated as to December 23, 2015, which is currently approximately $700,000, and expected to be approximately $800,000 by the Closing Date. |
| Common Stock | The Common Stock will be unregistered and will not have any registration rights. The Investors will enter into a Shareholder Agreement pursuant to which they will agree that the Company will not issue additional common stock or stock options of the Company other than: |
|  | 1. Common stock (or options to purchase common stock of the Company issued to Key Employees, not to exceed 10% of the outstanding common stock when measured in combination with the Common Stock issued to the Investors. The purchase price for the common stock issued to Key Employees will be the same as the purchase price being paid by the Investors for the Common Stock, which is a total of $50,000 for 10% of the common stock of the Issuer. |
|  | 2. Common stock issued pursuant to the exercise of the Warrants to be issued to the Noteholders, not to exceed 7.5% of the outstanding Common Stock when measured in combination with the Common Stock issued to the Investors and to Key Employees. The exercise price of the Warrants will be the same as the purchase price being paid by the Investors for the Common Stock, which is a total of $37,500 |

        for 7.5% of the stock of the Company.

3. Whether and to what extent stock issued to Key Employees and Noteholders has voting rights is to be agreed by the parties. The existing Shareholder Agreement to which the Investors and certain other shareholders are parties will be terminated and the Investors and holders of Warrants (Noteholders) will enter into a new Shareholder Agreement (the "New Shareholder Agreement"), and any Key Employees later receiving common stock or options will be required to subscribe to the New Shareholder Agreement. The New Shareholder Agreement also will provide for corporate governance and conditions for the transfer of shares.

| | |
|---|---|
| Preferred Stock: | |
| Dividends: | Cumulative, quarterly compounding, dividends at a rate of 6% per annum. Dividends will be payable quarterly in arrears commencing three months after the Effective Date of the Plan. The foregoing will be subject to such dividend limitations as may be imposed on the Company by Wells Fargo. |
| Ranking: | The Preferred Stock will be senior to all other classes and series of capital stock of the Company |
| Non-Voting: | The Preferred Stock shall be non-voting. |
| Special Consent Rights: | Without the prior written consent of a to be specified percentage of Preferred Stock, the Company may not take any of the following actions: (a) authorize or create a series or class of stock senior to or on a parity with the Preferred Stock; (b) increase or decrease the authorized number of shares of Preferred Stock, or alter the powers, preferences or rights of the Preferred Stock; (c) declare or pay any dividend or distribution on any common stock; (d) amend the charter documents of the Company; (e) take any other action which adversely affects the holders of the Preferred Stock disproportionately to the holders of the common stock; (f) take action over such other matters as are customary in transactions of this type; or (g) impair the rights of the holders of the Notes |

thereunder.

| | |
|---|---|
| Liquidation Preference: | In the event of any liquidation, dissolution or winding up of the Company (a sale, transfer or other disposition of all or substantially all of the assets of the Issuer, or an acquisition of control of the Company by another person or entity, whether by merger, consolidation, reorganization or similar transaction or otherwise, shall be treated as a liquidation for purposes of this provision), the holders of Preferred Stock will be entitled to receive in preference to the holders of Common Stock or any other junior stock of the Company an amount in cash equal to $9.5 million (the "Original Purchase Price"), plus cumulative but unpaid dividends. After payment to the Preferred Stock, the balance, if any, will be paid pro-rata to the holders of the common stock. |
| No Conversion Rights | The Preferred Stock shall be non-convertible. |
| No Registration Rights: | The Preferred Stock will not be registered and not have registration rights. |
| Legal Fees: | The Company will pay reasonable legal fees and expenses incurred by Investors associated with this Term Sheet, the Investment Agreement and the closing of the transactions contemplated hereby. |
| Covenants: | The Investment Agreement will contain usual and customary affirmative and negative covenants for transactions of this type. |
| Representations and Warranties: | The Investment Agreement will contain usual and customary representations and warranties for transactions of this type, including without limitation, corporate existence and good standing, corporate power and authority, due authorization, no conflict with material agreements, and enforceability. |

Governing Law:   Delaware

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS]*

DOCS_LA:312460.2 91893/001

IN WITNESS WHEREOF, the undersigned have executed this Term Sheet as of the date first above written.

**THE COMPANY:**

The Walking Company Holdings, Inc.

By: *[signature]*
Its: Anthony Wall, EVP & G C.

**THE INVESTORS:**

_____
Richard Kayne


_____
Fred Kayne

*[signature]*
_____
Andrew Feshbach

*[SIGNATURE PAGE TO EQUITY TERM SHEET]*

- 6 -

IN WITNESS WHEREOF, the undersigned have executed this Term Sheet as of the date first above written.

**THE COMPANY:**

**The Walking Company Holdings, Inc.**

By: _____
Its: _____

**THE INVESTORS:**

_____
Richard Kayne

_____
Fred Kayne

_____
Andrew Feshbach

*[SIGNATURE PAGE TO EQUITY TERM SHEET]*

IN WITNESS WHEREOF, the undersigned have executed this Term Sheet as of the date first above written.

**THE COMPANY:**

**The Walking Company Holdings, Inc.**

By: _____
Its: _____

**THE INVESTORS:**

_____
Richard Kayne

____*Fred Kayne*_____
Fred Kayne

_____
Andrew Feshbach

*[SIGNATURE PAGE TO EQUITY TERM SHEET]*

- 6 -