IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| The Walking Company Holdings, Inc., et. al,[1] | Case No. 18-10474 (LSS) (Jointly Administered) |
| Debtors. | Related Docket No. 257 |

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING DEBTORS' FIRST AMENDED JOINT PLAN
OF REORGANIZATION, AS MODIFIED

The Bankruptcy Court having considered the *Debtors' First Amended Joint Plan of Reorganization* filed on April 20, 2018 [Docket No. 257] (subject to the modifications approved by this Order, and together with the Plan Documents (as defined below) and the Plan Supplement,[2] as each document may be amended, supplemented or otherwise modified from time to time, the "Plan") filed by The Walking Company Holdings, Inc. and its debtor affiliates (collectively, the "Debtors" or, as applicable after the Effective Date, the "Reorganized Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"); and the Court having further considered the following in further support of confirmation of the Plan and entry of this Confirmation Order (this "Confirmation Order") (the following documents in clauses (i) through (viii), the "Confirmation Papers"):

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: The Walking Company Holdings, Inc. (8665); The Walking Company (2061); Big Dog USA, Inc. (5316); and FootSmart, Inc. (9736). The headquarters and service address for the above-captioned Debtors is 25 W. Anapamu, Santa Barbara, CA 93101.

[2] Capitalized terms not defined herein shall have the meanings set forth in the Plan.

(i)     *Memorandum of Law in Support of Confirmation of Debtors' Amended Joint Plan of Reorganization, and in Reply to Plan-Related Objections* [Docket No. 344] (the "Memorandum");

(ii)    *First Amended Disclosure Statement in Support of Debtors' First Amended Joint Plan of Reorganization* [Docket No. 240] (the "Disclosure Statement"), filed on April 17, 2018;

(iii)   *Order (I) Approving the Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; etc.* [Docket No. 256], entered on April 20, 2018 (the "Disclosure Statement Order");

(iv)    *Debtors' Notice of (I) Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto* [Docket No. 290], filed on May 11, 2018 (the "Cure Notice");

(v)     *Notice of Filing of Plan Supplement Documents Pursuant to Debtors' First Amended Joint Plan of Reorganization* [Docket No. 330], filed on June 1, 2018 (containing forms of those documents comprising the "Plan Supplement", as defined in the Plan);

(vi)    *Declaration of Anthony J. Wall, Executive Vice-President – Business Affairs, General Counsel, and Secretary of Debtors, in Support of Confirmation of Debtors' Amended Joint Plan of Reorganization* [Docket No. 343] (the "Wall Decl.");

(vii)   *Declaration of Douglas Stebbins of Consensus Advisory Services LLC in Support of Confirmation of Debtors' Amended Joint Plan of Reorganization* [Docket No. 342] (the "Consensus Decl.");

(viii)  *Certification of Andres A. Estrada With Respect to the Tabulation of Votes on the Debtors' First Amended Joint Plan of Reorganization* [Docket No. 341] (the "KCC Certification" and the voting report attached thereto, the "Voting Report"), attesting to and certifying the methods and results of the ballot tabulation for the Classes of Claims entitled to vote to accept or reject the Plan; and

(ix)    Affidavits of service with respect to the Solicitation Packages (as defined in the Disclosure Statement Order), Plan, Disclosure Statement, and Confirmation Hearing Notice (as defined in the Disclosure Statement Order) (including Nos. 263, 285, 303, 338 & 340) (the "Service Affidavits"); and

the Bankruptcy Court having: (i) held a hearing on June 12, 2018, at 10:00 a.m., prevailing

Eastern Time (the "Confirmation Hearing") to consider confirmation of the Plan, pursuant to

Bankruptcy Rule 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in

the Disclosure Statement Order; (ii) reviewed the Plan, Disclosure Statement, the Confirmation

Papers above, and all filed pleadings, exhibits, affidavits, hearing transcripts, documents, filings

and other evidence regarding confirmation of the Plan, including all objections, statements and

reservations of rights;  and (iii) heard the statements, oral representations and arguments made by

counsel in respect of confirmation of the Plan and the objections thereto;

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the

Confirmation Hearing and the opportunity for any party in interest to object to confirmation of

the Plan have been adequate and appropriate as to all parties affected or to be affected by the

Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the

documents filed in support of confirmation of the Plan and other evidence presented at the

Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation

thereon and good cause appearing therefor, it hereby is DETERMINED, FOUND, ADJUDGED,

DECREED, AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.  Petition Date. On March 6, 2018, each of the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code with this Court. The Debtors have continued in

the possession of their property and have continued to operate and manage their business as

---

[3] The determinations, findings, judgments, decrees, and orders set forth and incorporated in this Confirmation Order constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  No trustee or examiner

has been appointed in the Chapter 11 Cases.  On March 8, 2018, the Bankruptcy Court entered

an order authorizing the joint administration and procedural consolidation of the Chapter 11

Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 67].  On March 20, 2018, the Office of

the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official

committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the

"Committee").

B.    Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).  The

Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408

and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the

Bankruptcy Court may enter a final order consistent with Article III of the United States

Constitution.  The Bankruptcy Court has jurisdiction to determine whether the Plan complies

with the applicable provisions of the Bankruptcy Code and should be confirmed.

C.    [OMITTED]

**Filing of Disclosure Statement and Plan**

D.    First Amended Plan and Disclosure Statement.  On April 20, 2018, the Debtors

filed their First Amended Plan [Docket No. 257] and Disclosure Statement [Docket No. 258].

E.    Following a hearing on approval of the Disclosure Statement held on April 18,

2018, the Court entered the Disclosure Statement Order on April 20, 2018 [Docket No. 256],

among other things, approving the Disclosure Statement and solicitation and related procedures (the "Solicitation Procedures"), establishing April 18, 2018, as the record date pursuant to Bankruptcy Rule 3018(a) (the "Record Date"), and establishing procedures for the Debtors to notice, and counter parties to dispute, proposed cure amounts for Executory Contracts and Unexpired Leases to be assumed pursuant to confirmation of the Plan ("Cure Amounts").

F.    Additional Plan Modifications. This Confirmation Order sets forth certain non-material modifications and/or clarifications to the Plan, including, without limitation, paragraphs 9, 16, 18, 19,  20, 22, 34, 35, 36 and 37 hereof.  All such modifications since the entry of the Disclosure Statement Order are consistent with all of the provisions of the Bankruptcy Code, including sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code.  The modifications are not material to, and do not adversely affect the proposed treatment of any Holder of a Claim or Equity Interest.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.  The disclosure of such modifications on the record at or prior to the Confirmation Hearing constitutes due and sufficient notice of any and all such modifications.  No additional solicitation or disclosure is required on account of such modifications, and such modifications are deemed accepted by all Holders of Claims and Equity Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by such modifications. No Holder of a Claim shall be permitted to change its vote as a consequence of the modifications

unless otherwise agreed to by the Holder of the Claim and the Debtors and such change is

approved by the Bankruptcy Court in accordance with Bankruptcy Rule 3018(a).

## Plan Supplement

G.    The filing and notice of the Plan Supplement were appropriate and satisfactory

based upon the circumstances of the Chapter 11 Cases and in compliance with the provisions of

the Plan, the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and

applicable non-bankruptcy law, rules and regulations, and no other or further notice is or shall be

required.

H.    The Plan Supplement complies with the terms of the Plan.  All documents

included in the Plan Supplement are integral to, part of, and incorporated by reference into the

Plan.  Subject to the terms of the Plan and the terms of the Plan Supplement documents

themselves, the Debtors' right to alter, amend, update or modify any of the Plan Supplement

documents before the Effective Date is reserved.

## Solicitation of the Plan and Voting Results

I.    Transmittal of Solicitation Packages.  On April 25, 2018, as evidenced by the

Service Affidavits, the Debtors, through the Voting Agent, caused the applicable forms of ballots

in the forms attached to the Disclosure Statement Order (the "Ballots") and the Solicitation

Packages (as set forth in the Disclosure Statement Order) to be served and distributed as required

by the Disclosure Statement Order, Bankruptcy Code section 1125, Bankruptcy Rules 3017 and

3018, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Rules"), all other applicable provisions of the

Bankruptcy Code and the Bankruptcy Rules, and all other applicable rules, laws and regulations applicable to such solicitation. The Solicitation Packages were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for creditors to accept or reject the Plan. The transmittal of the Solicitation Packages and Ballots was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

J.    Mailing of Notices. The Debtors, through the Voting Agent and as evidenced by the Service Affidavits, caused (a) the Confirmation Hearing Notice (as defined in the Disclosure Statement Order) to be served on April 25, 2018 on all known creditors, equity holders, and parties in interest, the Office of the United States Trustee, the Securities and Exchange Commission, the Internal Revenue Service and those parties that requested notice pursuant to Bankruptcy Rule 2002, (b) the Non-Voting Class Notice (as defined in the Disclosure Statement Order) to be served on April 25, 2018 on all holders of Claims or Equity Interests in the non-voting Classes, (c) the Cure Notice to be served on May 11, 2018 on all applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed pursuant to confirmation of the Plan, and (d) the Plan Supplement listing the Executory Contracts and Unexpired Leases to be rejected pursuant to confirmation of the Plan to be served on June 1, 2018 on the applicable counterparties. As described herein and as evidenced by the Service Affidavits, adequate and sufficient notice of the Confirmation Hearing was provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation) have been provided due, proper, timely, and adequate notice and

have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

K.    Solicitation. Votes on the Plan were solicited in good faith and in compliance with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, the Local Rules, all other applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and all other applicable rules, laws, and regulations applicable to such solicitation. Pursuant to the Solicitation Procedures as approved by the Disclosure Statement Order, the Debtors transmitted the Solicitation Packages to those Holders of Claims and Equity Interests entitled to vote on the Plan as of the Record Date.

L.    Voting. On June 7, 2018, the Voting Agent filed the KCC Certification. The Voting Report provides complete transparency as to the voting and tabulation procedures, reflects compliance by the Debtors, in reaching the determinations reflected therein, with the requirements of Bankruptcy Code §§ 1126(c) and (d) and Bankruptcy Rule 3018(a) and (c), and indicates that Classes 4A, 4B, 4C, 4D, 5A, 5B, and 5D each voted to accept the Plan. No member of Class 5C (Big Dog USA, Inc. – General Unsecured Claims), the only other voting Class, voted for or against the Plan. Accordingly and as set forth below, the Debtors' Plan is confirmable for each of the Debtors and all creditor elections made on their ballots that were dependent on class voting are permitted.

### Confirmation

M.    Bankruptcy Rule 3016. The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

N.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan

complies with all applicable provisions of the Bankruptcy Code as required by Bankruptcy Code

§ 1129(a)(l), including Bankruptcy Code §§ 1122 and 1123.

(i)    Bankruptcy Code § 1122 – Proper Classification.  The Plan properly

classifies claims and equity interests in satisfaction of Bankruptcy Code § 1122.  Article III of

the Plan sets forth, with respect to Parent, seven classes of claims and one class of interests: (i)

Priority Non-Tax Claims; (ii) Prepetition Secured Loan Agreement Claims; (iii) Other Secured

Claims; (iv) Prepetition Subordinated Notes Claims; (v) General Unsecured Claims; (vi)

Intercompany Claims; (vii) Other Subordinated Claims; and (viii) Parent Equity Interests; and

with respect to each Subsidiary, seven classes of claims and one class of interests: (i) Priority

Non-Tax Claims; (ii) Prepetition Secured Loan Agreement Claims; (ii) Other Secured Claims;

(iv) Prepetition Subordinated Notes Claims; (v) General Unsecured Claims; (vi) Intercompany

Claims; (vii) Other Subordinated Claims; and (viii) Equity Interests in the Subsidiaries.  Valid

reasons exist for separately classifying the various Classes of Claims and Equity Interests created

under the Plan, and, accordingly, the Plan properly classifies claims and equity interests,

satisfying the requirements of Bankruptcy Code § 1122.

(ii)    Bankruptcy Code § 1123(a)(1) - Designation of Classes of Non-Priority

Claims and Equity Interests.  Article III of the Plan satisfies Bankruptcy Code § 1123(a)(1) by

designating classes of Claims and Equity Interests, and by not classifying Administrative Claims

or Priority Tax Claims (entitled to priority under Bankruptcy Code § 507(a)(8)).  Article II of the

Plan separately specifies the statutorily required treatment for Administrative Claims and Priority Tax Claims.

      (iii)    Bankruptcy Code § 1123(a)(2) and (3) – Specified Classes of Unimpaired and Treatment of Impaired Claims and Equity Interests. Article III of the Plan satisfies Bankruptcy Code § 1123(a)(2) and (3) by specifying that Classes 1A-1D, 2A-2D, 3A-3D, and 9B-9D are Unimpaired and specifying the treatment of the Impaired Claims and Equity Interests in Classes 4A-4D, 5A-5D, 6A-6D, 7A-7D, and 8A.

      (iv)    Bankruptcy Code § 1123(a)(4) – No Discrimination. Article III of the Plan satisfies Bankruptcy Code § 1123(a)(4) by providing identical treatment for all Holders of Claims or Interests within each Class unless a holder of a claim or interest in that class agrees or agreed to less favorable treatment for such claim.

      (v)    Bankruptcy Code § 1123(a)(5) – Adequate Means for Plan Implementation. The Plan satisfies Bankruptcy Code § 1123(a)(5) by setting forth the means of its implementation in, among other provisions, Articles V, VI, VII and VIII of the Plan, as well as in the various documents set forth in the Plan Supplement.

      (vi)    Bankruptcy Code § 1123(a)(6) – Non-Voting Equity Securities. Article V.B.1 of the Plan expressly provides for compliance with such section, if and to the extent applicable, thereby satisfying Bankruptcy Code § 1123(a)(6).

      (vii)    Bankruptcy Code § 1123(a)(7) – Directors and Officers. The Debtors have properly and adequately disclosed the identity and affiliations of all individuals proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors, as set

forth in Article V.B.2 of the Plan, in the Plan Supplement, the Memorandum, and on the record

at the Confirmation Hearing, thereby satisfying Bankruptcy Code § 1123(a)(7). The

identification, appointment, employment, or manner of selection of such individuals or entities

and the proposed compensation and indemnification arrangements for officers and directors are

consistent with the interests of Holders of Claims and Equity Interests and with public policy.

(viii)    Bankruptcy Code § 1123(b)(1)-(2) – Claims and Executory Contracts.

The Plan is consistent with Bankruptcy Code § 1123(b)(1) because, under Article III of the Plan,

Classes 1A-1D, 2A-2D, 3A-3D, and 9B-9D are Unimpaired and treated as required under the

Bankruptcy Code while Classes 4A-4D, 5A-5D, 6A-6D, 7A-7D, and 8A are Impaired based on

the Plan's modification of the rights of the Holders of Claims and Equity Interests within such

Classes. The Plan also is consistent with Bankruptcy Code § 1123(b)(2) because Article VI.A. of

the Plan provides for the assumption of all Executory Contracts and Unexpired Leases except for

those Executory Contracts (including, without limitation, employment agreements) and

Unexpired Leases that: (i) have been rejected by order of the Bankruptcy Court; (ii) are the

subject of a motion to reject pending on the Confirmation Date; (iii) are identified in the Plan

Supplement as to be rejected; or (iv) are rejected pursuant to the terms of the Plan; provided

further that, pursuant to Article VI.B of the Plan, subject to Paragraph 26 of this Order, if an

objection to assumption or cure amount is sustained by the Bankruptcy Court (for the avoidance

of doubt, irrespective of timing, including after the Effective Date), the Reorganized Debtors in

their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of

assuming it.

(ix)    Bankruptcy Code § 1123(b)(3) – Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action. This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the release, exculpation, and injunction provisions set forth in Article X of the Plan. The Plan is consistent with Bankruptcy Code § 1123(b)(3) because the Plan's discretionary provisions, including certain release and exculpation provisions (as modified as set forth herein), are appropriate and consistent with the applicable provisions of chapter 11. For the reasons set forth in the Memorandum and herein, the releases by the Debtors pursuant to Art. X.B of the Plan and the Third Party Release provided pursuant to Art. X.C of the Plan (subject to the modifications set forth below) comply with applicable law, are fair and reasonable, are integral to the Plan, and are necessary and appropriate under the circumstances of the Chapter 11 Cases.

O.    Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code (including §§ 1125 and 1126), the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Disclosure Statement Order, and other orders of this Court, thereby satisfying Bankruptcy Code § 1129(a)(2). Additionally, the Debtors are proper debtors under Bankruptcy Code § 109.

P.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan has been proposed in good faith and not by any means forbidden by law, and thereby complies with Bankruptcy Code § 1129(a)(3). The Plan is the result of extensive, good faith, arm's-length negotiations between the Debtors, the Committee, and the Prepetition Subordinated Noteholders, bears the support of all impaired voting creditor classes (other than Class 5C which submitted no

ballot on the Plan), and implements a result that is in keeping with (and, indeed, central to) the goals of the Bankruptcy Code. Reorganized entities will emerge from bankruptcy pursuant to the Plan, which successful reorganization will maximize the values available for all creditors. The Plan contains only provisions that are consistent with the Bankruptcy Code.

Q.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). As further set forth in Article II.A of the Plan, any payment made or to be made by the Debtors under the Plan for services or for costs and expenses of the Debtors' and Committee's professionals in connection with the Chapter 11 Cases is subject to the approval of the Court as reasonable, or has already been approved by prior Court order, thereby satisfying Bankruptcy Code § 1129(a)(4), as applicable.

R.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). As noted above, the Debtors have provided pertinent information in satisfaction of section 1129(a)(5). The proposed directors and officers are qualified, and the appointments to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of the Holders of Claims and Equity Interests and with public policy, thereby satisfying section 1129(a)(5), and no party in interest has objected to the Plan on these grounds.

S.    No Rate Changes (11 U.S.C. § 1129(a)(6)). Bankruptcy Code section 1129(a)(6) is inapplicable in these cases.

T.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The "best interests of creditors" test of Bankruptcy Code 1129(a)(7) is satisfied as to all Holders of Claims and Equity Interests in Impaired Classes under the Plan because each such Holder of a Claim or Equity

Interest is projected and estimated to receive or retain under the Plan a distribution of not less than the distribution that such Holder is projected and estimated to receive if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code. Because the non-accepting Holders would not receive any greater recovery in a chapter 7 liquidation than under the Plan, the Plan satisfies the "best interests" of creditors test.

U.    Acceptance by All Impaired Classes (11 U.S.C. § 1129(a)(8)). As reflected in the Voting Report and based on votes tabulated in accordance with Bankruptcy Code § 1126(c) and (d) and Bankruptcy Rule 3018(a) and (c), the Plan has been accepted by Classes 4A, 4B, 4C, 4D, 5A, 5B, and 5D, each of which was impaired under the Plan. However, no member of impaired Class 5C (Big Dog USA, Inc. – General Unsecured Claims) voted on the Plan. The Plan, therefore, does not satisfy the requirement of Bankruptcy Code § 1129(a)(8) because at least one Impaired Class has not voted to accept the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies Bankruptcy Code §§ 1129(a)(10) and 1129(b).

V.    Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)). The Plan satisfies Bankruptcy Code § 1129(a)(9) because Article II of the Plan provides that: (a) any unpaid Administrative Claims (as to which Bankruptcy Code § 1129(a)(9)(A) applies), if or once Allowed, will be paid in full on the Effective Date or as soon as practicable thereafter as provided for under the Plan, unless the Holder has agreed to less favorable treatment (*see* Plan Art. II.A); (b) Allowed Non-Priority Tax Claims will receive treatment consistent with that permissible under Bankruptcy Code § 1129(a)(9)(B) (*see* Plan Art. III.B.1 and C.1); and (c) Allowed Priority Tax Claims will receive treatment mirroring that permissible under Bankruptcy

Code § 1129(a)(9)(C) (*see* Plan Art. II.C). Further, any unpaid DIP Facility Claims will be paid

and satisfied in full in Cash on the Effective Date (*see* Plan Art. II.B).

    W.    Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).

The voting members of impaired Classes 4A, 4B, 4C, 4D, 5A, 5B, and 5D, exclusive of any

claims of Insiders (as defined in the Bankruptcy Code), have voted in favor of the Plan.

Accordingly, the Bankruptcy Code section 1129(a)(10) has been satisfied.

    X.    Feasibility of the Plan (11 U.S.C. § 1129(a)(11)). The Plan satisfies the feasibility

requirement of Bankruptcy Code § 1129(a)(11) because, as illustrated by the financial

projections attached to the Disclosure Statement as Exhibit C and the Wall Decl., with the

sufficient funding available pursuant to the Exit Facility and the Consideration to be provided by

the Plan Sponsors, the Reorganized Debtors will have sufficient cash flow and cash on hand to

make all payments required pursuant to the Plan while conducting ongoing business operations.

Confirmation and Consummation is, therefore, not likely to be followed by the liquidation or

further reorganization of the Reorganized Debtors.

    Y.    Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)). Article XIII.B of the

Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a). The

Plan, therefore, satisfies the requirements of Bankruptcy Code § 1129(a)(12).

    Z.    Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors do not owe any retiree

benefits, and thus, Bankruptcy Code § 1129(a)(13) is inapplicable.

    AA.    "Cram Down" Requirements — Section 1129(b). The Plan satisfies the

requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Classes

5C, 6A-6D, 7A-7D, and 8A are deemed to reject the Plan (the "Rejecting Classes"), the Plan

may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code given that Classes 4A,

4B, 4C, 4D, 5A, 5B, and 5D have voted to accept the Plan. With respect to Classes 6A, 6B, 6C

and 6D (Intercompany Claims), the holders of those Claims – the Debtors – have proposed and

support the Plan and consent to the Plan treatment accorded to their Intercompany Claims. With

respect to Classes 7A, 7B, 7C, and 7D (Other Subordinated Claims), there are no creditors in

these Classes. With respect to each of Class 5C (Big Dog – General Unsecured Claims) and

Class 8A (Equity Interests in Parent), first, all of the requirements of section 1129(a) of the

Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and

equitable with respect to Class 5C and Class 8A. The Plan has been proposed in good faith, is

reasonable and meets the requirements that no Holder of any Claim or Equity Interest (as

applicable) that is junior to Class 5C or Class 8A will receive any property under the Plan on

account of such junior Claim or Equity Interest (as applicable). No Holder of a Claim in a Class

equal to Class 5C is receiving more favorable treatment than Class 5C. No Holder of an Equity

Interest in a Class equal to Class 8A is receiving more favorable treatment than Class 8A.

Accordingly, the Plan is fair and equitable towards all members of Class 5C and Class 8A.

Third, the Plan does not discriminate unfairly with respect to Class 5C or Class 8A because

similarly situated creditors and interestholders (as applicable) will receive substantially similar

treatment on account of their Claims and Equity Interests (as applicable) irrespective of Class.

Based on the foregoing and the reasons set forth in the Memorandum, notwithstanding the

deemed rejection of the Plan by Classes 5C, 6A-6D, 7A-7D, and 8A, the Plan may be confirmed pursuant to the cramdown requirements of Section 1129(b).

BB. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The Plan satisfies the requirements of Bankruptcy Code § 1129(d) because it reflects a consensual and comprehensive financing, restructuring, and recapitalization plan to be implemented through the Chapter 11 Cases, with the support of the Committee and the Debtors' key secured creditors. The principal purpose of the Plan is therefore not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting such avoidance.

CC. <u>Burden of Proof and Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Debtors, as proponents of the Plan, have met their burden of proving the elements of Bankruptcy Code § 1129 by a preponderance of the evidence.

### ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1. <u>Confirmation</u>. The Plan, including all exhibits, and each of the documents comprising the Plan Supplement, each as may be amended, modified or supplemented from time to time after the date hereof in accordance with, and subject to the approvals and consents set forth in the Plan, are approved in their entirety and confirmed under section 1129 of the Bankruptcy Code, subject to certain Plan modifications provided herein (the "<u>Plan Modifications</u>"). A copy of the confirmed Plan is attached hereto as **<u>Exhibit A</u>**. The Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate

the contracts, instruments, releases, and other agreements or documents created in connection

with the Plan, including entry into any agreements contained in the Plan Supplement.

2.    Objections.  All objections and all reservations of rights pertaining to

Confirmation that have not been withdrawn, waived, or settled (including any informal

objections) are overruled on the merits.

3.    Omission of Reference to Particular Plan Provisions.  The failure to specifically

describe or include any particular provision of the Plan in this Confirmation Order shall not

diminish or impair the effectiveness of such provision, it being the intent of this Bankruptcy

Court that the Plan, including all exhibits, and each of the documents comprising the Plan

Supplement, each as may be amended, modified or supplemented from time to time after the date

hereof in accordance with, and subject to the approvals and consents set forth in the Plan, be

approved and confirmed in its entirety.

4.    Classifications.  The classification of Claims and Equity Interests for purposes of

distributions made under the Plan shall be governed solely by the terms of the Plan.

5.    Vesting of Assets in the Reorganized Debtors.  Except as otherwise provided in

the Plan or herein, on or after the Effective Date, all property and assets of the Estates (including,

without limitation, Causes of Action) and any property and assets acquired by the Debtors

pursuant to the Plan will vest in the Reorganized Debtors, free and clear of all Liens, Claims,

charges or other encumbrances except for the Permitted Liens.  Except as may be otherwise

provided in the Plan, on and after the Effective Date, the Reorganized Debtors may operate their

businesses and may use, acquire or dispose of property and compromise or settle any Claims and

Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Reorganized Debtors will pay the charges that they incur after the Effective Date for any professionals' and advisors' fees, disbursements, expenses or related support services in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

      6.    Corporate Action. Each of the Debtors and the Reorganized Debtors, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval, execution, or authorization by the security holders, officers or directors of the Debtors or the Reorganized Debtors and as applicable or by any other Person (except for those expressly required pursuant to the Plan). Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors or members of any Debtor (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any

requirement of further action by the stockholders, directors, managers or partners of such

Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

      7.    Secured Exit Facility. The Debtors or Reorganized Debtors, as the case may be,

are hereby authorized to enter into the Exit Facility, the terms of which are set forth in the Exit

Facility Loan Documents, on or before the Effective Date. The Exit Facility and the Exit Facility

Loan Documents, as applicable, and all transactions contemplated thereby, and all actions to be

taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in

connection therewith are hereby approved and authorized. The Reorganized Debtors are

authorized to enter into and execute the Exit Facility Loan Documents and such other

agreements, securities, instruments and documents as may be required to effectuate the treatment

afforded by the Exit Facility, without further notice or order of the Court, act or action under

applicable law, regulation, order or rule or vote, consent, authorization, or approval of any

person. The Debtors and Reorganized Debtors are authorized to execute and deliver and incur

and perform their obligations under the Exit Facility Loan Documents. In connection therewith,

the Reorganized Debtors are authorized to: (i) immediately pay as and when required all fees,

expenses, and indemnities required to be paid under the Exit Facility Loan Documents; (ii)

immediately pay the DIP Facility Claim in full in Cash from the proceeds of the Exit Facility;

and (iii) immediately pay as and when required all amounts owing under any payoff letter with

respect to the DIP Facility. The agreements, documents, securities and instruments entered into

in connection with the Exit Facility constitute legal, valid and binding obligations of the Debtors

and the Reorganized Debtors. On the Effective Date, all of the Liens and security interests to be

granted in accordance with the Exit Facility Loan Documents (a) shall be deemed to be granted in good faith, for legitimate business purposes, and for reasonably equivalent value, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Loan Documents, and (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Loan Documents. The Reorganized Debtors and Exit Facility Agent (i) are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any other such filings, recordings, approvals, and consents shall not be required), and (ii) will thereafter cooperate to make all other filings and recordings in accordance with the Exit Facility Loan Documents to give notice of such liens and security interests to third parties.

8.    _Amended Subordinated Notes_. On the Effective Date, (i) the Prepetition Subordinated Notes will be amended and restated by the Amended Subordinated Notes and (ii) any and all other agreements, instruments and documents relating to the Prepetition Subordinated Notes (including, without limitation, any guaranties, security agreements and other collateral security documents and intercreditor agreements) will be amended, restated, supplemented or otherwise modified to be consistent with the Plan and the Amended Subordinated Notes. The

aggregate principal amount of the Amended Subordinated Notes, deemed Allowed as of the

Effective Date, will be (i) $11,883,504.54 (which amount is the aggregate unpaid principal

balance of the Prepetition Subordinated Notes as of the Petition Date) plus (ii) the aggregate

amount of all accrued and unpaid interest on the aggregate principal balance of the Prepetition

Subordinated Notes and all reasonable fees (including prepetition interest and fees) and costs

incurred by and due and payable to the Prepetition Subordinated Noteholders under the

Prepetition Subordinated Notes and the DIP Orders as of the Effective Date (which aggregate

amount is to be added to the aggregate unpaid principal balance of the Prepetition Subordinated

Notes set forth in clause (i) as of the Effective Date) (provided, however, the foregoing

capitalization of reasonable fees shall be only to the extent that such fees are not paid prior to or

on the Effective Date in accordance with the DIP Orders).  The Debtors or Reorganized Debtors,

as the case may be, are hereby authorized to execute the Amended Subordinated Notes, and enter

into and execute all other related agreements, instruments and documents (including, without

limitation, any guaranties, security agreements, intercreditor agreements and other documents),

and take any and all actions necessary, desirable or appropriate in connection with the Amended

Subordinated Notes, without further notice or order of the Court.  The Reorganized Debtors are

authorized to deliver and incur and perform their obligations under the Amended Subordinated

Notes and all such other agreements, instruments and documents.  Each of the Amended

Subordinated Notes and such other agreements, instruments and documents constitute the legal,

valid and binding obligations of the Debtors or the Reorganized Debtors, as applicable,

regardless of whether or not such Amended Subordinated Notes or other agreements, instruments

or documents have been signed or consented to by the counterparties thereto or beneficiaries thereof. On the Effective Date, all of the Liens and security interests previously granted in favor of the Prepetition Subordinated Noteholders, and granted or to be granted in accordance with the Amended Subordinated Notes, including, without limitation, the "Amended and Restated Security Agreement" corresponding to each of the Amended Subordinated Notes, (a) shall be deemed to be granted in good faith, for legitimate business purposes, and for reasonably equivalent value, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder, and (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Amended Subordinated Notes. The Reorganized Debtors and the Holders of the Amended Subordinated Notes (and/or any agents thereof) (i) are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, maintain, continue and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any other filings, recordings, approvals, and consents shall not be required), and (ii) will thereafter cooperate at their sole cost and expense to make all other filings and recordings in accordance with the Amended Subordinated Notes to give notice of such liens and security interests to third parties.

9.    Funding of the Consideration.  Prior to or on the Effective Date, subject to the satisfaction of the conditions to closing set forth in the Plan Sponsors Investment Agreement, the Plan Sponsors shall provide the Consideration to the Reorganized Debtors pursuant to the Plan and Plan Sponsors Investment Agreement, in consideration of the Plan Sponsors' purchase of their respective shares of the New Common Stock and New Preferred Stock.  Notwithstanding any provision in the Plan, in accordance with the Plan Sponsors Investment Agreement, (i) Mr. Richard Kayne will contribute $9,690,000 (95% of the total Consideration) and will receive 484,500 shares of the New Common Stock (95%) for a $484,500 purchase price and 950 shares of New Preferred Stock (95%) for a $9,205,500 purchase price, and (ii) Mr. Andrew Feshbach will contribute $510,000 (5% of the total Consideration) and will receive 25,500 shares of New Common Stock (5%) for a $25,500 purchase price and 50 shares of New Preferred Stock for a $484,500 purchase price.  For the avoidance of doubt, as set forth in the form of Plan Sponsors Investment Agreement provided as part of the Plan Supplement, the Plan Sponsors Investment Agreement will provide for an extinguishment, release and waiver by Andrew Feshbach of any and all debts and obligations owed to him by the Parent through December 31, 2017 (not the Effective Date) under the Amended and Restated Royalty Agreement dated as to December 23, 2015, and the obligations of the Plan Sponsors to provide the Consideration to the Reorganized Debtors and to consummate the transactions specified in the Plan Sponsors Investment Agreement shall be subject to satisfaction of the conditions to closing specified therein.

10.    New Common Stock.  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Parent is authorized to, and will, distribute to the Plan Sponsors their

respective shares of New Common Stock in accordance with the Plan and Plan Sponsors Investment Agreement.

11.    New Preferred Stock.  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Parent is authorized to, and will, distribute to the Plan Sponsors their respective shares of New Preferred Stock in accordance with the Plan and Plan Sponsors Investment Agreement.

12.    New Warrants.  The Reorganized Parent is authorized to, and will, issue the New Warrants to the Prepetition Subordinated Noteholders on a pro rata basis, in accordance with the Plan, the Amended Subordinated Notes, and the form of warrant agreement Filed as part of the Plan Supplement.

13.    Section 1145 Exemption.  To the extent that the offer and issuance of the New Warrants, the shares of New Common Stock issuable upon exercise of the New Warrants and, to the extent that any offer or issuance of new securities may be involved in connection therewith, the Amended Subordinated Notes, may be otherwise subject to the registration requirements of the Securities Act or similar state securities laws, such instruments issued pursuant to the Plan shall be effected without registration under Section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon the exemption from such registration requirements afforded by section 1145 of the Bankruptcy Code.

14.    Release of Liens.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with

the Plan, subject to paragraph 34 below, on the Effective Date, all Liens, Claims, Equity

Interests, mortgages, deeds of trust, or other security interests against the property of the Estates

will be fully released, terminated, extinguished and discharged, in each case without further

notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order,

or rule or the vote, consent, authorization or approval of any Entity except for the Permitted

Liens.  Any Entity holding such released and terminated Liens or Equity Interests will, pursuant

to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized

Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable

form) as may be reasonably requested by the Reorganized Debtors.

### Claim Objections/Disallowance & Distributions

15.    Provisions Governing Distributions.  The distribution provisions of Article VII of

the Plan are approved in their entirety.  Except as otherwise set forth in the Plan, the Reorganized

Debtors or the Distribution Agent shall make all distributions required under the Plan.

16.    Claims Objection Deadline.  For the avoidance of doubt, the Claims Objection

Deadline (as defined in the Plan) applies to all Claims including Administrative Claims, other

than Professional Fee Claims, that have not been Allowed as of the Effective Date.

17.    Participation of GUC Claims Ombudsman. The appointment of the GUC Claims

Ombudsman as disclosed in the Plan Supplement is hereby approved.  The GUC Claims

Ombudsman shall have those powers and duties as set forth in the Plan.

18.    Simon Lien.  As of the Effective Date, any and all putative Liens or other security

interests asserted by Simon Property Group, L.P. ("Simon") against any property of the Estates

(including any equipment, furniture, furnishings, appliances, goods, trade fixtures, inventory, chattels and personal property of the Debtors located on the premises leased to the Debtors by Simon) will be fully released, terminated, and extinguished, without need of further notice, an order of the Bankruptcy Court, other act or action under applicable law, regulation, order, or rule, or any consent, authorization, or approval of any Entity.

19.    Galleria Lien. As of the Effective Date, any and all putative Liens or other security interests asserted by Galleria Mall Investors LP ("Galleria") against any property of the Estates (including any equipment, furniture, furnishings, appliances, goods, trade fixtures, inventory, chattels and personal property of the Debtors located on the premises leased to the Debtors by the Galleria) will be fully released, terminated, and extinguished, without need of further notice, an order of the Bankruptcy Court, other act or action under applicable law, regulation, order, or rule, or any consent, authorization, or approval of any Entity.

20.    Distribution Record Date. For the avoidance of doubt, the Distribution Record Date shall be the Confirmation Date.

## Settlement, Release, Injunctions and Related Provisions

21.        Compromise and Settlement. Pursuant to section 1123 of the Bankruptcy Code, and in accordance with the factors set forth in *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930 (Bankr. W.D.Mo.1994), the Debtors' release of claims against the Released Parties  constitutes a good faith compromise and settlement and is in the best interests of the Debtors and their estates. The Debtors' release satisfies the *Master Mortgage* factors: (1) the Plan Sponsors, the Prepetition Subordinated Noteholders, the Prepetition Agent, the Prepetition

Secured Lenders, the DIP Agent, the DIP Lenders, and their respective Related Persons made substantial contributions to the Debtors' reorganization, including, without limitation, the provision of the Contribution and other concessions in the case of the Plan Sponsors, the significant concessions made by the Prepetition Subordinated Noteholders including the extension of the maturity date of the Prepetition Subordinated Notes, and other contributions identified in the Memorandum; (2) the Debtors' release is essential to the Debtors' reorganization in that certain of the Released Parties have insisted on such release in exchange for their contributions and assistance in implementing or facilitating the Plan and contemplated transactions and restructuring thereunder, in order to, inter alia, ensure that the Reorganized Debtors do not become embroiled in litigation that could occur if the release were not given and that the time, attention and resources of the Reorganized Debtors do not otherwise become diverted away from the reorganized business; (3) a substantial majority of creditors support the Debtors' release as evidenced by the assenting vote of all impaired classes entitled to vote on the Plan (other than Class 5C which cast no ballots on the Plan); (4) there is an identity of interest between the Debtors and the Released Parties based on their common goals of confirming the Plan and having the Debtors' reorganization thereunder succeed; and (4) the Plan provides for payment of all administrative, priority and secured claimants (as applicable) and of a substantial recovery for general unsecured creditors who would otherwise likely not receive any value from the Estates. The compromises and settlements embodied in the Plan, including any releases and exculpations provided in connection therewith and approved herein, are (i) in the best interests of the Debtors, their estates and all Holders of Claims and Equity Interests, (ii) fair, equitable and

within the range of reasonableness, (iii) made in good faith and (iv) hereby approved pursuant to section 363 of the Bankruptcy Code.

22.    <u>Releases, Injunction and Related Provisions</u>.  The following provisions set forth in Article X of the Plan and related Article I.B (definitions 118 & 120), as modified as set forth below and as described in the Memorandum, and subject to paragraph 34 below, are hereby approved and authorized in their entirety:

(i)    "<u>Related Persons</u>" means, with respect to any Person, such Person's successors, assigns and each of their respective current officers, directors, principals, employees, shareholders, members (including *ex officio* members), general partners, limited partners, agents, managers, managing members, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity.

(ii)    "<u>Released Parties</u>" means collectively, each in its capacity as such:  (a) the Debtors; (b) the Plan Sponsors; (c) the Prepetition Subordinated Noteholders; (d) the Prepetition Agent; (e) the Prepetition Secured Lenders; (f) the DIP Agent; (g) the DIP Lenders; and/or (h) the Related Persons of each of (a) through (g) of the foregoing.

(iii)    **Exculpation.  The Debtors, the Debtors' officers and directors that served during the Chapter 11 Cases,  the Committee, the Committee members, and each of their respective professionals retained during the Chapter 11 Cases (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in**

connection with or related to the Chapter 11 Cases, the sale or transfer of any of the

Debtors' assets or the formulation, preparation, dissemination, implementation,

confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement

created or entered into in connection with the Plan; *provided, however*, that this limitation

will not affect or modify the obligations created under the Plan, or the rights of any Holder

of an Allowed Claim to enforce its rights under the Plan, and shall not release any action

(or inaction) constituting willful misconduct, fraud, or gross negligence (in each case

subject to determination of such by Final Order of a court of competent jurisdiction);

*provided* that any Exculpated Party shall be entitled to reasonably rely upon the advice of

counsel with respect to its duties and responsibilities (if any) under the Plan. Without

limiting the generality of the foregoing, each Exculpated Party shall be entitled to and

granted the protections of Section 1125(e) of the Bankruptcy Code. Except as specifically

set forth in the Plan, no provision of the Plan shall be deemed to act to or release any

claims, Causes of Action, Litigation Claims or rights, or liabilities that the Estates may

have against any Entity or Person for any act, omission, or failure to act that occurred

prior to the Petition Date, nor shall any provision of the Plan be deemed to act to release

any Causes of Action or Litigation Claims, except for Avoidance Actions, which shall be

waived, released and discharged by the Debtors, the Reorganized Debtors and the Estates

as of the Effective Date.

(iv)    Debtor Release. Pursuant to section 1123(b) of the Bankruptcy Code,

and except as otherwise specifically provided in the Plan, for good and valuable

consideration, on and after and subject to the occurrence of the Effective Date, the Debtors

and Estates shall release each Released Party, and each Released Party is deemed released

by the Debtors and Estates from any and all claims, obligations, rights, suits, damages,

Causes of Action, remedies, and liabilities whatsoever, including any derivative claims,

asserted or assertable on behalf of any of the Debtors or Estates, as applicable, whether

known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued,

matured or unmatured, determined or determinable, disputed or undisputed, liquidated or

unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or

otherwise, that the Debtors or Estates would have been legally entitled to assert in its own

right, or on behalf of the Holder of any Claim or Equity Interest or other entity, based on

or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors'

restructuring, the Chapter 11 Cases, the purchase, sale, transfer of any asset, right, or

interest of the Debtors, the subject matter of, or the transactions or events giving rise to,

any Claim or Equity Interest that is treated in the Plan, the business or contractual

arrangements between any Debtor and any Released Party, the restructuring of Claims

prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the

Plan or related agreements, instruments, or other documents, any other act or omission,

transaction, agreement, event, or other occurrence taking place on and before the Petition

Date, other than claims or liabilities arising out of or relating to any act or omission of a

Released Party that constitutes fraud, willful misconduct, or gross negligence; provided,

that the foregoing Debtor Release shall not operate to waive or release any obligations of

any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtors.  Further, entry of the Confirmation Order constitutes the Bankruptcy Court's approval of the foregoing release, which such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtors or Estates asserting any Claim or Cause of Action released pursuant to the release.  Further, more specifically, the Debtor Release provided in this Section with respect to the Plan Sponsors and their Related Persons is, *inter alia*, in exchange for the payment by the Plan Sponsors of the Consideration under the Plan, and the Debtor Release provided with respect to the Holders of Prepetition Subordinated Notes and their Related Persons is, *inter alia*, in exchange for their agreement to extend the terms of such notes and for their Liens to be primed by the Liens granted to the Exit Facility Agent and Exit Lenders under the Exit Facility.

(v)     Third Party Release.  On and after and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, in its capacity as such: (a) each Holder of a Claim that votes to accept this Plan; (b) each Holder of a Claim that is not Impaired under this Plan; (c) each Holder of a Claim that is solicited to vote to accept or reject this Plan but that does not vote either to accept or reject the Plan and does not elect on its ballot to opt out of granting the releases set forth in this Section; (d) each Holder of a

Claim that votes to reject this Plan and does not elect on its ballot to opt out of granting the releases set forth in this Section; and (e) each of their respective Related Persons, shall release (the "Third Party Release") each Released Party, and each of the Debtors and Estates, and the Released Parties shall be deemed released from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, transfer of any asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date and relating to the Debtors, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross

negligence. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan. The foregoing release provided in this Section with respect to the Plan Sponsors and their Related Persons is, *inter alia*, in exchange for the payment by the Plan Sponsors of the Consideration under the Plan. The foregoing release provided in this Section with respect to the Holders of Prepetition Subordinated Notes and their Related Persons is, *inter alia*, in exchange for their agreement to extend the terms of such notes and for their Liens to be primed by the Liens granted to the Exit Facility Agent and Exit Lenders under the Exit Facility. Notwithstanding the foregoing, if a Holder of a Claim submits a ballot which does not contain a vote either to accept or reject the Plan but otherwise elects on its ballot to opt out of granting the releases set forth in this Section, the Holder of a Claim shall not be deemed to have provided the releases set forth in this Section. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) fair, equitable, and reasonable; (b) given and made after due notice and opportunity for hearing; and (c) a bar to any of the releasing parties (described above) asserting any Claim or Cause of Action released pursuant to the Third Party Release.

(vi)    Injunctions. Except as otherwise provided in the Plan, including but not limited to Article X.H of the Plan, from and after the Effective Date, all entities are

**permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, or creating, perfecting or enforcing any lien of any kind, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, exculpated or to be exculpated, or discharged or to be discharged pursuant to the Plan or the Confirmation Order. In addition, by accepting distributions pursuant to the Plan, each Holder of a Claim or Equity Interest will be deemed to have specifically consented to this injunction. All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.**

23.     <u>Discharge of the Debtors and Termination of Equity Interests</u>.  Except as otherwise provided in the Plan and effective as of the Effective Date:  (i) the rights afforded in the Plan and Confirmation Order and the treatment of all Claims and Equity Interests will be in exchange for and in complete satisfaction, settlement, and discharge of the Debtors from any liability on account of all Claims and Equity Interests of any nature whatsoever, including (except in the case of postpetition interest comprising part of the Prepetition Secured Loan Agreement Claim or the DIP Facility Claim or unpaid interest, fees and expenses of the Prepetition Subordinated Noteholders) any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (ii) the Plan will bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject the Plan or voted to reject the Plan; (iii) all Claims and

Equity Interests will be satisfied and the Debtors will be discharged therefrom in full, and the Debtors' liability with respect thereto will be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (iv) all Entities will be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Equity Interests based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. For the avoidance of doubt, on the Effective Date, all stock, instruments, certificates, agreements and other documents evidencing or relating to the Equity Interests of the Parent extinguished as of the Effective Date (including, without limitation, the 2013 Shareholders' Agreement) will be cancelled, terminated, and extinguished, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or any requirement of further action, vote or other approval or authorization by any Person.

24.    <u>Preservation or Waiver of Causes of Action</u>. Except as otherwise provided in the Plan or this Confirmation Order, the provisions set forth in Article X.F of the Plan regarding the preservation of rights of action are approved in their entirety. Consistent therewith, any and all Avoidance Actions will be waived, released and relinquished by the Debtors, the Reorganized Debtors, and Estates as of the Effective Date.

### Executory Contracts and Leases

25.    <u>Treatment of Executory Contracts and Unexpired Leases</u>. The Executory Contract and Unexpired Lease provisions of Article VI of the Plan are approved in their entirety.

26.    <u>Assumption/Rejection of Contracts and Leases</u>. On the Effective Date, all

Executory Contracts and Unexpired Leases of the Debtors (including, without limitation, the

Executory Contracts and Unexpired Leases identified in the Cure Notice, subject to the Debtors'

and Reorganized Debtors' reservation of rights described in paragraph N(viii) of this Order and

Article VI.B of the Plan) will be deemed assumed in accordance with, and subject to, the

provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those

Executory Contracts (including, without limitation, employment agreements) and Unexpired

Leases that: (i) have been rejected by order of the Bankruptcy Court; (ii) are the subject of a

motion to reject pending on the Confirmation Date; (iii) are identified in the Plan Supplement as

to be rejected; or (iv) are rejected pursuant to the terms of the Plan; provided, however, that (a)

with respect to the leases identified in the cure objections filed by Macerich et al. [D.I. 320]

(collectively, "<u>Macerich</u>"), such leases may not be rejected subsequent to entry of this Order and

(b) with respect to the leases identified in the cure objections filed by Macerich and Westfield,

any dispute concerning cure amounts with respect to such leases shall be considered at a hearing

to be held on June 27, 2018 at 11:00 a.m. (Eastern) in Courtroom No. 2, located at 824 North

Market Street, 6th Floor, Wilmington, Delaware 19801. The Plan Supplement constituted

sufficient notice of the rejection of the Unexpired Leases and Executory Contracts listed in the

Plan Supplement to be rejected.

27.    <u>Cure Amount</u>. Except as otherwise set forth in this Confirmation Order or

otherwise determined by the Court, as to any assumed Executory Contracts or Unexpired Leases,

except as the Debtors and counterparty to the Executory Contract or Unexpired Lease may

otherwise agree, the cure amount set forth in the Cure Notice mailed to the applicable

counterparties to Executory Contracts and Unexpired Leases shall be binding upon the applicable

non-Debtor counterparty and the Debtors, and said counterparty is enjoined and barred from

seeking any additional amount on the account of the Debtors' cure obligations under section 365

of the Bankruptcy Code or otherwise from the Debtors, their estates, or the Reorganized Debtors.

<b><u>Bar Dates, Fees and Expenses</u></b>

28.    <u>Administrative Claims Bar Date</u>.  Except as otherwise provided herein or in the

Article II.A of the Plan, all requests for payment of Administrative Claims other than 503(b)(9)

Claims[4] and Professional Fee Claims shall be filed no later than 45 days after the Effective Date.

**Holders of Administrative Claims that are required to File and serve a request for payment**

**of such Administrative Claims that do not file and serve such a request by the applicable**

**Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from**

**asserting such Administrative Claims against the Debtors, the Reorganized Debtors, or**

**their property.**

29.    <u>Final Fee Applications</u>.  All final requests for Professional Fee Claims shall be

filed no later than 45 days after the Effective Date.  Objections to any Professional Fee Claim

must be Filed and served on the Reorganized Debtors and the requesting party by 30 days after

the Filing of the applicable request for payment of the Professional Fee Claim.  Each Holder of

an Allowed Professional Fee Claim will be paid by the Reorganized Debtors in Cash from the

---

[4]  For the avoidance of doubt, the bar date applicable to 503(b)(9) Claims was the General Claims Bar
Date pursuant to the Bar Date Order.

Professional Fee Claims Reserve, after entry of the order approving such Allowed Professional Fee Claim.

30.    Dissolution of Creditors' Committee; Termination of Creditors' Committee Professionals.  On the Effective Date, the Committee will be dissolved, all members of the Committee shall be discharged of their obligations as members of the Committee, and the engagement of each Professional retained by the Committee shall be terminated without further order of the Court or act of the parties; provided, however, that such Professionals shall be entitled to prosecute their respective Professional Fee Claims and represent their respective constituents with respect to applications for payment of Professional Fee Claims.

31.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.  All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to Confirmation of the Plan must be Filed with the Bankruptcy Court within 30 days after the Effective Date, or (if later and applicable) 30 days after the date of the surrender of the leased real property to the affected lessor.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within the applicable Rejection Claims Bar Date will forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property.**

32.    Statutory Fees.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due (without the necessity of the United States Trustee filing a proof of Claim or obtaining a Bankruptcy Court allowing such amounts).  All outstanding fees payable

pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date. All such fees payable after the

Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon

thereafter as practicable.

33.    <u>Exemption from Certain Transfer Taxes and Fees</u>. To the extent permitted by

applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property

pursuant to the Plan and Confirmation Order shall not be subject to any Stamp or Similar Tax or

governmental assessment in the United States, and this Confirmation Order directs the

appropriate federal, state or local governmental officials or agents or taxing authority to forgo the

collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing

and recordation instruments or other documents pursuant to such transfers of property without

the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption

specifically applies, without limitation, to (i) all actions, agreements and documents necessary to

evidence and implement the provisions of and the distributions to be made under the Plan, (ii)

the issuance of the New Common Stock, New Preferred Stock, New Warrants, and Amended

Subordinated Notes, and (iii) any assignments executed in connection with any transaction

occurring under the Plan.

**<u>Miscellaneous Other Provisions</u>**

34.    <u>SEC Exclusion from Releases</u>. Notwithstanding any language to the contrary

contained in this Order, the Plan, and/or the Disclosure Statement (the "<u>Plan Documents</u>"), no

provision shall release any non-debtor, including any current and/or former officer and/or

director of the Debtors and/or any non-debtor person or entity referred to in the Plan Documents,

from liability to the United States Securities and Exchange Commission, in connection with any legal action or claim brought by such governmental unit against such person and/or entity.

35.    Maricopa County Treasurer Claim. For the avoidance of doubt, notwithstanding any other provision herein or in the Plan, the asserted Claims of the Maricopa County Treasurer ("MCT") for tax year 2018 (as asserted in Proof of Claim No. 188) will be treated as Secured Claims, with interest thereon to accrue at the applicable statutory rate if said Secured Claims are not paid prior to delinquency under state law, and the putative liens against the Debtors' property securing the Secured Claims will not be discharged and released until the applicable year 2018 taxes and any interest thereon are paid, pursuant to applicable state law. The Debtors reserve all rights with respect to objecting to any and all of MCT's claims.

36.    Undeliverable Mail. The Voting Agent shall file a Declaration identifying (a) each Holder of an Impaired Claim to whom a Solicitation Package (as defined in the Disclosure Statement Order) was not transmitted because prior post-petition mailings to such Holder were returned as undeliverable, and (b) each Holder of an Impaired Claim whose Solicitation Package was returned as undeliverable.

37.    IRS Matters. Notwithstanding any provision to the contrary in the Plan, this Order or any implementing Plan documents (collectively, "Documents"):

As to the United States of America, its agencies, departments, or agents (collectively, the "United States"), the discharge, release and injunction provisions contained in the Documents are not intended and shall not be construed to bar the United States from pursuing any police or regulatory action. Nothing in the Documents shall discharge, release, impair or

otherwise preclude: (1) any liability to the United States that is not a "claim" within the meaning

of section 101(5) of the Bankruptcy Code; (2) any claim of the United States arising on or after

the Confirmation Date; (3) any rights of setoff or recoupment of the United States against any of

the Debtors or Reorganized Debtors; or (4) any liability of the Debtors or Reorganized Debtors

under police or regulatory statutes or regulations to any Governmental Unit (as defined by

section 101(27) of the Bankruptcy Code) as the owner, lessor, lessee or operator of property or

rights to property that such entity owns, operates or leases after the Confirmation Date.  Nor shall

anything in the Documents:  (a) enjoin or otherwise bar the United States or any Governmental

Unit from asserting or enforcing any liability described in the preceding sentence; or (b) divest

any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by

the United States or any Governmental Unit are discharged or otherwise barred by the

Documents or the Bankruptcy Code.  Nothing in the Documents shall: (i) release, enjoin or

exculpate any non-debtor from any liability to the United States, including, but not limited to,

any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal

laws, nor shall anything in the Documents enjoin the United States from bringing any claim, suit,

action or other proceeding against any non-debtors for any liability whatsoever; (ii) require the

United States to file an administrative claim in order to receive payment for any liability

described in section 503(b)(1)(B) and (C) of the Bankruptcy Code; (iii) be construed as a

compromise or settlement of any claim, cause of action or interest of the United States; (iv)

require the United States to obtain Bankruptcy Court approval prior to amending any pre-petition

or post-petition claim; (v) allow the Debtors or the Reorganized Debtors to assume, assign or

otherwise transfer any contract, lease or other interest of the United States without first complying with applicable non-bankruptcy law; (vi) discharge any debt described in section 1141(d)(6) of the Bankruptcy Code; (vii) limit the rights of the United States with respect to section 502(j) of the Bankruptcy Code; or (viii) be construed as precluding claims filed by the Governmental Bar Date from being included in the definition of Allowed Claim in Article.I.B.6 of the Plan.  Administrative expense claims of the United States shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.

To the extent the Priority Tax Claims of the United States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622.  Moreover, nothing shall effect a release, discharge or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the United States for any liability arising (a) out of pre-petition or post-petition tax periods for which a required return has not been filed or (b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Further, nothing shall enjoin the United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability (a) arising out of pre-petition or post-petition tax periods for which a required tax return has not been filed or (b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Any liability arising (a) out of pre-petition or post-petition tax periods for which a required return has not been filed or

(b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with sections 1129(a)(9)(A) and (C) of the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Reorganized Debtors, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under Section 505 of the Bankruptcy Code.

38.    _Binding Effect_.  Upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, and any and all holders of Claims or Equity Interests (irrespective of whether their Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan (including, without limitation, the Plan Sponsors), the Exit Facility Agent and Exit Lenders, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

39.    _Notices of Confirmation and Effective Date_.  The Debtors shall serve a combined notice of entry of this Confirmation Order and notice of the Effective Date in accordance with Bankruptcy Rules 2002 and 3020(c) on all creditors, equity holders, and parties having requested

notice in the Chapter 11 Cases within five calendar days after the Effective Date.

Notwithstanding the above, no notice of Confirmation or Effective Date or service of any kind

shall be required to be mailed or made upon any party to whom the Debtors mailed notice of the

Confirmation Hearing, but received such notice returned marked "undeliverable as addressed,"

"moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the

Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's

new address.  The above-referenced notices are adequate under the particular circumstances of

the Chapter 11 Cases and no other or further notice is necessary.

40.     <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any Entity

named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir,

executor, administrator, successor or assign, Affiliate, officer, director, agent, representative,

attorney, beneficiaries, or guardian, if any, of each Entity.

41.     [OMITTED]

42.     <u>Plan and Confirmation Order Mutually Dependent</u>.  This Order shall constitute a

judicial determination and shall provide that each term and provision of the Plan is:  (a) valid and

enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified

without the Debtors' consent; and (c) nonseverable and mutually dependent.

43.     [OMITTED]

44.     [OMITTED]

45.     [OMITTED]

46.    _Recording._  The Debtors and Reorganized Debtors are authorized to deliver a

notice or short form of this Order, with the Plan attached, to any state or local recording officer,

for filing such documents or instruments without charging any stamp tax or other similar tax.

Such notice (a) shall have the effect of an order of this Court, (b) shall constitute sufficient notice

of the entry of this Order to such filing and recording officers, and (c) shall be a recordable

instrument notwithstanding any contrary provision of non-bankruptcy law.

47.    _Controlling Document._  Without intending to modify any prior order of this Court

(or any agreement, instrument, or document addressed by any prior order), in the event of an

inconsistency between the Plan, on the one hand, and any other agreement, instrument, or

document intended to implement the provisions of the Plan, on the other, the provisions of the

Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or

document); _provided, further,_ that, for the avoidance of doubt, in the event of any inconsistency

between the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order

shall govern.


Dated:  June 13, 2018
        Wilmington, Delaware

                                        _/s/ Laurie Selber Silverstein_
                                        The Honorable Laurie Silverstein
                                        United States Bankruptcy Judge