**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re:* | : | Chapter 11 |
| | : | |
| THE WALKING COMPANY HOLDINGS, | : | Case No.  18-10474 (LSS) |
| INC., *et al.,* | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: 7/24/18 at 2:00 p.m.** |
| | : | **Objections Due: 7/17/18 at 4:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO REORGANIZED DEBTORS'
MOTION FOR ENTRY OF ORDER AND FINAL DECREE CLOSING CERTAIN OF
THE CHAPTER 11 CASES, WAIVING REQUIREMENTS OF FURTHER POST-
CONFIRMATION REPORTING IN CHAPTER 11 CASES TO BE CLOSED AND
<u>REQUEST FOR CHANGE IN CAPTION (D.I. 380)</u>**

Andrew R. Vara, Acting United States Trustee for Region 3 ("U.S. Trustee"), through his

counsel, files this Objection to the Reorganized Debtors' Motion for Entry of an Order and Final

Decree Closing Certain of the Chapter 11 Cases, Waiving Requirements of Further Post-

Confirmation Reporting in Chapter 11 Cases to Be Closed and Request for Change in Caption

(the "Motion") (D.I. 380).  In support his Objection, the U.S. Trustee states as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.      The Court should deny approval of the Motion for several reasons:

(a)      The Motion is premature.  The Reorganized Debtors' ("Debtors") plan has

not been fully administered as a number of critical tasks remain to be completed before

any of the cases may be closed.  These tasks include claim objections, final professional

fee applications and resolution of fees payable to the United States Trustee, where the

Debtors have understated their disbursements in previously filed monthly operating

reports ("MORs") and underpaid fees due under 28 U.S.C. Section 1930 (a)(6).

(b)      The Debtors seek to effect a form of substantive consolidation of these

cases, contrary to the terms of their confirmed plan and contrary to Bankruptcy Code

Section 1127(b), proposing to collapse four separate cases into the guise of a single bankruptcy case, without the filing of post-confirmation reports or payment of corresponding United States Trustee fees under 28 U.S.C. Section 1930(a)(6) for the three Debtors whose cases will continue to be administered despite their fictitious closing.

(c)    The Motion purports to seek *nunc pro tunc* relief from the Debtors' obligations to file MORs and quarterly post-confirmation reports for the three cases the Debtors seek to close.

## JURISDICTION AND STANDING

2.    Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.    In furtherance of his case supervisory responsibilities, as well as pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to raise and be heard on this Objection.

4.    Pursuant to Local Rule 9013-1(h), the U.S. Trustee consents to the entry of a final order by this Court in connection with the Settlement Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2

## STATEMENT OF FACTS

5.      On March 6, 2018, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").

6.      The United States Trustee appointed an official committee of unsecured creditors ("Committee") on March 20, 2018.

7.      On June 13, 2018, the Court entered its findings of Fact, Conclusions of Law and Order Confirming the Debtors' Joint Plan of Reorganization, As Modified ("Confirmation Order," D.I. 359). The Debtors' Plan of Reorganization ("Plan," Exhibit A to the Confirmation Order) expressly provides that "there will be no substantive consolidation of the Chapter 11 Cases and the Estates for distribution, voting, or any other purposes under the Bankruptcy Code."  Plan, Article V, Section B.

8.      On June 29, 2018, the Debtors filed a Notice of Effective Date (D.I. 379) declaring that the Effective Date of the Plan was June 29, 2018.  In the Motion, the Debtors declare that the Plan was substantially consummated on the Effective Date.  Motion, ¶ 4.

9.      On July 3, 2018, only four days after the Effective Date, the Debtors filed the Motion, seeking:

(a)      Closure of the cases of the three "operating company" Debtors, The Walking Company ("TWC"), FootSmart, Inc. ("FootSmart"), and Big Dog USA, Inc. ("Big Dog") as "fully administered," leaving open only the case of the "holding company" Debtor, The Walking Company Holdings, Inc. ("Holdings");

(b)      Consolidation of all remaining matters in the administration of the TWC, FootSmart, and Big Dog cases into the Holdings case for disposition;

(c)      Waiver of the requirement of any further post-confirmation reporting in

3

the TWC, FootSmart, and Big Dog cases, including waiver of the Final Reports required

by Local Rule 3022-1(c); and

        (d)     A change of caption removing references to the TWC, FootSmart and Big

Dog cases.

        10.     The Motion states that the following matters (collectively, "Pending Matters")

remain pending:

        (a)     Amended Objection of Centennial Real Estate Company, Deutsche Assets
and Wealth Management, WBCMT 2017-C33 Independence Center LLC, Paseo Nuevo
Owner LLC, DDR Deer Park Town Center LLC, Starwood Retain Partners LLC, and
Forbes Company and the Macerich Company to Debtors' Notice of (I) Assumption of
Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto;
and

        (b)     Claim review and Objection.

The Motion further states that other than the two Pending Matters and "except for review of

pending proofs of claim, all claims and controversies in these cases have been resolved"

(Motion, ¶¶ 5-6), *i.e.*. that the cases have been fully administered.

        11.     The Plan requires the filing of final applications for professional fees

("Professional Fee Claims") no later than 45 days after the Effective Date (August 13, 2018), and

the filing of objections thereto within 30 days after the filing of the applicable Professional Fee

Claim. (Plan, Article I B (113); Article II A).  As of July 16, 2018, no Professional Fee Claims

have been filed and no hearing has been scheduled to consider them.

        12.     The Plan provides for payment of General Unsecured Claims in Classes 5A

through 5D *pro rata*, from $2.55 million of cash from the Debtors' operations, to be deposited

into a GUC Fund escrow account as follows: $500,000 by August 1, 2018; $500,000 by

September 3, 2018; $800,000 by October 1, 2018; and $750,000 by November 1, 2018.  Plan,

Article V, Section E3(A).  Holdings has consistently stated that it has no operations and makes

only *de minimis* (if any) disbursements, and it therefore appears that the $2.55 million must be paid entirely by TWC, FootSmart, and Big Dog. Neither the Notice of Effective Date nor the Motion indicate that the Debtors have commenced (let alone completed), payments into the GUC Fund escrow account.

13.    The Plan further provides for payment of allowed Section 503(b)(9) claims by deposits into an escrow account of cash from the Debtors' operations in an amount equal to the Debtors' good faith estimate of the total amount of such claims in equal installments due on August 1, September 3, October 1 and November 1, 2018. Plan, Article V, Section E3(B). Again, because Holdings states that it has no operations and makes only *de minimis* (if any) disbursements, it appears that the 503(b)(9) escrow account deposits must be funded entirely by TWC, FootSmart, and Big Dog. Neither the Notice of Effective Date nor the Motion indicate that the Debtors have commenced (let alone completed) payments into the Section 503(b)(9) escrow account.

14.    The most recent claims register filed by Claims and Noticing Agent Kurtzman Carson Consultants LLC on July 12, 2018 (D.I. 392) indicates that a total of 372 proofs of claim have been filed against all four debtors, as follows: Holdings, 157 claims;[1] TWC, 191 claims; FootSmart, 6 claims; and Big Dog, 17 claims. The claims register indicates that several claims may be amendments of filed claims. To date, the Debtors have filed no claim objections and, as they admit in the Motion, review of and objection to proofs of claim are "Pending Matters" that remain to be completed.

---

[1] The Claims register reflects that one claim against Holdings was withdrawn. According to the Debtors' declaration in support of first-day motions, Holdings is a holding company whose activities are limited to ownership of the stock in the three subsidiary Debtors and ownership of intellectual property used by TWC and FootSmart. Some of the claims filed against Holdings may have been filed simply because Holdings is the "lead" debtor in these cases, and such claims may be subject to re-characterization as claims against TWC, FootSmart and/or Big Dog.

15.    The Debtors acknowledge that a purpose of the Motion is to relieve the proposed "Closing Debtors" (TWC, FootSmart, and Big Dog) of the burden of payment of further administration fees and filing of further post-confirmation reports.  Indeed, they propose to collapse administration of the Chapter 11 cases of TWC, FootSmart and Big Dog – the operating companies whose collective quarterly U.S. Trustee fees under 11 U.S.C. Section 1930(a)(6) exceed $260,000 – into the case of Holdings, the financially inactive holding company whose quarterly U.S. Trustee fees are only $325.  This fee reduction would occur while TWC, FootSmart and Big Dog continue to receive the benefit of having their cases administered in this Court.

16.    Moreover, the Motion expressly requests a waiver of post-confirmation reporting in the cases of the proposed Closing Debtors:

> [T]he requirement of further post-confirmation reporting in the Closed Cases should be waived.  No beneficial purpose would be served by further reporting in those cases.  The last activity in those cases was set forth in the most recently filed post-confirmation report and no further activity will occur in the Closed Cases.

Motion, ¶ 19.  The request is confusing; as of July 16, 2018, the Debtors have not yet filed MORs for June 2018 (they are due to be filed by July 20) and have not filed any post-confirmation reports.  Moreover, all three of the proposed Closing Debtors have been conducting uninterrupted business activity after the May 31, 2018 closing date of their May 2018 MORs, including after the Effective Date. Thus, the Motion appears not only to be seeking relief from the proposed Closing Debtors' reporting obligations (as well as their corresponding quarterly U.S. Trustee fee obligations), but also to be seeking such relief *nunc pro tunc* to May 31, 2018.

17.    The Debtors' disbursements as self-reported in their MORs, and the corresponding quarterly U.S. Trustee fees pursuant to 28 U.S.C. Section 1930(a)(6), are subject to audit and adjustment.

6

(a)     Holdings' MOR for March 2018 indicates that Holdings had no receipts and no disbursements in that month; its Attestations of Inactivity in lieu of MORs for April and May 2018 state that Holdings is a holding company for TWC, FootSmart and Big Dog, that it has no other activity, and that its disbursements for the quarter do not exceed $15,000.   Holdings' U.S. Trustee fees under 28 U.S.C. Section 1930(a)(6) for the first calendar quarter of 2018 were $325 and are trending to $325 for the second quarter.

(b)     TWC's MOR for March 2018 reports disbursements in excess of $17.7 million and U.S. Trustee fees of $177,702.72 for the first quarter.  TWC's March MOR understates disbursements by reporting $14.48 million of acknowledged revolving line of credit payments as transfers to other debtor-in-possession accounts instead of disbursements.[2]  TWC's actual U.S. Trustee fee payable for the first quarter is the statutory maximum of $250,000.

(c)     TWC's April and May 2018 MORs disclose combined disbursements in excess of $33 million and U.S. Trustee fees of $250,000 for the second quarter.  TWC's April and May 2018 MORs also report $69.9 million of transfers to other debtor-in-possession accounts that appear to be line of credit payments and should be recorded as disbursements, regardless of whether they affect TWC's U.S. Trustee fees.

(d)     FootSmart's MOR for March 2018 discloses disbursements of less than $75,000 and U.S. Trustee fees of $650 for the first quarter.  However, FootSmart's March

---

[2] The Debtors' motion for authority to maintain their existing bank accounts and continue their existing cash management system ("Cash Management Motion," D.I. 12) explains that funds from retail sales are deposited into the Debtors' restricted accounts at Wells Fargo, and from there "withdrawn daily by Wells Fargo to pay down the Credit Facility."  *See, e.g.,* Cash Management Motion ¶ 16 and Exhibit B.  During the term of a line of credit, the borrower engages in a series of borrowing transactions which are repaid by sweeps of its restricted accounts.  The revolving nature of a line of credit account results in a disbursement each time the lender sweeps funds to pay down the revolving line. *In re Fabricators Supply Co.*, 292 B.R. 531, 534 (Bankr. D. N.J. 2003)

2018 MOR understates actual disbursements by reporting $842,000 of revolving line of credit payments as transfers to other debtor-in-possession accounts instead of disbursements.  FootSmart's actual first quarter U.S. Trustee fee payable is $4,875.

(e)    FootSmart's April and May 2018 MORs disclose combined disbursements in excess of $144,000 and second quarter fees trending to $1,625.  However, FootSmart's April and May 2018 MORs also report $2.331 million of what appear to be line of credit payments that should be recorded as disbursements, as transfers to other debtor-in-possession accounts.  If those "transfers" were in fact disbursements, FootSmart's second quarter U.S. Trustee fees will be at least $9,750 before accounting for June 2018 disbursements.

(f)    Big Dog's MOR for March 2018 discloses disbursements in excess of $141,000 and fees of $975 for the first quarter.  However, Big Dog's March 2018 MOR understates actual disbursements by reporting almost $260,000 of revolving line of credit payments as transfers to other debtor-in-possession accounts.  Big Dog's actual first quarter U.S. Trustee fee payable is $4,875.

(g)    Big Dog's April and May MORs disclose combined disbursements in excess of $445,000 and second quarter fees quarterly fees trending to $4,875 for the second quarter.  However, Big Dog's April and May 2018 MORs report $701,000 of what appear to be line of credit payments that should be recorded as disbursements, as transfers to other debtor-in-possession accounts.  If those "transfers" were in fact disbursements, Big Dog's second quarter U.S. Trustee fees will be at least $6,500 before accounting for June 2018 disbursements.

18.    The resolution and potential adjustment of the Debtors' reported disbursements

and corresponding U.S. Trustee fees are important components of case administration to be

completed before any of the Debtors' cases are closed.

## ARGUMENT

### A.  The Debtors' Cases Are Not Fully Administered.

19.     The Motion is premature.  A large number of tasks remains to be completed in

each of these four cases before the Court can find them to be considered fully administered.

20.     The Debtors assert that under Local Rule 5009-1:

     a.  Motion.  Upon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been substantially consummated provided that all required fees due under 28 U.S.C. § 1930 have been paid…

     b.  Service.  A motion for the entry of a final decree shall be served upon the debtor, the trustee, if any, the United States Trustee, all official committees and all creditors who have filed a request for notice pursuant to Fed.R.Bankr.P. 2002 and Local Rule 9013.

Del. Bankr. LR 5009-1(a), (b) (2009).

21.     Local Rule 5009-1 was superseded on February 1, 2013 by the more detailed Del.

Bankr. LR 3022-1, which provides in relevant part:

     (a)  Motion. Upon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid. Such motion shall include a proposed final decree order that (i) orders the closing of the case and (ii) identifies in the caption and in the body of the order the case name and the case number of each case to be closed under the order.

     (b)  Service. A motion for the entry of a final decree shall be served upon the debtor, the trustee, if any, the United States Trustee, all official committees and all creditors who have filed a request for notice under Fed. R. Bankr. P. 2002 and Local Rule 9013-1.

     (c)  Final Report. The debtor (or trustee, if any) shall file a final report and account in the form prescribed by the United States Trustee on or before fourteen (14) days prior to the hearing on any motion to close the case.

Among the changes made in the 2013 amendment is the explicit requirement that the confirmed

plan be "fully administered."

22.     The Bankruptcy Code and Federal Rules of Bankruptcy Procedure do not define the term "fully administered."  However, the Advisory Committee Note (1991) to Bankruptcy Rule 3022 states in relevant part that:

> Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.
>
> The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future.

23.     The court need not find in the affirmative on each of the six enumerated factors before determining that a case has been fully administered (or, conversely, should remain open), and the decision must be made on a case-by-case basis.

24.     Applying the Advisory Note's six-factor test, the Motion does not demonstrate that the Debtors' cases have been fully administered.  While certain enumerated acts have occurred – indeed, the recapitalization transactions appear to have been completed – the occurrence of other events is unclear.  For example, the Motion does not disclose whether deposits required by the Plan have been distributed and is silent as to whether the debtors have even commenced (let alone completed) funding the GUC Fund and 503(b)(9) escrow accounts.

25.     More important, by the Debtors' own admission, the Pending Matters remain to be completed, as do the filing and approval of Professional Fee Claims and the resolution of quarterly U.S. Trustee fees.

26.     The Pending Matters, Professional Fee Claims, resolution of U.S. Trustee fees, and other tasks that must be completed before these cases can be found to be fully administered,

10

are not merely ministerial tasks. On the contrary, they are important and complex substantive pending matters which will require applications, motions and potential adversary proceedings, possible discovery and evidentiary hearings, and rulings by the Court. They are not speculative matters for which the Court's jurisdiction "may" be invoked in the future

27.     Claim objections alone may consume several months. Notably, claims arising from rejection under the Plan of executory contracts and leases are not even due until 30 days after the Effective Date (July 29, 2018, *see* Plan, Article VI F, Confirmation Order, ¶ 31). The governmental claims bar date (180 days from the Petition Date) will not expire until September 4, 2018, and the Plan's Claim Objection Deadline (180 days after the Plan's Effective Date per Plan Article II B (21) and subject to extension) will not pass until December 26, 2018.

28.     Where the tasks remaining to be performed are more than "minor ministerial matters," the case has not been fully administered. *In Re Swiss Chalet, Inc.*, 485 B.R. 47, 52 (Bankr. D. P.R. 2012) (*citing* Alan R. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 350.02 (16th ed. 2012)).

29.     The Debtors cite *JMP-Newcor Int'l*, 225 B.R. 462 (Bankr. N.D. Ill 1998) for the proposition that pending contested matters or adversary proceedings are no bar to entry of a final decree while the court retains jurisdiction over discrete controversies. But in *JMP-Newcor*, the debtor had taken all actions required under plan; the only matters remaining were certain plan disbursements and an adversary proceeding. The court held that entry of a final decree while retaining jurisdiction over the pending adversary proceeding "appears to be a reasonable compromise between the policy against delaying the closing of cases and the need for the Court to adjudicate pending matters *ancillary to the administration of the bankruptcy estate*." *Id.* at 465 (emphasis added).

30.     This Court has frequently entered final decrees in the same manner as in *JMP-Newcor* court, retaining jurisdiction over pending adversary proceedings so that case closing is not otherwise delayed by pending matters ancillary to the administration of the case – that is, by matters that are subsidiary, supplementary or secondary to the administration of the bankruptcy case.  The Debtors cite, among others, *In re Combustion Engineering, Inc.*, 03-10495 (JKF), *In re EZ Lube, LLC*, 08-13256 (CSS) and *In re Nellson Nutraceuticals, Inc.,* 06-10072 (CSS) as cases in which the court granted relief similar to the relief they request here. Although those cases entered final decrees "around" pending matters, they did consolidate the remaining administration of multiple cases into a single case.

(a)     *Combustion Engineering* was a single debtor asbestos case. The debtor obtained an order confirming (and recommending District Court affirmance of) its modified Chapter 11 plan which established an asbestos trust in December 2005, and the plan was affirmed by the District Court in March 2006.  The court entered a final decree over a year later, in June 2007, after resolving final professional fee applications, and other post-confirmation matters, and retaining jurisdiction over other pending matters.

(b)     In *In re EZ Lube,* all matters except (i) a single adversary proceeding commenced by the unsecured creditors' trust and (ii) a proof of claim integrally related to the pending adversary proceeding, had been fully resolved.  In the final decree order, entered more than two years post-confirmation, the court closed both of the debtors' cases but retained jurisdiction over the two pending matters and held them open "until adjudicated to completion."  *See* Final Decree Order dated March 30, 2012 (D.I. 1108).

(c)     In *Nellson Nutraceuticals,* except for the United States Trustee's pending appeal from an order approving a management incentive plan, all matters in the seven

jointly administered cases, including plan distributions, had been completed.  *See Nellson*

Final Decree Motion (D.I. 2367), ¶ 5.  The final decree order, entered more than nine

months post-confirmation, closed the six cases in which all matters had been completed,

but held open the case with the pending appeal. *See* Final Decree Order dated July 31,

2009 (D.I. 2371).

31.    The Debtors also cite *In re Majestic Star Casino*, 09-14136 (KG) as support for

the Motion.  In *Majestic Star*, the court did grant relief remarkably similar to that sought here;

several long-confirmed cases were consolidated into a single case for remaining case

administration.  Indeed, the motion for a final decree in *Majestic Star* appears to be the template

for the Motion in this case.[3]  However, *Majestic Star* is distinguishable for several reasons.

(a)    In *Majestic Star,* the motion for a final decree was filed some 18 months

post-confirmation.  A significant portion of all case administration had already been

completed, including the entry of orders approving final professional fee applications and

the entry of orders granting nine substantive and eight non-substantive objections to

proofs of claim.

(b)    In this case, in marked contrast to *Majestic Star*, the Motion was filed less

than one month post-confirmation and only four days after the Effective Date.

Professional Fee Claims have yet to be filed, let alone considered by the Court; they are

not even due until August 13, 2018 and are then subject to a 30-day objection period. The

rejection damages claims bar date will not pass until July 29, 2018, and the governmental

claims bar date will not pass until two months after the filing of the Motion, on

---

[3] The Debtors' use of the *Majestic Star* final decree motion as the template for the Motion in this case may explain the confusing statement in paragraph 19 of the Motion that the last activity in the cases of the proposed Closing Debtors "was set forth in the most recently filed post-confirmation reports…."  The Plan only became effective on June 29, 2018, and no post-confirmation reports have been filed.

September 4, 2018.  And the Debtors have yet to file, let alone be heard or obtain orders on, any claim objections.  Finally, unlike *Majestic Star*, the Debtors' quarterly U.S. Trustee fees remain to be resolved due to discrepancies in the Debtors' self-reported disbursements.

32.     The remaining matters in these cases, including claim objections, professional fee applications, and resolution of U.S. Trustee fees, are all principal matters in the administration of the Debtors' respective cases.  They are the antithesis of "ancillary matters" around which a Chapter 11 case may be closed, and the anticipated cost reduction from closing these cases does not justify closing any case before it is fully administered.   *In re SLI Inc.,* 2005 WL 1668396 at *3 (Bankr. D. Del. June 25, 2005) (denying final decree motion motivated by desire to reduce quarterly U.S. Trustee fees, and explaining that saving of U.S. Trustee fees from closing a bankruptcy case is a result of full administration, not a cause for determining that a case  has been fully administered).

33.     A final decree should be entered in each of the four Debtors' cases only if, as, and when each case is fully administered.

**B.  The Debtors Are Seeking Substantive Consolidation Of Their Cases.**

34.     The Debtors do not seek to have final decrees entered "around" the Pending Matters, subject to the Court's retained jurisdiction as and when the Pending Matters are resolved.  Instead, recognizing that none of their cases has been fully administered and that TWC, FootSmart, and Big Dog are continuing to incur U.S. Trustee fees, the Debtors seek a different kind of final decree, one that consolidates all four cases into the case of Holdings, and to close the cases of TWC, FootSmart and Big Dog.  And Holdings has no operations and  makes only *de minimis* (if any) disbursements, incurring only minimum U.S. Trustee fees, while TWC,

FootSmart, and Big Dog each make substantial disbursements and collectively incur more than $250,000 of U.S. Trustee fees per calendar quarter. In other words, having received all of the benefits of reorganizing in Chapter 11, the Debtors now seek to complete the administration of their four cases for the price of one, and the lowest-priced one at that.

35.     The Debtors offer no jurisdictional basis for this Court to use the Holdings case as a vehicle to administer important matters in the TWC, FootSmart and Big Dog cases after those cases are closed. They ignore the fundamental consequence of a final decree: the entry of a final decree terminates the bankruptcy court's jurisdiction in the administration of the case. Lawrence A. Ahern, III and Nancy Fraas MacLean, *Bankruptcy Procedure Manual: Federal Rules of Bankruptcy Procedure Annotated* § 3022:1 (Feb. 2018 Update). The Court's jurisdiction to re-open a closed case does not confer a warrant – or jurisdiction – to use one open case as a vehicle to administer three other, closed cases, as the Debtors propose here.

36.     In reality, the Debtors are seeking a form of substantive consolidation that would allow them to administer all four cases in the guise of, and for the price (quarterly fees) of, a single case. What they seek is a variant of the "deemed consolidation" that the Third Circuit found insufficient to avoid or reduce quarterly U.S. Trustee fees incurred by each of the reorganized debtors in *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.),* 402 F.3d 416, 423-24 (3d Cir. 2005) ("deemed consolidation for plan purposes" was not a substantive consolidation; each reorganized debtor was liable for U.S. Trustee fees based on its disbursements, regardless of whether made by that reorganized debtor or by another entity on its behalf).

37.     The Motion is *Genesis* revisited: the Debtors, driven by the desire to reduce U.S. Trustee fees, are seeking a "deemed consolidation for case administration" in which all four

debtors continue their separate existence and three of them continue making millions of dollars in ongoing disbursements, while they purport to complete the administration of all four Chapter 11 cases under the umbrella of a single "consolidated" case in the name of (and reporting only the disbursement of) the Debtor that incurs the lowest quarterly U.S. Trustee fees.

38.    The *Genesis* court noted that the debtors, who were sophisticated parties, could have moved for substantive consolidation as a means of reducing U.S. Trustee fees, but affirmatively decided not to do so. *Id.*, at 423 n.10.  Similarly, these Debtors, also sophisticated parties, could have moved for substantive consolidation but elected not to do so.  On the contrary, the Plan expressly provides that:

> The Debtors will continue to exist after the Effective Date as separate legal entities, with all the powers of corporations pursuant to the applicable law in their states of incorporation and pursuant to the amended Organizational Documents. For the avoidance of doubt, there will be no substantive consolidation of the Chapter 11 Cases and the Estates for distribution, voting, *or any other purposes under the Bankruptcy Code*."

Plan, Article V, Section B (emphasis added).

39.    Having forgone substantive consolidation for their own business reasons, the Debtors cannot now seek to modify their Plan, which they admit was substantially consummated on June 29, 2018, to provide for substantive consolidation in any form or for any purpose.  11 U.S.C. Section 1127(b) bars modification of a confirmed plan after it has been substantially consummated.  *In re U.S. Brass Corp.,* 301 F.3d 296, 307 (5th Cir. 2002) (finding proposed agreement for binding arbitration of disputed claims was improper attempt to modify substantially consummated plan that provided for resolution of disputed claims through "litigation in court of competent jurisdiction").

40.    Nor can the Debtors invent a new "four-for-one" "deemed consolidated for case administration" structure, which is simply another form of the substantive consolidation they expressly chose not to pursue in the Plan.  *In re Rickel & Assoc., Inc.,* 260 B.R. 673, 677-78

16

(Bankr. SD.N.Y. 2001) (holding parties cannot circumvent Section 1127(b) prohibition on modifying substantially consummated plan by modifying confirmation order or other plan-related document, and court cannot use its equitable powers to disregard Section 1127(b)'s specific commands).

41.    Each Debtor's case must continue to be administered as a separate entity under its own docket number, and must remain open and continue to file post-confirmation reports until fully administered.

**C.   The Debtors Are Seeking Inappropriate *Nunc Pro Tunc* Relief.**

42.    The Motion requests a waiver of post-confirmation reporting in the cases of the proposed Closing Debtors:

> [T]he requirement of further post-confirmation reporting in the Closed Cases should be waived.  No beneficial purpose would be served by further reporting in those cases.  The last activity in those cases was set forth in the most recently filed post-confirmation report and no further activity will occur in the Closed Cases.

Motion, ¶ 19.  As stated earlier in this Objection, the request is confusing; as of July 16, 2018, the Debtors have not yet filed MORs for June 2018 (they are due to be filed by July 20) and have not filed or even been required (yet) to file any post-confirmation reports.

43.    Moreover, all three of the proposed Closing Debtors have been conducting uninterrupted business activity not only after the May 31, 2018 closing date of their May 2018 MORs, but also after the Plan's June 29, 2018 Effective Date.  While this request may be a stray "artifact" of the template adapted from *Majestic Star Casino*, the Motion appears on its face to be seeking relief from the proposed Closing Debtors' respective obligations to file June 2018 MORs and any post-confirmation reports at all, and, apparently, relief from their corresponding quarterly U.S. Trustee fee obligations, making such relief effective *nunc pro tunc* to May 31, 2018.

44.     Other than their professed belief that further reporting in the proposed Closing

Cases would serve no beneficial purpose, the Debtors do not explain why they seek retroactive

relief.  However, retroactive relief would enable the Debtors to avoid the obligation to pay

quarterly fees accrued pursuant to 28 U.S.C. § 1930(a)(6) for any disbursements made in or after

June 2018 (whether pre- or post-confirmation).  Such relief is not authorized and is directly

contrary to 28 U.S.C. § 1930(a)(6).  The statute provides in relevant part that "a quarterly fee

shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter

11 of title 11 *for each quarter (including any fraction thereof) until the case is converted or*

*dismissed*, whichever occurs first."  (Emphasis added).

45.     A fundamental tenet of statutory construction is that Congress "says in a statute

what it means and means in a statute what it says there."  *Hartford Underwriters Ins. Co. v.*

*Union Planters Bank, N. A.,* 530 U.S. 1, 6 (2000).  Thus, the starting point in construing the

statute and discerning congressional intent is the text of the statute.  When the language is plain,

the courts must enforce it according to its terms unless doing so would produce an absurd result.

*Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004).

46.     Here, the language of 28 U.S.C. § 1930(a)(6) could not be clearer: quarterly U.S.

Trustee fees are due in a case until that case is converted or dismissed or, as at least one court has

noted, until each case is closed.  *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989 (6th Cir.

1998).

47.     In *Hopper v. Uniroyal Plastics Acquisition Corp. (In re Uniroyal Plastics*

*Acquisition Corp.)*, Case No. 3:98cv500RM (N.D. Ind. Mar. 31, 1999), the United States District

Court for the District of Indiana discussed the meaning of the phrase "*nunc pro tunc*:" "The Latin

phrase is merely descriptive of the inherent power of the court to make its records speak the truth

18

– to record *that which was actually done, but omitted to be recorded. It is no warrant for the entry of an order to record that which was omitted to be done.*"  Slip op. at 5 (emphasis added) (quoting *W.F. Sebel Co. v. Hessee (In re Fractman)*, 214 F.2d 459, 462 (10th Cir. 1954)).  In *Hopper*, the court reversed the bankruptcy court's *nunc pro tunc* closing of a post-confirmation chapter 11 case.  The court agreed that the equities favored closing the case *nunc pro tunc*, but held that such relief is not available "to correct an omission or failure to act, if it alters the parties' substantive rights."  Slip op. at 6.  A copy of the *Hopper* slip opinion is attached as Exhibit A.

48.    To obtain *nunc pro tunc* relief, the Debtors must establish that there are "extraordinary circumstances" warranting retroactive case closure.  *See F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3d Cir.), *cert. denied*, 488 U.S. 852 (1988); *In re Arkansas Co.*, 798 F.2d 645 (3d Cir. 1986).  Courts in this Circuit have applied the stringent "extraordinary circumstances" test in a variety of contexts, including professional retention, post-petition financing, and the closing of bankruptcy cases.[4] *See In re Lehigh Valley Professional Sports Clubs, Inc.*, 260 B.R. 745, 750 (Bankr. E.D. Pa. 2001) (holding *nunc pro tunc* approval of financing under 11 U.S.C. § 364 requires showing of "extraordinary circumstances"); *Michaels v. Nat'l Bank (In re E-Tron Corp.)*, 141 B.R. 49, 56-57 (Bankr. D.N.J. 1992) (citing *F/S Airlease* and *Arkansas*); *In re City Wide Press, Inc.*, 102 B.R. 431, 436 (Bankr. E.D. Pa. 1989), *aff'd*, 110 B.R. 710 (E.D. Pa. 1990); *In re Massetti*, 95 B.R. 360, 364 (Bankr. E.D. Pa. 1989).

49.    Here, the request for retroactive relief from the obligation to file MORs and post-confirmation reports does not seek to record something previously done but not recorded; it

---

[4] In *In re Tripar Meadows, Inc.*, Civ. No. 00-2232 (AJL) (D.N.J. Mar. 5, 2001), an unpublished decision, the United States District Court for the District of New Jersey affirmed the bankruptcy court's rejection of the debtor's request for *nunc pro tunc* relief to avoid paying quarterly fees.

19

seeks instead to do something now as if it were accomplished on a date before the Plan was even confirmed, after which each of the three proposed Closing Debtors continued to make additional disbursements and continued to accrue U.S. Trustee fees under 28 U.S.C. § 1930(a)(6). Desire to avoid a statutory fee is not an "extraordinary circumstance" – that is, a circumstance beyond the moving party's control. *See Arkansas*, 798 F.2d at 650 ("We agree instead with the approach of those courts that limit the grant of retroactive approval to cases where prior approval would have been appropriate and the delay in seeking approval was due to hardship beyond the [movant's] control.") (citations omitted). The Debtors do not offer any authority for granting relief from their reporting obligations *nunc pro tunc* to any date, let alone to a date earlier than the Effective Date of a Plan which expressly rejects substantive consolidation for any purpose.

50.     The sole benefit to the Debtors of any retroactive relief would be the detriment imposed on the U.S. Trustee, depriving the U.S. Trustee of fees which are the source of funding for the United States Trustee Program. The United States Trustee Program is not taxpayer-funded, but relies instead on the collection of various fees, including quarterly fees under 28 U.S.C. Section 1930(a)(6). Congress developed the quarterly fees so that the United States Trustee Program would be "self-funded by the users of the bankruptcy system - at no cost to the taxpayer." *See* H.R. REP. No. 99-764, at 25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5238; *see also* H.R. REP. No. 99-764, at 22 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5235 ("The U.S. Trustee Program should not have to be self-funding. It provides a great service to our country's bankruptcy system. However, in this time of budget deficit concerns, self-funding becomes a necessity.").

51.     Reduction of accrued U.S. Trustee fees is not an appropriate basis for retroactive relief. Each Debtor's respective reporting obligations and corresponding obligations for payment

20

of quarterly U.S. Trustee fees must continue until the date that Debtor's case is closed, converted or dismissed.

## <u>CONCLUSION</u>

52.     None of the Debtors' cases are fully administered, and the Motion is premature. Moreover, the form of relief the Debtors seek, collapsing four separate cases into a single consolidated case for administration, is a form of substantive consolidation which would modify the Debtors' confirmed and substantially consummated Plan.  The Debtors' proposal for retroactive relief from their respective obligations to file MORs and post-confirmation reports is inappropriate.  The final relief requested by the Debtors, a change of caption to reflect the closing of three of the four cases, is superfluous unless and until a particular case is actually fully administered and closed.

53.     The U.S. Trustee leaves the Debtors to their burden of proof on each element of relief requested, and reserves all discovery rights.

WHEREFORE, the United States Trustee respectfully requests that this Court deny the

Motion in its entirety, and grant such other relief as this Court deems appropriate.

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**Region 3**


Dated: July 17, 2018                    **BY:**  /s/ Mark S. Kenney
                                            Mark S. Kenney
                                            Trial Attorney
                                            Office of the United States Trustee
                                            J. Caleb Boggs Federal Building
                                            844 King Street, Suite 2207, Lockbox 35
                                            Wilmington, DE 19801
                                            (302) 573-6491
                                            (302) 573-6497 (Fax)