# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| In the Matter of Uniroyal Plastics Acquisition Corp., | ) ) ) | |
| *Debtor*. | ) ) | |
| EDWARD B. HOPPER II, U.S. Trustee, | ) ) ) ) | |
| *Plaintiff-Appellant*, | ) ) ) | |
| vs. | ) ) | No.  3:98-CV-500 RM |
| UNIROYAL PLASTICS ACQUISITION CORP., | ) ) ) ) | |
| *Defendant-Appellee*. | ) | |

## MEMORANDUM AND ORDER

Edward Hopper II, United States Trustee, appeals from the bankruptcy court's order of August 17, 1998, closing Uniroyal Plastics Acquisition Corporation's bankruptcy case *nunc pro tunc* as of September 30, 1997, and denying the Trustee's request for fees under 28 U.S.C. § 1930(a)(6). The Trustee contends that the bankruptcy court's order is not supported by the facts and is contrary to law, and so should be reversed. The parties discuss many issues that the bankruptcy court did not decide; on appeal, the court considers only whether the bankruptcy court abused its discretion when it applied the *nunc pro tunc* doctrine and closed the bankruptcy case retroactively. *See* Matter of Singson, 41 F.3d 315, 320 (7th Cir. 1994); Matter of Triangle Chemicals, Inc., 697 F.2d 1280, 1289 (5th Cir. 1983).

1

If the bankruptcy court had the discretion to act as it did, it exercised that discretion wisely in the interests of justice and judicial economy. The court reluctantly finds, however, that the bankruptcy court did not have the discretion to close the case retroactively by a *nunc pro tunc* order, and so reverses the bankruptcy court's decision and remands for further findings and conclusions.

Uniroyal Plastics Acquisition Corporation's ("UPAC") Chapter 11 plan of reorganization was confirmed on October 26, 1993. When the confirmation order was issued, 28 U.S.C. § 1930(a)(6) provided that, "In addition to the filing fee paid to the Clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under Chapter 11 for each quarter (including any fraction therefore) until a plan is confirmed or the case is converted or dismissed, whichever occurs first."

In January 1996, more than two years after UPAC's obligation to pay fees under § 1930(a)(6) ended, Congress amended the statute by eliminating confirmation of the plan as one of the events that triggered the end of the debtors obligation to pay quarterly fees to the Trustee. Section 1930(a)(6), as amended, provides that the quarterly fees shall be paid to the Trustee "until the case is converted or dismissed, whichever occurs first," and applies to all cases pending under Chapter 11 on or after January 27, 1996, "regardless of confirmation status of their plans." *See* Title I, § 109(d) of the Omnibus Consolidated Appropriations Act, Pub. L. 104-208, 110 Stat. 3009 (Sep. 30, 1996). Although UPAC's plan of reorganization was confirmed in October 1993, and was fully consummated on or before May 1994, when

2

the last fee applications were dispensed with, UPAC took no action to close the case officially until May 22, 1998.

When the amendment to § 1930(a)(6) became effective in January 1996, the Trustee began billing UPAC, and other related debtors, for quarterly fees. Uniroyal Technology Corporation (UTC), the entity that acquired substantially all of the debtors' assets in the related U.E. Systems Case, *see* In re U.E. Systems, Case No. 91-32791-HCD (Bkrtcy. N.D. Ind), paid about $1,750.00 in quarterly fees on UPAC's behalf through September 30, 1997 under the mistaken belief that the UPAC plan and the plan confirmed in the U.E. Systems case required it to do so.

When UTC realized its mistake, it stopped paying the fees. A short time later, UPAC filed a motion to close the bankruptcy case, and the Trustee filed his motion to compel payment of the quarterly fees he alleges are still due and owing for the last quarter of 1997 and the first two quarters of 1998, in the total amount of $750.00. UPAC objected to the Trustee's fee request, and argued that it had no assets with which to pay the fees; that an order compelling payment would constitute an impermissible modification of its plan of reorganization under 28 U.S.C. § 1127(b); and that the retroactive application of the 1996 amendment to § 1930(a)(6) would have the effect of modifying a final judgment (the confirmation order), and would violate the separation of powers doctrine. The bankruptcy court did not address UPAC's constitutional arguments, or its argument under 28 U.S.C. § 1127(b), but held simply that "principles of equity and judicial economy warrant[ed] the

closing of [the bankruptcy] case *nunc pro tunc* effective as of September 30, 1997." The court, accordingly, "decline[d] to permit the Trustee to recover quarterly fees which would have accrued after September 30, 1997, but for the *nunc pro tunc* closing of the case." This appeal followed.

The Trustee contends that the bankruptcy court applied the *nunc pro tunc* doctrine simply to avoid the imposition of fees, and that no factual or legal basis justifies the use of the doctrine in this case. UPAC reiterates the arguments it made before the bankruptcy court.

The balance of the equities in this case weighs heavily in favor of the bankruptcy court's decision to close the case retroactively. The Trustee was not prejudiced by UPAC's failure to act earlier — indeed, the Trustee appears to be the only one to have benefited from UPAC's failure to act earlier. Under the equitable compromise reached by the bankruptcy court, the Trustee was allowed to keep the $1,750.00 mistakenly paid by UTC on UPAC's behalf for fees accrued from January 1996 through September 30, 1997. The Trustee questions UPAC's motives for waiting so long to file a motion to close, but the record presents no explanation why the Trustee did not move for closure once the bankruptcy estate was fully administered, as he could have done under Bankruptcy Rule 3022. That the interests of judicial economy were better served by a compromise cannot be disputed. The appellate record leaves the court uncertain why judicial resources should be expended to wring the sum of $750.00 from an entity that does not have $750.00. Had a balancing test been all that was

4

required, the court would affirm the bankruptcy court's decision without hesitation. The law, however, does not warrant the use of a *nunc pro tunc* order under these circumstances.

*Nunc pro tunc* orders typically are used "to show what was actually done but not properly or adequately recorded," *i.e.*, "to correct clerical or ministerial errors or a failure of the court to reduce to judgment what it stated orally or in an opinion." Transamerica Insurance Co. v. South, 975 F.2d 321, 325 (7th Cir. 1992). *See also* LeBeau v. Taco Bell, Inc., 892 F.2d 605, 609 (7th Cir. 1989); United States v. Taylor, 841 F.2d 1300, 1308 (7th Cir. 1988); Local 1545, United Mine Workers v. Inland Steel Coal Co., 876 F.2d 1288, 1292 n.4 (7th Cir. 1989); Krull v. Celotex Corp., 827 F.2d 80, 82 (7th Cir. 1987). Courts generally "may not make substantive changes affecting parties' rights *nunc pro tunc*." Transamerica Insurance Co. v. South, 975 F.2d at 325; *see also* King v. Ionization International, Inc., 825 F.2d 1180, 1188 (7th Cir. 1987). "The Latin phrase is merely descriptive of the inherent power of the court to make its records speak the truth—to record that which was actually done, but omitted to be recorded. It is no warrant for the entry of an order to record that which was omitted to be done." W.F. Sebel Co. v. Hessee, 214 F.2d 459, 462 (10th Cir. 1954); *see also* Crosby v. Mills, 413 F.2d 1273, 1277 (10th Cir. 1969) ("An order may be entered *nunc pro tunc* to make the record speak the truth but it cannot supply an order which in fact was not previously made.").

There are exceptions to the rule. A *nunc pro tunc* order may be issued, for example, "when a court has spent an undue amount of time deliberating and thereby has caused the

5

parties prejudice or harm," <u>Transamerica Insurance Co. v. South</u>, 975 F.2d at 326 n.2, but the parties have not alleged undue delay by the court in this case. UPAC's assertion that an exception to the rule can be made upon a showing of "extraordinary circumstances" or "excusable neglect," is inconsistent with current precedent in this circuit.

The law in this circuit is clear. An order generally may not be entered *nunc pro tunc* to correct an omission or failure to act, if it alters the parties' substantive rights. <u>Transamerica Insurance Co. v. South</u>, 975 F.2d at 325; *see also* <u>King v. Ionization International, Inc.</u>, 825 F.2d 1180, 1188 (7th Cir. 1987).[1] While there may be exceptions to the rule, *see* <u>Transamerica Insurance Co. v. South</u>, 975 F.2d at 326 n.2, neither the bankruptcy court nor UPAC identified a factual or legal basis warranting an exception in this case.

Accordingly, despite the nagging thought that limited judicial resources are be squandered, the bankruptcy court's order of August 17, 1998, closing the case *nunc pro tunc* as of September 30, 1997, is REVERSED, and the cause REMANDED for further proceedings.

SO ORDERED.

---

[1] The more expansive view of the *nunc pro tunc* doctrine advanced by the bankruptcy court in <u>In re Junior Food Mart of Arkansas, Inc.</u>, 201 B.R. 522, 525 (Bkrtcy. E.D. Ark. 1996), and relied upon by UPAC, is inconsistent with Seventh Circuit precedent.

ENTERED: March 30, 1999

_____
Robert L. Miller, Jr., Judge
United States District Court
ENTERED: March 30, 1999